# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF NEW YORK

_____

CAYUGA NATION and JOHN DOES 1–20,

*Plaintiffs,*

-*against*-

Civil Action No.
5:14-cv-01317
(DNH-ATB)

HOWARD TANNER, Village of Union Springs
Code Enforcement Officer, in his Official Capacity;
EDWARD TRUFANT, Village of Union Springs
Mayor, in his Official Capacity; CHAD HAYDEN,
Village of Union Springs Attorney, in his Official Capacity;
BOARD OF TRUSTEES OF THE VILLAGE OF UNION
SPRINGS, NEW YORK; and THE VILLAGE OF UNION SPRINGS, NEW YORK,

*Defendants.*

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR CROSS-MOTION TO DISMISS THE COMPLAINT AND IN OPPOSITION TO PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION

O'CONNELL AND ARONOWITZ
*Attorneys for Defendants*
54 State Street
Albany NY  12207-2501
(518) 462-5601

Cornelius D. Murray, Esq.
*Of Counsel*

Dated: December 1, 2014

## <u>TABLE OF CONTENTS</u>

Page

TABLE OF AUTHORITIES .............................................................................. ii

PRELIMINARY STATEMENT ......................................................................... 1

BACKGROUND ................................................................................................ 2

ARGUMENT ..................................................................................................... 6

POINT I .............................................................................................................. 6

    DEFENDANTS' CROSS-MOTION TO DISMISS THE COMPLAINT
    SHOULD BE GRANTED ............................................................................ 6

        A.    The Doctrine of *Res Judicata* Bars the Present Action ......................... 6

        B.    The Complaint Should Be Dismissed for Lack of
                Subject Matter Jurisdiction Because This Court Has No
                Authority to Decide Whether Plaintiffs Have Standing
                to Sue on Behalf of the Nation ......................................................... 9

POINT II ........................................................................................................... 11

    PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION
    SHOULD BE DENIED ............................................................................... 11

        A.    Plaintiffs Cannot Show a Likelihood of Success on the
                Merits ............................................................................................. 11

        B.    Plaintiffs Have Not Shown Irreparable Harm ................................... 20

        C.    The Balance of Harms Weighs Heavily in Favor of
                Defendants ..................................................................................... 23

CONCLUSION ................................................................................................. 25

# TABLE OF AUTHORITIES

Page

## Federal Cases

*Alaska v. Native Village of Venetie Tribal Gov't,*
522 U.S. 520 (1998)................................................................................ 18

*Ayco Co. v. Feldman,*
2010 WL 4286154 (N.D.N.Y. Oct. 22, 2010) ...................................... 20

*Baker Elec. Co-op., Inc. v. Chaske,*
28 F.3d 1466 (8th Cir. 1994) ................................................................. 20

*Barnes v. White,*
494 F. Supp. 194 (N.D.N.Y. 1980).................................................... 10

*BNSF v. Vaughn,*
509 F.3d 1085 (9th Cir. 2007) ............................................................ 20

*Caldwell Mfg. Co. North America v. Amesbury Group, Inc.,*
2011 WL 3555833 (W.D.N.Y. Aug. 11, 2011) .................................. 22

*Catskill Development, L.L.C. v. Park Place Entertainment Corp.,*
206 F.R.D. 78 (S.D.N.Y. 2002) ........................................................... 18

*Cayuga Indian Nation of New York v. Gould,*
14 N.Y.3d 614 (2010) ........................................................................... 15

*Cayuga Indian Nation of New York v. Pataki,*
413 F.3d 266 (2d Cir. 2005) ................................................................... 3

*Cayuga Indian Nation of New York v. Village of Union Springs,*
293 F.Supp.2d 183 (N.D.N.Y. 2003).................................................... 23

*Cayuga Indian Nation of New York v. Village of Union Springs,*
317 F.Supp.2d 128 (N.D.N.Y. 2004)............................................... 2, 3, 8

*Cayuga Indian Nation of New York v. Village of Union Springs,*
390 F.Supp.2d 203 (N.D.N.Y. 2005)............................................... 1, 4, 8

*Chayoon v. Chao,*
355 F.3d 141 (2d Cir. 2004) ................................................................. 19

ii

*Citibank, N.A. v. Citytrust,*
  756 F.2d 273 (2d Cir. 1985) ................................................................................. 21

*Citizens Against Casino Gambling in Erie County v. Kempthorne,*
  471 F.Supp.2d 295 (W.D.N.Y. 2007) ................................................................. 13

*Clarke v. Frank,*
  960 F.2d 1146 (2d Cir. 1992) ................................................................................. 7

*Conopco, Inc. v. Roll Intern.,*
  231 F.3d 82 (2d Cir. 2000) ..................................................................................... 6

*Cowen v. Ernest Codelia, P.C.,*
  2001 WL 856606 (S.D.N.Y. July 30, 2001) ......................................................... 6

*Crowe E. Band of Cherokee Indians, Inc.,*
  506 F.2d 1231 (4th Cir. 1974) .............................................................................. 10

*CSX Transp., Inc. v. New York State Office of Real Prop. Servs.,*
  306 F.3d 87 (2d Cir. 2002) ................................................................................... 19

*Day v. Moscow,*
  955 F.2d 807 (2d Cir. 1992) ................................................................................... 6

*Fair Housing in Huntington Comm. v. Town of Huntington,*
  316 F.3d 357 (2d Cir. 2003) ................................................................................. 11

*Frazier v. Turning Stone Casino,*
  254 F.Supp.2d 295 (N.D.N.Y. 2003) ................................................................... 19

*Garcia v. Akwesasne Hous. Auth.,*
  268 F.3d 76 (2d Cir. 2001) ................................................................................... 19

*Gidatex, S.R.L. v. Campaniello Imports, Ltd.,*
  13 F.Supp.2d 417 (S.D.N.Y. 1998)...................................................................... 21

*Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.,*
  596 F.2d 70 (2d Cir. 1979) ................................................................................... 22

*Jolly v. Coughlin,*
  76 F.3d 468 (2d Cir. 1996) ................................................................................... 11

*JSG Trading Corp. v. Tray-Wrap, Inc.,*
  917 F.2d 75 (2d Cir. 1990) ................................................................................... 22

*Kamerling v. Massanari,*

iii

295 F.3d 206 (2d Cir. 2002) ............................................................................................. 20

*Kansas v. United States*,
249 F.3d 1213 (10th Cir. 2001) ....................................................................................... 12

*Kansas v. United States*,
86 F.Supp.2d 1094 (D. Kan. 2000) .................................................................................. 13

*Kramer v. Time Warner, Inc.*,
937 F.2d 767 (2d Cir. 1991) ............................................................................................... 6

*Litho Prestige, Div. of Unimedia Group, Inc. v. News America Publishing, Inc.*,
652 F. Supp. 804 (S.D.N.Y. 1986) ................................................................................... 22

*Michigan v. Bay Mills Indian Community,*
134 S. Ct. 2024 (2014) ...................................................................................................... 19

*Monahan v. New York City Dept. of Corrections*,
214 F.3d 275 (2d Cir. 2000) ............................................................................................... 7

*Motah v. U.S.*,
402 F.2d 1 (10th Cir. 1968) .............................................................................................. 10

*Narragansett Indian Tribe v. Narragansett Elec. Co.*,
89 F.3d 908 (1st Cir. 1996) .............................................................................................. 18

*Oklahoma Tax Comm'n v. Citizen Band Potawatomi Indian Tribe*,
498 U.S. 505 (1991) .......................................................................................................... 17

*Puyallup Tribe, Inc. v. Dep't of Game of State of Washington*,
433 U.S. 165 (1977) .......................................................................................................... 19

*Sac & Fox Tribe of Miss. in Iowa/Meskwaki Casino Litig.*,
340 F.3d 749 (8th Cir. 2003) ........................................................................................... 10

*Shepard Industries, Inc. v. 135 East 57th Street, LLC*,
1999 WL 728641 (S.D.N.Y Sept. 17, 1999) .................................................................... 21

*Sherrill, City of v. Oneida Indian Nation of New York*,
544 U.S. 197 (2005) ................................................................................................... passim

*Sherrill, City of v. Oneida Indian Nation*,
337 F.3d 139 (2d Cir. 2003),
*rev'd on other grounds*, 125 S. Ct. 1478 (2005) .............................................................. 17

*Sperry Int'l Trade, Inc. v. Government of Israel*,

iv

670 F.2d 8 (2d Cir. 1982) ............................................................... 20

*Taylor v. Vermont Dept. of Educ.*,
   313 F.3d 768 (2d Cir. 2002) ..................................................... 6

*Teltronics Servs., Inc., In re*,
   762 F.2d 185 (2d Cir. 1985) ..................................................... 9

*Tenneco Oil Co. v. Sac & Fox Tribe*,
   725 F.2d 572 (10th Cir. 1984) ................................................ 20

*Tom Doherty Assocs., Inc. v. Saban Entm't, Inc.*,
   60 F.3d 27 (2d Cir. 1995) ....................................................... 22

*Tough Traveler, Ltd. v. Outbound Prods.*,
   60 F.3d 964 (2d Cir. 1995) ..................................................... 21

*United States v. Cook*,
   922 F.2d 1026 (2d Cir. 1991) .................................................. 16

*United States v. John*,
   437 U.S. 634 (1978) ............................................................... 17

*United States v. Markiewicz*,
   978 F.2d 786 (2d Cir. 1992) ................................................... 16

*Vann v. Kempthorne*,
   534 F.3d 741 (D.C. Cir. 2008) ................................................ 20

*Verizon Md. Inc. v. Pub. Serv. Comm'n*,
   535 U.S. 635 (2002) ............................................................... 19

*Whitmore v. Arkansas*,
   495 U.S. 149 (1990) ................................................................. 9

*Wisconsin v. Baker*,
   698 F.2d 1323 (7th Cir. 1983) ................................................ 20

*Woods v. Dunlop Tire Corp.*,
   972 F.2d 36 (2d Cir. 1992) ....................................................... 8

**<u>Federal Statutes</u>**

18 U.S.C. § 1151 ............................................................................................... 16, 17, 18

18 U.S.C. § 1151(a) ................................................................................................. 2, 7

18 U.S.C. § 1166 ................................................................................................... 15, 16

25 U.S.C. § 232 ......................................................................................................... 15

25 U.S.C. § 2703(4) ................................................................................................... 12

25 U.S.C. § 2710(b)(1) .............................................................................................. 12

25 U.S.C. § 2710(b)(2) .............................................................................................. 12

25 U.S.C. § 2710(b)(4)(A) ........................................................................................ 12

25 U.S.C. § 2710(d)(1)(3)(A) .................................................................................... 12

25 U.S.C. § 2710(d)(1)(A)(i) ..................................................................................... 12

Fed. R. Civ. P. 12(b)(1) ............................................................................................... 1

Fed. R. Civ. P. 12(b)(6) ............................................................................................... 6

## PRELIMINARY STATEMENT

Approximately nine years ago, following the United States Supreme Court's decision in *City of Sherrill v. Oneida Indian Nation of New York*, 544 U.S. 197 (2005), this Court vacated a permanent injunction granted to the Cayuga Indian Nation enjoining the Village of Union Springs from applying or enforcing their "zoning and land use laws" and "any other laws" purporting to "regulate, control or otherwise interfere with" the Nation's activities on the property. *Cayuga Indian Nation of New York v. Village of Union Springs*, 390 F.Supp.2d 203 (N.D.N.Y. 2005).  In vacating the injunction and dismissing the Complaint, this Court stated that the "Supreme Court's strong language in *City of Sherrill* regarding the disruptive effect on the every day administration of state and local governments bars the Nation from asserting immunity from state and local zoning laws and regulations."  *Id.* at 206.  This case is virtually identical to the dismissed case, except that contrary to what the caption implies, it was filed not by the Cayuga Indian Nation but by individuals who do not have standing or capacity to bring the action on behalf of the Nation, although they claim to. Because the Nation has been embroiled in a governance dispute since 2004, and federal courts do not have subject matter jurisdiction to resolve such disputes, the present action should be dismissed pursuant to Fed. R. Civ. P. 12(b)(1).  However, even if the Plaintiffs did have authority to represent the Nation, the present action would nevertheless be barred by the doctrine of *res judicata* because the claims set forth in the Complaint were either raised, or could have been raised, in the prior action.  Thus, this Court should reject the Plaintiffs' attempt to relitigate the dismissed claims.  In addition, to the extent dismissal is not proper at this time, the Plaintiffs' motion for a preliminary injunction should be denied because the Plaintiffs cannot establish the necessary requirements to obtain preliminary injunctive relief.

1

## BACKGROUND

On April 28, 2003, the Cayuga Indian Nation (the "Nation") purchased property on the open market within the Village and within the boundaries of the Nation's historic reservation (the "Property"). On November 12, 2003, the Nation adopted a Class II gaming ordinance pursuant to the Indian Gaming Regulatory Act ("IGRA"), and submitted it for approval to the National Indian Gaming Commission ("NIGC"). *See* Dkt. 1 at ¶ 24. Less than a week later, on November 18, 2003, the NIGC issued a conditional approval of the ordinance and advised the Nation that, "the Ordinance is only approved for gaming on Indian lands, as defined in the IGRA and the NIGC's regulations, *over which the Nation has jurisdiction*." (emphasis added). *See* Dkt. 5-8 at ¶ 4 & Ex. B. In conditionally approving the ordinance, the NIGC made no determination that the Property was gaming-eligible Indian land. In 2004, the Nation began to conduct Class II gaming at a facility called Lakeside Entertainment, located at 271 Cayuga Street, Union Springs, N.Y. *See* Dkt. 5-8 at ¶ 5.

On October 20, 2003, the Nation commenced an action in this Court against the Village of Union Springs, seeking a declaration that the Property is Indian county within the meaning 18 U.S.C. § 1151(a) and that the Nation has jurisdiction and the right to self-government over the Property. *Cayuga Indian Nation of New York v. Village of Union Springs*, 317 F.Supp.2d 128, 133 (N.D.N.Y. 2004). The Nation also sought an order permanently enjoining the Defendants from interfering with the Nation's ownership and possession of the Property. *Id.* By order dated April 23, 2004, this Court granted summary judgment on the Nation's Complaint, declaring that the Property was Indian County pursuant to 18 U.S.C. § 1151(a), and that the Defendants were "without authority or jurisdiction, and were preempted from, applying or enforcing their zoning and land use laws or

any other laws, ordinances, rules, regulations, or other requirements which seek or purport to regulate, control, or otherwise interfere with activities by or on behalf of the plaintiff Cayuga Indian Nation of New York occurring on the Property." *Cayuga Indian Nation*, 317 F.Supp.2d at 151-52. This Court further enjoined and restrained the Defendants from applying or enforcing any of their laws purporting to "regulate, control or otherwise interfere with" the Nation's activities on the Property, and from commencing any actions to apply or enforce such laws against the Nation. *Id*. The Defendants subsequently filed an appeal.

On March 29, 2005, while the Defendants' appeal was pending, the Supreme Court decided *City of Sherrill v. Oneida Indian Nation of New York*, 544 U.S. 197 (2005) – a case that "dramatically altered the legal landscape" of Indian land claims. *See Cayuga Indian Nation of New York v. Pataki*, 413 F.3d 266, 273 (2d Cir. 2005). In *Sherrill*, the Supreme Court rejected the Oneida Indian Nation's claim to sovereign authority to real property that was part of the Oneida's reservation, but that had been sold, and then repurchased by the Oneidas on the open market. The Supreme Court held that the equitable considerations of laches, acquiescence, and impossibility barred the tribe's claim that its open-market purchases of the parcels unified the fee and aboriginal title such that the tribe could assert sovereign dominion over the parcels and avoid payment of city property taxes. In rejecting the unification theory, the Supreme Court stated that the "standards of federal Indian law and federal equity practice preclude the Tribe from rekindling the embers of sovereignty that long ago grew cold," *id*. at 214, and that the "Oneidas long ago relinquished the reins of government and cannot regain them through open market purchases from current titleholders," *id*. at 203.

On May 23, 2005, in light of the Supreme Court's decision in *City of Sherrill*, the Second

3

Circuit issued a mandate directing this Court to reconsider the April 23, 2004 injunction and declaratory judgment. Defendants subsequently moved to vacate the injunction pursuant to Fed. R. Civ. P. 60(b) and further moved for summary judgment pursuant to Fed. R. Civ. P. 56. Both motions were vigorously opposed by the Nation. This Court granted the Defendants' motions in their entirety, vacated the injunction, dismissed the Complaint, and held that the "Supreme Court's strong language in *City of Sherrill* regarding the disruptive effect on the every day administration of state and local government bars the Nation from asserting immunity from state and local zoning laws and regulations." *Cayuga Indian Nation*, 390 F.Supp.2d at 206. Shortly thereafter, the Nation closed the gambling facility. *See* Dkt. 1 at ¶ 21.

No gaming occurred at the Property for the next eight years. Then, on July 3, 2013, in direct defiance of this Court's prior ruling, certain members of the Nation unilaterally elected to re-open the gaming facility without approval from the Village of Union Springs or the Nation's leadership. *See* Dkt. 1 at ¶ 21; Dkt. 28-2 at ¶ 5. On July 9, 2013, the Nation was served with an "Order to Remedy Violations," signed by the Village Code Enforcement Officer, stating that the Nation was in violation of the Games of Chance Ordinance dated May 19, 1958 (the "Gaming Ordinance") because it was operating bingo without a license issued by the Village of Union Springs. *See* Dkt. 1 at ¶ 36 & Ex. C. The Order directed and ordered the Nation to comply with the Gaming Ordinance, and stated that the Village "may seek injunctive relief in the New York Supreme Court." *See id.* The Nation ignored the Order to Remedy Violations, and continued to operate the casino in violation of the Village's laws and ordinances.

On December 20, 2013, the Village Code Enforcement Officer issued two additional Orders to Remedy Violations based on the Nation's continuing violation of the Gaming Ordinance and

failure to obtain a certificate of occupancy in violation of the Village's zoning law ("Zoning Law"). *See* Dkt. 1 at ¶ 44 & Ex. F. The Orders stated that the Nation was "directed and ordered to comply with the law" no later than December 28, 2013, and that a failure to do so "may constitute a fine or imprisonment or both" and that the Village "may seek injunctive relief" in state court. *See id.* On March 24, 2014, the Village's Code Enforcement Officer sent a letter to the Nation reiterating the Village's position that the Nation was operating the gaming facility in violation of the Zoning Law and Gaming Ordinance. *See* Dkt. 1 at ¶ 51 & Ex. G.

On October 28, 2014, the Nation, or rather individuals purporting to act on behalf of the Nation, filed the present action. As with the prior action, the Plaintiffs seek a declaration that "state and local laws prohibiting gambling are preempted by federal law as applied to the Nation's Class II gaming activities at Lakeside Entertainment." *See* Dkt. 1 at 17-18. They also seek an injunction to prevent the Defendants from interfering with the Nation's use and ownership of the Property, and from commencing any actions to apply or enforce the Village's laws and ordinances against the Nation. *See id.*

The reopening of the bingo hall has escalated a governance dispute that has divided the Nation for nearly a decade, eventually culminating in several episodes of physical violence on property owned by the Nation, most recently on November 17, 2014. *See* Declaration of Edward Trufant ("Trufant Decl.") at ¶¶ 11- 17. This Court should reject the Plaintiffs' attempt to preserve a status quo that threatens the safety and welfare of the community, and restore them to the same position they were in when this Court dismissed the Nation's Complaint over nine years ago.

## ARGUMENT

## POINT I

## DEFENDANTS' CROSS-MOTION TO DISMISS THE
## COMPLAINT SHOULD BE GRANTED

"Dismissal under Fed. R. Civ. P. 12(b)(6) is appropriate when a defendant raises claim preclusion … as an affirmative defense and it is clear from the face of the complaint, and matters of which the court may take judicial notice, that the plaintiff's claims are barred as a matter of law." *Conopco, Inc. v. Roll Intern.*, 231 F.3d 82 (2d Cir. 2000); *Day v. Moscow*, 955 F.2d 807, 811 (2d Cir. 1992)(stating that *res judicata* may be raised on a Rule 12(b)(6) motion to dismiss without requiring an answer); *Cowen v. Ernest Codelia, P.C.*, 2001 WL 856606, at *1 (S.D.N.Y. July 30, 2001)("[I]t is proper to consider public documents on a motion to dismiss to determine whether claims are barred by prior litigation."); *Taylor v. Vermont Dept. of Educ.*, 313 F.3d 768 (2d Cir. 2002)(stating that courts may look to public records, including complaints filed in state court, in deciding a motion to dismiss); *see also Kramer v. Time Warner, Inc.*, 937 F.2d 767, 769 (2d Cir. 1991)(affirming Rule 12(b)(6) dismissal of securities fraud case where the district court considered documents filed with the Securities and Exchange Commission).

### A.      The Doctrine of *Res Judicata* Bars the Present Action

The present action should be dismissed on the ground of *res judicata* because the Plaintiffs' claims were either raised, or could have been raised, in the prior action.  *Res judicata*, or claim preclusion, applies when (1) the previous action involved an adjudication on the merits; (2) the previous action involved the parties or those in privity with them; and (3) the claims asserted in the subsequent action were, or could have been, raised in the prior action.  *Monahan v. New York City*

*Dept. of Corrections*, 214 F.3d 275, 285 (2d Cir. 2000).  Claim preclusion "prevents a party from litigating any issue or defense that could have been raised or decided in a previous suit, even if the issue or defense was not actually raised or decided."  *Clarke v. Frank*, 960 F.2d 1146 (2d Cir. 1992).[1]

In the dismissed action, as here, the Plaintiffs sought broad declaratory and injunctive relief against the Village of Union Springs with respect to the Nation's activities on the Property. In particular, the Plaintiffs sought a declaration that: (1) the Property is Indian Country within the meaning of 18 U.S.C. § 1151(a); (2) the Nation has jurisdiction and the right to self-government over the Property; and (3) the Defendants are without authority or jurisdiction, and are preempted from, applying or enforcing their "zoning and land use laws, or any other laws, ordinances, rules, regulations or other requirements which seek or purport to regulate, control or otherwise interfere with activities by or on behalf of the Nation occurring on the Property." *Cayuga Indian Nation*, Dkt. 1 at 8. Plaintiffs also sought an injunction enjoining and restraining the Defendants from applying or enforcing the Village's "zoning and land use laws" or "any other laws" regulating or otherwise interfering with the Nation's activities on the Property, and from commencing any actions to apply or enforce such laws against the Nation. *Id*. Although this Court initially granted the relief requested by the Plaintiffs, it subsequently vacated the injunction and dismissed the Complaint in its entirety based on the Supreme Court's holding in *City of Sherrill*.

This is déjà vu all over again.  As with the prior action, the Plaintiffs' Complaint seeks a declaration that the Gaming Ordinance and "all other state and local laws prohibiting gambling are preempted by federal law as applied to the Nation's Class II gaming activities at Lakeside

---

[1] There can be no dispute that the previous action involved the same parties, or those in privity

Entertainment." *See* Dkt. 1 at 17-18. It also seeks an injunction to prevent the Defendants from interfering with the Nation's use and ownership of the Property, and from commencing any actions to apply or enforce the Village's laws and ordinances against the Nation. *Id.* at 18. These claims were already litigated and decided in the Defendants' favor in the prior action, *Cayuga Indian Nation*, 390 F.Supp.2d at 206, and therefore, this Court should reject the Plaintiff's attempt to relitigate them now.

Moreover, the Plaintiffs cannot avoid the preclusive effect of *res judicata* by conjuring up new legal theories, namely that this Court did not previously address the legality of the Village's attempt to enforce the Gaming Ordinance. As a preliminary matter, the injunctive relief previously requested, and initially granted, extended to all of the Village's laws and ordinances, and clearly included the application and enforcement of the Gaming Ordinance and Zoning Law. *Cayuga Indian Nation*, Dkt. 1 at ¶ 31 ("Defendants application and purported enforcement of local laws, regulations and ordinances against the Nation and the Property is unlawful."); *Cayuga Indian Nation*, 317 F.Supp.2d at 151-52 ("[Defendants] are without authority or jurisdiction, and are preempted from, applying or enforcing defendants' zoning and land use lands and any other laws…."). However, even assuming it did not, the Plaintiffs would still be barred by the doctrine of *res judicata* because such claims could have been raised, and in the exercise of reasonable diligence should have been raised, in the prior action. *Woods v. Dunlop Tire Corp.*, 972 F.2d 36, 38 (2d Cir. 1992) (stating that *res judicata* or claim preclusion "prevents a party from litigating any issue or defense that could have been raised or decided in a previous suit, even if the issue or defense was not actually raised or decided") (citation omitted). Although the Plaintiffs' contention that the federal

with them, and constituted an adjudication on the merits.

government has exclusive jurisdiction to prosecute violations of the Gaming Ordinance is directly contradicted by the very precedent they cite (as discussed in Point II (a)(ii)), it was certainly available to the Plaintiffs at the time of the prior action and should have been raised then. Both cases involve the same set of factual and legal circumstances – whether federal law allows the Nation to use the Property free from state and local regulation. And, as the only law directly prohibiting the contemplated use of the Property, the Gaming Ordinance should logically have been at the forefront of the Nation's prior challenge. Thus, even if this theory was not subsumed within the prior action, the Plaintiffs' attempt to assert it now must fail. *In re Teltronics Servs., Inc.*, 762 F.2d 185, 193 (2d Cir. 1985) ("New legal theories do not amount to a new cause of action so as to defeat the application of the principle of res judicata."). Accordingly, the Plaintiffs' Complaint should be dismissed in its entirety based on the doctrine of *res judicata*.

**B.     The Complaint Should Be Dismissed for Lack of Subject Matter Jurisdiction Because This Court Has No Authority to Decide Whether Plaintiffs Have Standing to Sue on Behalf of the Nation**

The Plaintiffs' Complaint should be dismissed on the additional ground that this Court lacks subject matter jurisdiction over the action, because the Plaintiffs have not, and cannot, meet their burden of demonstrating that they have standing or capacity to bring an action on behalf of the Nation. *See Whitmore v. Arkansas*, 495 U.S. 149 (1990)("It is well established … that before a federal court can consider the merits of a legal claim, the person seeking to invoke the jurisdiction of the court must establish the requisite standing to sue."). Since 2004, the Nation has been involved in a governance dispute concerning the composition of its Council of chiefs and seatwarmers and the identity of its representative for government-to-government relations. In a decision dated January 16, 2014, the Interior Board of Indian Appeals acknowledged the Nation's internal dispute and

9

concluded that "BIA is not required to recognize anyone as the Nation's representative or any composition of the Council, nor would it be appropriate to do so."  *See* 58 IBIA 171, 181 (2014), annexed as Exhibit A to the Declaration of Cornelius D. Murray, Esq. ("Murray Decl.").  Federal courts have consistently held that they do not have jurisdiction to resolve internal governance disputes such as this.  *Sac & Fox Tribe of Miss. in Iowa/Meskwaki Casino Litig.*, 340 F.3d 749, 763 (8th Cir. 2003); *Crowe E. Band of Cherokee Indians, Inc.*, 506 F.2d 1231, 1233 (4th Cir. 1974)(citations omitted); *Motah v. U.S.*, 402 F.2d 1, 1 (10th Cir. 1968)(citations omitted)("The action stems from an internal controversy among Indians over tribal government, a subject not within the jurisdiction of the court as a federal question."); *Barnes v. White*, 494 F. Supp. 194, 200 (N.D.N.Y. 1980)("[P]laintiffs' complaint stems from an intratribal dispute which federal policy dictates should be handled within the Tribe and not by this Court.").  Without determining whether the Plaintiffs are authorized to file the present action on behalf of the Nation (which this Court cannot do), no justiciable issue is capable of being addressed by this Court.  Thus, the Complaint should be dismissed for lack of subject matter jurisdiction.

## POINT II

## PLAINTIFFS' MOTION FOR A PRELIMINARY
## INJUNCTION SHOULD BE DENIED

To prevail on a motion for a preliminary injunction, a party "must establish that it will suffer irreparable harm in the absence of an injunction and demonstrate either (1) 'a likelihood of success on the merits' or (2) 'sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of the hardships tipping decidedly' in the movant's favor." *Jolly v. Coughlin*, 76 F.3d 468, 473 (2d Cir. 1996). However, when a party, such as the Plaintiffs, challenges "government action taken in the public interest pursuant to a statutory or regulatory scheme," it must establish irreparable harm and a likelihood of success on the merits – the lesser 'fair ground for litigation' will not suffice. *Fair Housing in Huntington Comm. v. Town of Huntington,* 316 F.3d 357, 365 (2d Cir. 2003).

### A.    Plaintiffs Cannot Show a Likelihood of Success on the Merits

The likelihood that Plaintiffs will succeed on the merits depends, as an initial matter, on whether this Court has jurisdiction over the action. As discussed above, the Plaintiffs have not satisfied their burden of establishing subject matter jurisdiction because the Nation is involved in an internal governance dispute and federal courts do not have authority to resolve such disputes. Moreover, the present action is barred by the doctrine of *res judicata* because the claims set forth in the Plaintiffs' Complaint were either raised, or could have been raised, in the prior action. Thus, for either reason alone, the Plaintiffs cannot show a likelihood of success on the merits, and their motion for a preliminary injunction should be denied. However, even if this Court were to reach the merits of the Complaint, Plaintiffs would fare no better because IGRA does not preempt the application of

11

state and local laws prohibiting gaming on the Property, or the prosecution by the Village of Union Springs for violations of the 1958 Ordinance.

### i.   The Property Is Not Eligible for Class II Gaming Because the Nation Does Not Have Jurisdiction Over It

As the Plaintiffs recognize, in order to be authorized to conduct gaming under IGRA, the Nation must satisfy at least two criteria: (1) the land on which it seeks to game must be "Indian lands" as that term is defined in 25 U.S.C. § 2703(4); and (2) the land must be "within such tribe's jurisdiction." 25 U.S.C. § 2710(b)(1).  Even assuming for purposes of this motion that the Property falls under the statutory definition of "Indian lands," the Property is not eligible for Class II gaming under IGRA because it is not subject to the Nation's jurisdiction.

It is well-established that tribal jurisdiction is a prerequisite to conducting Class II gaming under IGRA.  *See* 25 U.S.C. §§ 2710(b)(1)("An Indian tribe may engage in, or license and regulate, class II gaming on *Indian lands within such tribe's jurisdiction* ..."); 2710(b)(2) ("The Chairman shall approve any tribal ordinance or resolution concerning ... class II gaming on the *Indian lands within the tribe's jurisdiction*"); 2710(b)(4)(A)  ( "... class II gaming activity conducted on *Indian lands within the jurisdiction of the Indian tribe* ..."); 2710(d)(1)(A)(i) ("... [ordinance] adopted by the governing body of the Indian *tribe having jurisdiction over such [Indian] lands* ..."); 2710(d)(1)(3)(A) ("Any Indian *tribe having jurisdiction over the Indian lands* upon which a class III gaming activity is being conducted...") (emphasis added).  Case law is equally clear on this point. *See Kansas v. United States*, 249 F.3d 1213, 1228 (10th Cir. 2001) (In order for a tract to qualify as "Indian lands" under IGRA, "the Tribe must have jurisdiction over the tract ...."). *See also Citizens Against Casino Gambling in Erie County v. Kempthorne*, 471 F.Supp.2d 295, 304 (W.D.N.Y.

12

2007)("The consistent and overarching requirement common to each class of gaming is that it be sited on Indian land within the tribe's jurisdiction.").

The National Indian Gaming Commission ("NIGC") expressly recognized this jurisdictional requirement when it approved the Nation's Class II Gaming Ordinance on November 18, 2003.  In its conditional approval letter, the NIGC stated that the Ordinance was approved only for gaming "on Indian lands" and, even then, only if the Nation "has jurisdiction" over those lands.  *See* Dkt. 5-8 at ¶ 4 & Ex. B ("It is important to note that the Ordinance is only approved for gaming on Indian lands, as defined in the IGRA and the NIGC's regulations, over which the Nation has jurisdiction.").

This two-step approach to determining the gaming-eligibility of Indian land was formerly employed by the NIGC Office of General Counsel ("OGC") whenever an Indian lands question was raised:  the OGC would consider whether the lands at issue constituted Indian lands and then whether the tribe exercised jurisdiction over those lands.  *See* Indian Lands Opinion Letter to Bonnie Akaka-Smith, Chairwoman of the Pyramid Lake Palute Tribe, from Penny J. Coleman, NIGC Acting General Counsel, dated August 27, 2005, annexed as Exhibit B to the Murray Decl.[2] *See also* Indian Lands Memorandum to Tracie Stevens, Chairwomen of the NIGC, from Lawrence S. Roberts, NIGC General Counsel, dated July 18, 2011, annexed as Exhibit C to the Murray Decl. ("[T]he Gaming Site does not constitute 'Indian lands' under IGRA because the UKB currently lacks jurisdiction over the Gaming Site."). The NIGC subsequently determined that, in some instances, there is no need for a complete jurisdictional analysis, and, in 2005, it revised its analytic approach to Indian lands within reservation boundaries and adopted a shortcut to assess whether a tribe has jurisdiction

---

[2] This test was driven by the outcome in *Kansas v. United States*, 86 F.Supp.2d 1094 (D. Kan. 2000), in which the District Court held that the NIGC's failure to focus on the threshold question of whether the tribe possessed jurisdiction over a tract of land rendered the ultimate conclusion

over a particular tract of land.  *Id*.  Under this approach, the NIGC will in some cases forgo a complete jurisdictional analysis and instead employ the following presumption – "[a] tribe is presumed to have jurisdiction on its own reservation.  Therefore, if the gaming is to occur within a tribe's reservation, under IGRA, we can presume that jurisdiction exists."  *Id*.  Based on the Supreme Court's holding in *City of Sherrill*, the NIGC's "presumption" is easily rebutted here.

The issue before the *Sherrill* Court was whether the Oneida Indian Nation had the right to exercise sovereign authority over land it purchased within the boundaries of its former reservation area.  *Sherrill*, 544 U.S. at 202 ("In the instant action, OIN resists the payment of property taxes to Sherrill on the ground that OIN's acquisition of fee title to discrete parcels of historic reservation land revived the Oneidas' ancient sovereignty piecemeal over each parcel.").  The Court held that it could not.  Although the Oneida Nation's historic reservation may continue to exist today, the Supreme Court in *Sherrill* unequivocally held that the tribe cannot "unilaterally revive its ancient sovereignty" over its historic reservation area through open market purchases.  *Sherrill*, 544 U.S. at 202-03.  The Court further stated that "'standards of federal Indian law and federal equity practice' preclude the Tribe from rekindling embers of sovereignty that long ago grew cold."  *Id*. at 214.  As a result, the mere fact that land may still be part of an historic reservation that had not been formally disestablished does not mean that a tribe retains jurisdiction over it.  *Id*. at 221 ("Section 465 provides the proper avenue for the OIN to reestablish sovereign authority over territory last held by the Oneidas 200 years ago.").  As this Court recognized nearly nine years ago, the Supreme Court's decision in *Sherrill* applies here with equal force, and deprives the Nation of its ability to assert sovereignty over the Property – which is an essential prerequisite to gaming under IGRA.  Because

---

arbitrary and capricious.

the Nation's gaming facility is not authorized by federal law, IGRA does not preempt state and local laws or regulations prohibiting bingo or any other Class II gaming on the Property.

None of the decisions cited by the Plaintiffs dictates, or even supports, a different result here. For example, the Plaintiffs cite *Cayuga Indian Nation of New York v. Gould*, 14 N.Y.3d 614 (2010), for the proposition that the Nation's reservation in New York State remains in existence. However, as the *Sherrill* Court held, the fact that a reservation was not disestablished does not mean that the Nation can exercise jurisdiction over it. Indeed, neither the *Gould* Court nor the Nation suggested that the Nation's "reacquisition of the convenience store parcels revive[d] its ability to exert full sovereign authority over the property." *Id*. at 641. Moreover, despite the Plaintiff's repeated emphasis on the reservation status of the Property, it is not necessary to determine whether the 1838 Treaty of Buffalo Creek diminished or disestablished the Nation's reservation, or even whether the Property is characterized as a reservation. *See Sherrill*, 544 U.S. at 215 n.9. Even assuming the Property falls under the statutory definition of "Indian lands," it is not eligible for gaming under IGRA because it is not land over which the Nation exercises jurisdiction.

### ii.     New York has Concurrent Jurisdiction to Prosecute Violations of State and Local Anti-Gambling Laws on Indian Reservations

Contrary to the Plaintiffs' contentions, 18 U.S.C. § 1166 does not bar state or local officials from enforcing violations of the 1958 Ordinance, or any other anti-gambling law, because Congress has granted criminal jurisdiction to the State of New York over offenses committed by or against Indians on Indian reservations. 25 U.S.C. § 232 ("The State of New York shall have jurisdiction over offenses committed by or against Indians on Indian reservations within the State of New York to the same extent as the courts of the State have jurisdiction over offenses committed elsewhere in

the state."). In *U.S. v. Cook*, the Second Circuit analyzed the validity of Section 232 in the wake of IGRA's enactment and concluded that the federal government has jurisdiction over criminal prosecutions for violations of state laws, "*unless criminal jurisdiction has been transferred to the state*." 922 F.2d 1026, 1034 (2d Cir. 1991) (emphasis added). In enacting Section 232, Congress did just that, and ceded criminal jurisdiction to the State of New York over offenses committed on Indian reservations. In *Cook*, the Second Circuit recognized that IGRA did not impliedly repeal Section 232's grant of jurisdiction when it held that the "plain language of the statute leads us to conclude that section 232 extended concurrent jurisdiction to the State of New York." This holding was reaffirmed by the Second Circuit in *U.S. v. Markiewicz*, 978 F.2d 786 (2d Cir. 1992).

Consistent with the Second Circuit's holdings in *Cook* and *Markiewicz*, IGRA's legislative history indicates that New York retained its criminal jurisdiction over gambling activities on Indian reservations after the enactment of IGRA and IGRA's penal provision, 18 U.S.C. § 1166. Support for this conclusion is contained in the Senate Committee Report on the IGRA, which states: "it is the intention of the Committee that nothing in the provision of this section or in this act will supersede any specific restriction or specific grant of Federal authority or jurisdiction which may be encompassed in another Federal statute." S.Rep. No. 446, 100th, 2nd Sess. 12 (1988), *reprinted in 1988* U.S.C.C.A.N. 3071, 3082. This statement would certainly apply to the grant of criminal jurisdiction contained in Section 232. Therefore, the Village of Union Springs has jurisdiction, concurrent with the federal government, to enforce the 1958 Ordinance.

In addition, there is a more fundamental reason why Section 1166 does not preempt the Village from exercising criminal enforcement authority over the Property. Section 1166 only has preemptive effect if the land is Indian country with the meaning of 18 U.S.C. 1151, and the Supreme

Court's decision in *Sherrill* calls into question the Property's "Indian country" status.  The *Sherrill* Court stated that the OIN did not have sovereign authority over the land, regardless of whether Congress had formally disestablished or diminished the ancient reservation, and that the proper avenue for the tribe to reestablish sovereignty was through the land into trust process. *Sherrill*, 544 U.S. at 216 n.9.  The fact that the *Sherrill* Court rejected the OIN's claim of present and future sovereign authority, while also recognizing that the reservation had never been formally disestablished or diminished, was not lost on Justice Stevens, who articulated the substantive effect of the majority's holding in his dissent when he stated that it "effectively proclaimed a diminishment of the Tribe's reservation." *Id.* at 225.  Thus, it is highly questionable, to say the least, whether land over which an Indian tribe does not have jurisdiction can qualify as a reservation within the meaning of 1151.  *City of Sherrill v. Oneida Indian Nation*, 337 F.3d 139, 153 (2d Cir. 2003)("In general, 'Indian Country' refers to the geographic area in which tribal and federal laws normally apply and state laws do not."), *rev'd on other grounds*, 125 S. Ct. 1478 (2005).

But even assuming the Nation's ancient reservation has not been disestablished, that does not mean that the Property is Indian country within the meaning of 18 U.S.C. 1151.  *See* 18 U.S.C. 1151 (defining Indian country as "all land within the limits of any Indian reservation *under the jurisdiction of the United States Government*")(emphasis added); *see also Oklahoma Tax Comm'n v. Citizen Band Potawatomi Indian Tribe*, 498 U.S. 505, 511 (1991)("[T]he test for determining whether land is Indian country does not turn upon whether that land is denominated 'trust land' or 'reservation land.'").  As set forth by the United Stated Supreme Court in *U.S. v. John*, the test for determining whether land constitutes "Indian country" is whether it "had been validly set apart for the use of Indians as such, under the superintendence of the Government." 437 U.S. 634, 649 (1978)

17

(citations omitted).  The Plaintiffs have failed to demonstrate, or even allege, that 271 Cayuga Street, Union Springs, New York is under the active supervision of the federal government.  *See Alaska v. Native Village of Venetie Tribal Gov't*, 522 U.S. 520, 530 n.5 (1998) (stating that "it is the land in question, and not merely the Indian tribe inhabiting it, that must be under the superintendence of the Federal Government.").  *See also Narragansett Indian Tribe v. Narragansett Elec. Co.*, 89 F.3d 908, 920 (1st Cir. 1996)(holding that federal superintendence exists only "where the degree of congressional and executive control over the tribe is so pervasive as to evidence an intention that the federal government, not the state, be the dominant political institution in the area.").  Notwithstanding the fact that the Nation is a federally recognized tribe and may be eligible to receive benefits from the federal government, the provision of health, education, and welfare benefits to the tribe's members, for example, does not support a finding of active federal superintendence.  *See Venetie*, 522 U.S. at 534 (rejecting the government's provision of social programs as merely general federal aid, and not indicia of active federal control).  Accordingly, the Plaintiffs are not likely to show that the Property is under the superintendence of the federal government or otherwise qualifies as Indian country within the meaning of 18 U.S.C. 1151.

### iii.    The Requested Injunction is Overbroad Because New York Can Enforce the Gaming Ordinance against Individuals Responsible for Illegal Conduct on the Property

Although the Nation enjoys tribal immunity from suit, the Village of Union Springs would not be barred from bringing suits to enjoin individuals, both Indian and non-Indian, who are engaging in illegal conduct on the Property.  This is because "tribal sovereign immunity does not extend to individual members of a tribe."  *Catskill Development, L.L.C. v. Park Place Entertainment Corp.*, 206 F.R.D. 78, 86 (S.D.N.Y. 2002)(*citing Puyallup Tribe, Inc. v. Dep't of Game of State of*

18

*Washington*, 433 U.S. 165 (1977).  The Supreme Court addressed this exception to sovereign immunity in *Michigan v. Bay Mills Indian Community*.  Although the Supreme Court held that Michigan's lawsuit against the tribe was barred by the doctrine of sovereign immunity, it acknowledged that "Michigan could bring suit against tribal officials (rather than the tribe itself) seeking an injunction for, say, gambling without a license."  *Bay Mills*, 134 S. Ct. 2024, 2035 (2014).  The Supreme Court further acknowledged that, if such civil remedies proved ineffective, "Michigan could resort to its criminal law, prosecuting anyone who maintains – or even frequents – an unlawful gaming establishment."  *Id.*

This exception to sovereign immunity derives from the *Ex parte Young* doctrine, which allows for a suit against officers of a sovereign government where the plaintiffs allege continuing unlawful conduct, and seek declaratory and injunctive relief only.  *See Verizon Md. Inc. v. Pub. Serv. Comm'n*, 535 U.S. 635, 645 (2002).  Tribal officials are protected by sovereign immunity if they are sued in their official capacities and are acting within the scope of their authority.  *Chayoon v. Chao*, 355 F.3d 141, 143 (2d Cir. 2004).  However, sovereign immunity does not bar a suit for prospective relief against tribal officials allegedly acting in violation of the law.  *See Bay Mills*, 134 S. Ct. at 2035 (stating that "tribal immunity does not bar such suit for injunctive relief against *individuals*, including tribal officers, responsible for unlawful conduct").  *See also Garcia v. Akwesasne Hous. Auth.*, 268 F.3d 76, 87-88 (2d Cir. 2001); *Frazier v. Turning Stone Casino*, 254 F.Supp.2d 295, 310 (N.D.N.Y. 2003) ("*Ex parte Young* offers a limited exception to the general principle of state sovereign immunity and has been extended to tribal officials acting in their official capacities … to enjoin conduct that violates federal law.") (*citing CSX Transp., Inc. v. New York State Office of Real Prop. Servs.*, 306 F.3d 87, 98 (2d Cir. 2002)).  Accordingly, the preliminary injunction requested by

19

the Plaintiffs is overbroad because, even if the Nation is immune from suit for violations of state and local anti-gambling laws, an individual who is engaging in illegal conduct on the Property cannot take refuge in the tribe's sovereign authority, and can be sued for injunctive relief.[3]

## B.    Plaintiffs Have Not Shown Irreparable Harm

The Plaintiffs have failed to demonstrate that they will suffer irreparable harm in the absence of a preliminary injunction.  "[I]rreparable harm is '[p]erhaps the single most important prerequisite for the issuance of a preliminary injunction.'"  *Kamerling v. Massanari*, 295 F.3d 206, 214 (2d Cir. 2002)(citation omitted).  In order to make an adequate showing of irreparable harm, the moving party must establish that injury is likely, which is to say harm is "actual and imminent, not remote or speculative."  *See id*.  Moreover, for an injury to be deemed irreparable, "it must be the kind of injury for which an award of money cannot compensate, *see Sperry Int'l Trade, Inc. v. Government of Israel*, 670 F.2d 8, 12 (2d Cir. 1982), and for which adequate redress cannot be reached by a trial on the merits. *See Kamerling*, 295 F.3d at 214.  "A movant's failure to establish irreparable harm is alone sufficient for a court to deny injunctive relief." *Ayco Co. v. Feldman*, 2010 WL 4286154, at *5 (N.D.N.Y. Oct. 22, 2010).

Although the Plaintiffs acknowledge that the Village of Union Springs has notified the

---

[3] Other Circuit Courts have also recognized this exception to sovereign immunity. *BNSF v. Vaughn*, 509 F.3d 1085, 1092 (9th Cir. 2007)("In determining whether *Ex parte Young* is applicable to overcome the tribal officials' claim of sovereign immunity, the relevant inquiry is only whether BNSF has alleged an ongoing violation of federal law and seeks prospective relief."); *Baker Elec. Co-op., Inc. v. Chaske*, 28 F.3d 1466 (8th Cir. 1994)("[']T]he dispositive issue before this court is whether the Tribe had the authority to enact the Tribal Utilities Code: If yes, the officers are clothed with the Tribe's sovereign authority; if no, then the sovereign immunity defense must fail."); *State of Wisconsin v. Baker*, 698 F.2d 1323-33 (7th Cir. 1983)(same); *Vann v. Kempthorne*, 534 F.3d 741, 750 (D.C. Cir. 2008)(same); *Tenneco Oil Co. v. Sac & Fox Tribe*, 725 F.2d 572, 574 (10th Cir. 1984)(same).

Nation of its intention to commence an enforcement action on at least three separate occasions over the past sixteen months,[4] they make no attempt to explain why they waited so long to file the present action.  Such undue delay in seeking injunctive relief "undercuts the sense of urgency that ordinarily accompanies a motion for preliminary relief and suggests that there is, in fact, no irreparable injury." *Tough Traveler, Ltd. v. Outbound Prods.*, 60 F.3d 964, 968 (2d Cir. 1995). *See also Gidatex, S.R.L. v. Campaniello Imports, Ltd*., 13 F.Supp.2d 417 (S.D.N.Y. 1998)("[C]ourts typically decline to grant preliminary injunctions in the face of unexplained delays of more than two months."); *Citibank, N.A. v. Citytrust*, 756 F.2d 273, 276-77 (2d Cir. 1985)(delays of ten weeks suggests no irreparable injury).

    Nonetheless, even if this lapse of time is not dispositive of the issue, the Plaintiffs have not shown that they will suffer irreparable harm as a result of the Village's potential enforcement action.  None of the three categories of harm offered by the Plaintiffs is sufficient to support the relief requested here.  First, the Plaintiffs argue that they have worked hard to build a clientele and reputation for operating a well-run business, and that a potential enforcement action will damage the goodwill of the business, cause reputational harm, and potentially result in a major disruption of the Nation's business.  Such conclusory allegations are insufficient to support their claim for injunctive relief.  *Shepard Industries, Inc. v. 135 East 57th Street, LLC*, 1999 WL 728641, at *7 (S.D.N.Y Sept. 17, 1999) (holding that "conclusory statements of loss of reputation and goodwill constitute an insufficient basis for finding irreparable harm").  Also, the Plaintiffs have failed to present any evidence to suggest that they will suffer a permanent loss of business or lose market share as a result of competition from another gaming facility. Nor can they, as the Nation operates the only class II

---

[4] Although the Village and the Nation entered into a Standstill Agreement as an interim measure, it expired over six months ago, and did not prohibit the Plaintiffs from bringing the present action.

gaming facility in the Village of Union Springs.  *Litho Prestige, Div. of Unimedia Group, Inc. v. News America Publishing, Inc.*, 652 F. Supp. 804, 807-08 (S.D.N.Y. 1986)(holding that irreparable injury justifying injunctive relief typically requires threat of destruction or loss of a going concern); *Caldwell Mfg. Co. North America v. Amesbury Group, Inc.*, 2011 WL 3555833 (W.D.N.Y. Aug. 11, 2011)("Mere speculation about possible market share losses is insufficient evidence of irreparable harm.") (citation omitted).  Moreover, any loss of revenue experienced by the Nation during the pendency of the action can be compensated with money damages determined on the basis of past and expected future earnings.  *Tom Doherty Assocs., Inc. v. Saban Entm't, Inc.*, 60 F.3d 27, 38 (2d Cir. 1995) (reciting the general rule that irreparable harm does not exist where the loss of goodwill was doubtful and lost profits could be compensated with money damages).  Thus, this category of harm does not rise to the level of irreparable harm.

Second, the Plaintiffs argue that they will suffer economic loss because, if the injunctive relief is not granted, they will lose substantial revenue and will have to continue to pay for the bingo machines they are leasing.  This is a self-inflicted hardship.  The fact of the matter is that the Plaintiffs are operating the gaming facility in violation of federal and state law, and therefore any lost revenues of illegal funds would not constitute irreparable injury.  Nonetheless, it is well-established that economic damages are insufficient to establish irreparable harm.  *JSG Trading Corp. v. Tray-Wrap, Inc.*, 917 F.2d 75 (2d Cir. 1990)("[I]t is settled law that when an injury is compensable through money damages there is no irreparable harm."); *Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.*, 596 F.2d 70 (2d Cir. 1979)("For it has always been true that irreparable injury means injury for which a monetary award cannot be adequate compensation and that where money damages is adequate compensation a preliminary injunction will not issue.").

The Plaintiffs' third category of harm, that the potential enforcement action would encroach upon the Nation's sovereignty, is similarly insufficient to justify injunctive relief.  This Court previously rejected the Nation's contention that the Defendant's attempt to enforce local laws and ordinances against it constituted irreparable harm, and concluded that the "nature and scope of infringement at issue here are not of the level required for a finding of irreparable injury." *Cayuga Indian Nation of New York v. Village of Union Springs*, 293 F.Supp.2d 183, 198 (N.D.N.Y. 2003). This Court further noted that the "conclusion is bolstered by the fact that monetary relief is a remedy available to the Nation," which is also the case here. *Id*.  This reasoning applies here with equal force.  In addition, gambling is not essential to the Nation's sovereignty, and therefore, any potential enforcement action against the individuals who are responsible for the illegal conduct will not infringe upon the Nation's ability to govern itself or otherwise exercise its sovereign rights. Accordingly, this does not constitute irreparable harm.

## C.     The Balance of Harms Weighs Heavily in Favor of Defendants

The balance of the hardships and the public interest weigh heavily in favor of the Defendants.  If this Court were to deny the requested relief, the Plaintiffs would not suffer any hardship because they would be restored to the same position they were in when this Court dismissed the Nation's Complaint over nine years ago.  That position is the "status quo" that needs to be preserved here, not the one that the Plaintiffs have attempted to manufacture by flouting this Court's prior decision and operating the gaming facility in violation of the Village's land use laws and zoning ordinances.  The Plaintiffs, who do not even have the authority to operate the gaming facility on behalf of the Nation, seek to preserve a "status quo" that finds no support in federal law and poses health and safety risks to the community.  Since the reopening of the bingo hall last year,

23

the Nation's internal dispute has accelerated to the point of violence and lawlessness, as competing factions of the tribe have competed (and continue to compete) for control of businesses owned by the Nation. *See* Trufant Decl. at ¶¶ 11-17.  This power struggle has necessitated intervention by state and county police forces on multiple occasions, as well as road closures and hospitalizations. *See id*. In light of the proximity of the bingo hall to a local school, the residents of the Village fear for the safety of their children.  *See id*. at ¶ 14.  Although this situation raises issues of sovereignty and tribal governance that could take months or even years to sort out, that cannot be an excuse for the continued violence that immediately threatens the welfare and safety of the citizens of the Village. Under these circumstances, the threat of harm to the community clearly outweighs any harm to the Plaintiffs resulting from a denial of their motion.

Accordingly, for the foregoing reasons, the Plaintiffs' motion for a preliminary injunction should be denied because the Plaintiffs have failed to establish a likelihood of success of the merits of their claims, or that they will suffer irreparable harm in the absence of a preliminary injunction.

## <u>CONCLUSION</u>

For the foregoing reasons, the Defendants' motion to dismiss the complaint should be granted and the Plaintiffs' request for a preliminary injunction should be denied.

Dated: Albany, New York
      December 1, 2014

                                        Respectfully submitted,

                                        O'CONNELL AND ARONOWITZ
                                        By:
                                                <u>s/ Cornelius D. Murray</u>
                                              Cornelius D. Murray, Esq.
                                              Bar Roll No: 505329
                                              O'Connell & Aronowitz
                                              Attorneys for Defendants
                                              54 State Street
                                              Albany, NY 12207-2501
                                              Tel: (518) 462-5601
                                              Fax: (518) 462-6486
                                              nmurray@oalaw.com

25