**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK**

_____

|  |  |  |
|---|---|---|
| CAYUGA NATION AND JOHN DOES 1-20, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | No.: 5:14-cv-1317-DNH-ATB |
| HOWARD TANNER, VILLAGE OF UNION SPRINGS CODE ENFORCEMENT OFFICER, IN HIS OFFICIAL CAPACITY; EDWARD TRUFANT, VILLAGE OF UNION SPRINGS MAYOR, IN HIS OFFICIAL CAPACITY; CHAD HAYDEN, VILLAGE OF UNION SPRINGS ATTORNEY, IN HIS OFFICIAL CAPACITY; BOARD OF TRUSTEES OF THE VILLAGE OF UNION SPRINGS, NEW YORK; AND THE VILLAGE OF UNION SPRINGS, NEW YORK, | ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

_____)

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO
"UNITY COUNCIL'S" MOTION TO INTERVENE**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .............................................................................................. iii

INTRODUCTION ............................................................................................................... 1

BACKGROUND .................................................................................................................. 3

    A.    The Cayuga Nation Commences The Exercise Of Its Federal Gaming Rights, Under The Regulation Of NIGC. ................................................................. 3

    B.    The Two Failed Attempts By "Unity Council"-Affiliated Individuals To Convince The Federal Government To Withdraw Recognition From Plaintiffs .......... 4

    C.    NIGC Continues To Interact With Plaintiffs As The Nation's Lawful Representatives After The Nation's Resumption Of Gaming In 2013. ....................... 6

    D.    Even As The "Unity Council" Has Launched Its Third Attempt To Gain Control Of The Nation, The Federal Government Continues To Interact With Plaintiffs, Particularly As To Gaming. ................................................................. 7

    E.    The Pending Proceedings Before BIA. ................................................................. 8

    F.    The Village Issues Its Enforcement Threats Against Plaintiffs ............................... 9

ARGUMENT ...................................................................................................................... 10

I.    The "Unity Council" Is Not Entitled To Intervene As Of Right Because It Lacks A Protectable Interest That Is At Risk Of Impairment And Inadequately Represented. .................................................................................................................. 10

    A.  The "Unity Council's" Claim To Be The Cayuga Nation's "Lawful Government" Does Not Entitle It To Intervene To Argue That The Nation Is Not The "Real Party In Interest" Or To Dispute Plaintiffs' Filing Authority. ................................................................................................................. 10

        1.    The "Unity Council" Asserts No Legally Protectable Interest That Could Justify Intervention. ................................................................. 11

        2.    The "Unity Council's" Arguments For Dismissal Are Facially Meritless. ............................................................................................. 14

    B.  The "Unity Council's" Unexhausted Claims Regarding The Validity Of The Nation's NIGC-Approved Gaming Ordinance Cannot Support Intervention. ............................................................................................................ 17

    C.  The "Unity Council's" "Oppos[ition To] All Forms Of Gambling" Is Not A Protectable Legal Interest That Can Support Intervention. .............................. 19

    D.  If The Unity Counsel Had A Protectable Interest In The Status Of Lands Covered by the Treaty Of Canandaigua, Plaintiffs Would Adequately Represent It. ........................................................................................................... 20

II.    Permissive Intervention Is Likewise Inappropriate Here .............................................. 21

CONCLUSION .................................................................................................................. 23

# TABLE OF AUTHORITIES

## CASES

*Abramson v. Pennwood Inv. Corp.*, 392 F.2d 759 (2d Cir. 1968) ..................................22

*Arizona v. Tohono O'odham Nation*, No. CV 11-0296, 2011 WL 2357833 (D. Ariz. June 15, 2011) .................................................................................................................17

*Battle v. City of New York*, No. 11 Civ. 3599, 2012 WL 112242 (S.D.N.Y. Jan. 12, 2012).........23

*Burgio & Campofelice, Inc. v. N.Y. State Dep't of Labor*, 107 F.3d 1000 (2d Cir. 1997) ............15

*Butler, Fitzgerald & Potter v. Sequa Corp.*, 250 F.3d 171 (2d Cir. 2001) ................................1, 10

*California Valley Miwok Tribe v. Salazar*, 281 F.R.D. 43 (D.D.C. 2012) .............................13, 14

*Cayuga Indian Nation of New York v. Eastern Regional Director, BIA*, 58 IBIA 171 (2014) ........................................................................................................................5

*Citizens Against Casino Gambling in Erie County v. Hogen*, 704 F. Supp. 2d 269 (W.D.N.Y. 2010), *aff'd*, 417 F. App'x 49 (2d Cir. 2011).........................................21

*Floyd v. City of New York*, 302 F.R.D. 69 (S.D.N.Y. 2014).........................................................23

*Fox v. Tyson Foods, Inc.*, 519 F.3d 1298 (11th Cir. 2008)...........................................................14

*Gabauer v. Woodcock*, 425 F. Supp. 1 (E.D. Mo. 1976), *aff'd in part, rev'd in part on other grounds*, 594 F.2d 662 (8th Cir. 1979)..................................................................22

*George v. Eastern Regional Director, Bureau of Indian Affairs*, 49 IBIA 164 (2009) ..............4, 5

*Golden Hill Paugussett Tribe of Indians v. Weicker*, 39 F.3d 51 (2d Cir. 1994) .........................17

*Grand Traverse Band of Ottawa & Chippewa Indians v. United States Attorney for Western District of Michigan*, 46 F. Supp. 2d 689 (W.D. Mich. 1999)..................................17

*Greene v. United States*, 996 F.2d 973 (9th Cir. 1993) ................................................................14

*Grewal v. Cueno*, No. 13 Civ. 6836, 2014 WL 2095166 (S.D.N.Y. May 14, 2014)....................23

*H.L. Hayden Co. of New York v. Siemens Medical Systems, Inc.*, 797 F.2d 85 (2d Cir. 1986) ........................................................................................................................23

*Hale v. Rao*, No. 9:08-cv-612, 2009 WL 3698420 (N.D.N.Y. Nov. 3, 2009)..............................22

*In re Bank of New York Derivative Litigation*, 320 F.3d 291 (2d Cir. 2003) ...............................23

*In re Ivan F. Boesky Securities Litigation*, 129 F.R.D. 89 (S.D.N.Y. 1990) ................................22

*Kessler v. Grant Central District Management Ass'n*, 158 F.3d 92 (2d Cir. 1998) ......................21

*Marriott v. County v. Montgomery*, 227 F.R.D. 159 (N.D.N.Y. 2005), *aff'd*, No. 05-1590, 2005 WL 3117194 (2d Cir. Nov. 22, 2005) .................................................................2, 21, 22

*Mashantucket Pequot Tribe v. Town of Ledyard*, 722 F.3d 457 (2d Cir. 2013) ...........................15

*New York v. Jewell*, No. 08-cv-644, 2014 WL 841764 (N.D.N.Y. Mar. 4, 2014) .................21, 22

*Old Elk v. Billings Area Director, Bureau of Indian Affairs*, 18 IBIA 393 (1990) ..................8, 16

*Oneida Indian Nation of New York v. New York*, 201 F.R.D. 64 (N.D.N.Y. 2001) ...............10, 19

*Oneida Indian Nation of Wisconsin v. New York*, 732 F.2d 261 (2d Cir. 1984) ..........................21

*Oscar Gruss & Son, Inc. v. Hollander*, 337 F.3d 186 (2d Cir. 2003).............................................14

*Pharmaceutical Research & Manufacturers of America v. Walsh*, 538 U.S. 644 (2003) .............17

*Poe v. Pacific Regional Director, Bureau of Indian Affairs*, 43 IBIA 105 (2006)...................9, 16

*Sac & Fox Tribe of the Mississippi in Iowa, Election Board v. Bureau of Indian Affairs*, 439 F.3d 832 (8th Cir. 2006) ...............................................................................................7, 15

*Shenandoah v. United States Department of Interior*, 159 F.3d 708 (2d Cir. 1998)............ *passim*

*St. John's University v. Bolton*, 450 F. App'x 81 (2d Cir. 2011) ..................................................14

*Timbisha Shoshone Tribe v. Salazar*, 678 F.3d 935 (D.C. Cir. 2012) .....................................12, 16

*United States ex rel. St. Regis Mohawk Tribe v. President R.C.—St. Regis Management Co.*, 451 F.3d 44 (2d Cir. 2006).............................................................................................19

*United States v. 43.47 Acres of Land, More or Less, Situated in County of Litchfield*, 896 F. Supp. 2d 151 (D. Conn. 2012)...........................................................................................17

*United States v. City of New York*, 198 F.3d 360 (2d Cir. 1999).............................................19, 20

*Washington Electric Cooperative, Inc. v. Massachusetts Municipal Wholesale Electric Co.*, 922 F.2d 92 (2d Cir. 1990)..............................................................................11, 12, 13

## STATUTES

25 U.S.C. § 2710(b)(1)(B) ......................................................................................................4, 18

25 U.S.C. § 2714......................................................................................................................19

28 U.S.C. § 1331......................................................................................................................15

**OTHER AUTHORITIES**

25 C.F.R. § 522.1 ........................................................................................................18

25 C.F.R. § 522.2 ........................................................................................................18

25 C.F.R. § 522.3 ....................................................................................................18, 19

25 C.F.R. § 522.4 ........................................................................................................18

25 C.F.R. § 522.5 ........................................................................................................18

25 C.F.R. § 556.5 ..........................................................................................................6

25 C.F.R. § 556.6 ..........................................................................................................6

25 C.F.R. § 558.2 ..........................................................................................................6

25 C.F.R. § 558.2(c) ......................................................................................................6

Fed. R. Civ. P. 7(a) ......................................................................................................22

Fed. R. Civ. P. 24(a)(2) .................................................................................. 12, 13-14, 20

Fed. R. Civ. P. 24(b)(1)(B) ..........................................................................................21

Fed. R. Civ. P. 24(c) ....................................................................................................22

## INTRODUCTION

This is a preemption case concerning the Cayuga Nation's right to conduct Class II gaming within the boundaries of its federally recognized reservation.  Plaintiffs seek declaratory and injunctive relief preventing the Village of Union Springs and its officials (collectively, "the Village") from enforcing anti-gaming regulations preempted by the Indian Gaming Regulatory Act ("IGRA").

The "Unity Council," a group within the Cayuga Nation that claims (wrongly) to be its rightful government, seeks to intervene as a defendant on the theory that its leadership claim somehow deprives the Court of jurisdiction.  *See* "Unity Council" Mem. of L. in Support of Mot. to Intervene at 1, ECF No. 27 ("Mem.").  But the "Unity Council's" application fails the most basic requirements for as-of-right intervention: an interest that is direct (not collateral); is legally protectable (not nonjusticiable); and will be impaired if the action goes forward (not handled in an entirely separate proceeding).  *Butler, Fitzgerald & Potter v. Sequa Corp.*, 250 F.3d 171, 176 (2d Cir. 2001).  This case has nothing to do with the Nation's internal leadership dispute; rather, it involves the rights of the Nation vis-à-vis the Village.  The "Unity Council" itself admits that this Court cannot decide the leadership issues it raises because they are for the Cayuga people themselves to decide.  And a full review of Cayuga Nation leadership matters is pending before the federal Bureau of Indian Affairs ("BIA")—which will offer the federal government's final word on the leadership dispute, regardless of whatever outcome this lawsuit may have.  The "Unity Council's" other asserted interests—based on the Treaty of Canandaigua and the validity of the Nation's gaming ordinance—are likewise flawed.

No more meritorious is the "Unity Council's" request for permissive intervention.  Here, the facts just discussed—that the "Unity Council" seeks to inject tangential, nonjusticiable issues—would be by themselves enough to dictate that the Court deny that request.  But even if

1

that were not the case, the "Unity Council's" motion fails to satisfy the threshold requirement for permissive intervention. Such intervention is "improper . . . where . . . there is no asserted claim or defense." *Marriott v. Cnty. of Montgomery*, 227 F.R.D. 159, 167 (N.D.N.Y. 2005) (Hurd, J.), *aff'd*, No. 05-1590, 2005 WL 3117194 (2d Cir. Nov. 22, 2005). And the "Unity Council" identifies no claim it has against any party, nor any defense it has to any claim by any existing party.

That the "Unity Council's" arguments are just a distraction is confirmed by their lack of merit. Notwithstanding the "Unity Council's" assertion that jurisdiction is lacking, Plaintiffs' request for declaratory and injunctive relief against preempted local laws properly invokes federal-question jurisdiction. The plaintiffs, moreover, include not just the Nation itself, but individuals threatened with civil and criminal penalties. And as to the Nation, there is no dispute that the individuals who authorized this suit are the same people whom the National Indian Gaming Commission ("NIGC")—the federal body that regulates tribal gaming—treats as Nation representatives, with respect to exactly the activity the Village seeks to shut down. Whatever abstract disagreement may exist with respect to the identity of the Nation's rightful leadership, it is plain that these individuals are *in fact* operating the gaming facility as the Nation, and are *in fact* being treated as the Nation's leadership by NIGC.

The position that the "Unity Council" wishes to advance as a "Defendant-Intervenor" would have breathtaking—and dire—consequences for Indian nations. Specifically, it would require dismissal of *every* action involving a tribe whose leadership is disputed, and effectively deprive countless Indian nations of access to the federal courts. Fortunately, that is not the law. To the contrary, the Second Circuit has said it would be improper to dismiss an action for lack of proper authorization unless BIA (to which courts defer on leadership questions) has determined

2

that a group is *not* entitled to sue.  *Shenandoah v. U.S. Dep't of Interior*, 159 F.3d 708, 712 (2d Cir. 1998).  And dismissal would be especially improper here.  The Nation's leadership is the subject of a pending BIA proceeding—something that the "Unity Council's" brief barely mentions.  In the meantime, the individuals who authorized this suit include those (a) whom BIA has most recently treated as the Nation's representatives; and (b) more importantly, whom NIGC continues to treat as the Nation's representatives with respect to the federal rights at issue.  The "Unity Council," by contrast, has *never* received any effective recognition from BIA or from NIGC.

At bottom, the instant motion is not truly about the interests that the "Unity Council" proffers as a basis for intervention.  The "Unity Council's" members have spent a decade urging that the Cayuga Nation should not conduct gaming, and attempting to undermine the Nation leaders who authorized this suit.  The "Unity Council" has been unable to achieve its goals through the designated procedures of NIGC and BIA.  Now it sees a chance to kill two birds with one stone.  By using the pretext of the Nation's leadership dispute to obtain dismissal of this action, the "Unity Council" hopes to deprive the Nation of the ability to prevent the Village from disrupting the status quo, *and* hopes to deprive its rivals of a much-needed revenue source.  If that gambit succeeds, the "Unity Council" will accomplish an end-run around the orderly processes of *two* federal agencies—NIGC and BIA.  That cynical ploy is no basis for intervention.  The motion to intervene should be denied.

## BACKGROUND

### A.  The Cayuga Nation Commences The Exercise Of Its Federal Gaming Rights, Under The Regulation Of NIGC.

The Cayuga Nation is governed by the Cayuga Nation Council.  Supp. Decl. of Clint Halftown ¶ 2 ("Halftown Supp. Decl.").  Clint Halftown, Tim Twoguns, and Gary Wheeler—

who have authorized this action and who oversee the gaming activities at issue—have long been Council representatives. *Id.* ¶¶ 3, 39. In 2002, the Council unanimously charged Mr. Halftown with pursuing economic development on the Nation's behalf. *Id.* ¶ 4. And in 2003, the Council unanimously selected Mr. Halftown and Mr. Twoguns as the Nation's federal representative and alternate federal representative, respectively. *Id.* ¶ 5. BIA "accepted [Mr.] Halftown as the Nation's representative for government-to-government purposes, and Halftown acted in this capacity . . . without quarrel." *George v. E. Reg'l Dir., Bureau of Indian Affairs*, 49 IBIA 164, 169 (2009). The business at issue here, the Lakeside Entertainment gaming facility, opened in 2004. *Id.* ¶ 7.

NIGC, the federal entity responsible for overseeing Indian gaming, has from the start regulated the Nation's Class II gaming activities. When in 2003 the Cayuga Nation Council first enacted an ordinance authorizing Class II gaming (as IGRA requires, *see* 25 U.S.C. § 2710(b)(1)(B)), Mr. Halftown submitted it to NIGC, which in turn addressed its approval to Mr. Halftown. Decl. of Clint Halftown of Oct. 28 Exs. A, B, ECF No. 5 ("Halftown Oct. 28 Decl."). That same ordinance also established the Nation's Class II Gaming Commission. Halftown Supp. Decl. ¶ 9. Under NIGC's regulation, the Nation engaged in Class II gaming at the Lakeside Entertainment facility in 2004 and 2005. *Id.* ¶ 11.

**B. The Two Failed Attempts By "Unity Council"-Affiliated Individuals To Convince The Federal Government To Withdraw Recognition From Plaintiffs.**

In 2005, a group of dissidents—composed largely of the individuals who propose to intervene as the "Unity Council"—petitioned BIA to claim that Mr. Halftown had been "removed" from the Nation Council and should no longer be recognized as the Nation's federal representative. These individuals' attempt to gain control of the Nation has, from the start, reflected their "fundamental opposition to gambling," Decl. of Joseph J. Heath ¶¶ 22-23, ECF

4

No. 27-8 ("Heath Decl."), which they believe "violate[s] Cayuga law," *id.* ¶ 24; Decl. of Karl Hill ¶ 12, ECF No. 27-5 ("Hill Decl."); Decl. of Samuel George ¶ 10, ECF No. 27-2 ("George Decl."). BIA rejected the dissidents' claim as to Mr. Halftown's status and, instead, continued to recognize Mr. Halftown. The Interior Board of Indian Appeals ("IBIA") affirmed in 2009. *See George*, 49 IBIA at 192-93.

In 2011, the dissidents—now styling themselves the "Unity Council"—again undertook to convince the federal government to alter its recognition of Messrs. Halftown and Twoguns. They continued to assert that Mr. Halftown had been removed from the Nation Council (and replaced) long ago, despite BIA's decision to recognize Mr. Halftown thereafter. They also claimed that Mr. Twoguns and Mr. Wheeler had been removed and replaced in 2011. These actions, they asserted, created a "Unity Council" that now governed the Nation. Halftown Supp. Decl. ¶ 15. This time, the dissidents managed to convince BIA's Regional Director to withdraw recognition of Mr. Halftown. *Id.* ¶ 17. Mr. Halftown, Mr. Twoguns, and Mr. Wheeler vigorously challenged that decision: They explained that it was inconsistent with Cayuga law, and also that the Regional Director's new decision improperly found that Mr. Halftown *had* been removed long ago, without recognizing the prior decision that he had *not*. *Id.* ¶ 18.

The decision never went into effect, and the IBIA vacated it without reaching the merits. Specifically, the IBIA concluded that BIA had no reason to make a leadership decision in 2011 because there was no separate "federal action" pending that required a determination. *Cayuga Indian Nation of N.Y. v. E. Reg'l Dir.*, *BIA*, 58 IBIA 171, 186 (2014). BIA thus continued to interact with Mr. Halftown as the Nation's representative after 2011. Halftown Supp. Decl. ¶ 20.

### C. NIGC Continues To Interact With Plaintiffs As The Nation's Lawful Representatives After The Nation's Resumption Of Gaming In 2013.

NIGC has also continued the federal government's interaction with Mr. Halftown, Mr. Twoguns, and Mr. Wheeler.  The Nation voluntarily ceased its gaming activities in 2005, but it resumed them in 2013.  The Nation's Class II Gaming Commission (comprised of Mr. Twoguns, Mr. Halftown, and Mr. Wheeler) reissued the facility license for Lakeside Entertainment, and Mr. Halftown forwarded that license and other required documents to NIGC.  Halftown Oct. 28 Decl. Ex. D.  Likewise, under the direction of the same individuals, the Nation followed NIGC's requirements for licensing primary management officials and key employees, including providing background-check materials and fingerprints to NIGC.  Halftown Supp. Decl. ¶ 24.

NIGC duly responded, and again conducted its regulation of the Nation's gaming through these same individuals.  Consistent with the process set forth in its regulations, NIGC has assisted in processing fingerprints, has provided the resulting Criminal History Record Information ("CHRI") to the Nation, and has relayed that it has no objection to the licensing of eligible employees.  *Id.* ¶ 25.[1]  NIGC has directed its responses to Mr. Twoguns, as the Chairman of the Nation's Class II Gaming Commission.  *Id.*  NIGC also has approved the Nation's request for access to its secure, restricted Tribal Access Portal.  *Id.* ¶ 26.  An NIGC official has visited Lakeside Entertainment on multiple occasions to observe the Nation's gaming operations.  *Id.*  Finally, NIGC has listed Lakeside Entertainment in its "Gaming Tribe Report"—along with the email address of B.J. Radford, who manages the facility under the direction of Mr. Halftown, Mr. Twoguns, and Mr. Wheeler.  *Id.*; Halftown Oct. 28 Decl. Ex. D.

---

[1] Under NIGC regulations, the Nation itself, rather than NIGC, issues licenses for primary management officials and key employees.  25 C.F.R. § 558.2(c).  In particular, the Nation conducts investigations of license applicants (with NIGC assistance), makes eligibility determinations, and notifies NIGC of the results; NIGC then informs the Nation whether it objects.  *Id.* §§ 556.5, 556.6, 558.2.

NIGC's actions are especially significant.  The agency asserts authority to *shut down* a tribal gaming enterprise when one group "[i]s the federally recognized governing body, but" another "ha[s] control of the [enterprise]."  *Sac & Fox Tribe of the Miss. in Iowa, Election Bd. v. BIA*, 439 F.3d 832, 834 (8th Cir. 2006).  But it has *never* suggested it might invoke that authority against the Nation's gaming activities.  Instead, it has continued the interactions described above.

**D.   Even As The "Unity Council" Has Launched Its Third Attempt To Gain Control Of The Nation, The Federal Government Continues To Interact With Plaintiffs, Particularly As To Gaming.**

In April 2014, the "Unity Council" launched a third campaign.[2]  This time, it refused to await an orderly decision from BIA.  Instead, a small group of dissidents affiliated with the "Unity Council" have repeatedly used force and violence to seize certain Nation properties. Halftown Supp. Decl. ¶ 27. They have tried and failed to gain control of several more.  *Id.*

Meanwhile, BIA is moving towards a decision on the Nation's leadership dispute.  On May 15, 2014 BIA Regional Director Franklin Keel sent a letter to both sides soliciting views on (1) whether certain outstanding requests to renew or modify contracts created a need for federal action that necessitated a recognition decision; and (2) whom BIA should recognize as the Nation's leadership.  Halftown Supp. Decl. ¶ 29 & Ex. C.  Although the letter did "not express any view recognizing either side," it "maintain[ed] the status quo with respect to the Nation's drawdown authority" on particular accounts held on the Nation's behalf—meaning that it kept "drawdown authority with the current individual" and so preserved Mr. Halftown's authority to

---

[2] Although the "Unity Council" claims to have "been operating as the Nation's government since 2011," Mem. at 10, that is patently untrue.  *See* Halftown Supp. Decl. ¶ 21.  In addition, although the "Unity Council" claims that a "peaceful transition of control over some Cayuga Nation businesses and buildings" occurred after their loss before IBIA, Heath Decl. ¶ 20, in fact the "Unity Council's" attempts to take and hold Nation properties have been anything but peaceful. *See* Halftown Supp. Decl. ¶ 28.

7

access those funds.  *Id.*  Under IBIA precedent, that is in effect a limited interim recognition of Mr. Halftown.  *See Old Elk v. Billings Area Dir.*, 18 IBIA 393, 394 (1990).

NIGC's approach has been no more favorable to the "Unity Council" than BIA's.  Since BIA's May 15 letter, NIGC has continued to interact with the Nation as before, through the same individuals.  NIGC has continued to assist in processing fingerprints, and it has again advised Mr. Twoguns, as the Cayuga Nation Class II Gaming Commission's Chairman, that it has no objection to the licensing of certain additional employees.  Halftown Supp. Decl. ¶ 31.  On September 30, 2014, the same individuals who authorized this suit received a "Dear Tribal Leader" notification from NIGC.  *Id.*  Finally, NIGC has not altered the Nation's listing in the NIGC's "Gaming Tribe Report," including the designation of B.J. Radford.  Halftown Oct. 28 Decl. Ex. D.

Members of the "Unity Council," for their part, have repeatedly written to BIA and NIGC to communicate their opposition to gaming, and to assert their leadership claim.  *See* George Decl. Ex. B (Nov. 6, 2014 Letter from K. Hill to J. Chaudhuri, Acting Chairman, NIGC); Heath Decl. Ex. I (June 28, 2013 Letter from W. Jacobs et al. to K. Washburn, Assistant Sec'y, Dep't of Interior).  Notably absent from the "Unity Council's" intervention papers, however, is evidence of any response from NIGC—or of any BIA recognition of the "Unity Council," other than the decision that the IBIA vacated.

### E.  The Pending Proceedings Before BIA.

In voluminous pleadings, both sides have now submitted their views to BIA.  All agree that a federal recognition decision is required.  Halftown Supp. Decl. ¶ 32.  The submission of Mr. Halftown, Mr. Twoguns, and Mr. Wheeler explains that, under Cayuga law, Mr. Halftown and Mr. Twoguns remain the Nation's federal representatives; details results of a "statement of support campaign" conducted since May 2014, which shows that more than 60% of adult

8

Cayuga citizens affirm these individuals' role in the Nation's leadership and reject the "Unity Council"; and explains that, at the least, BIA should adhere to its settled practice of recognizing an Indian nation's "last undisputed leadership."   *Id.*; *see, e.g.*, *Poe v. Pac. Reg'l Dir., BIA*, 43 IBIA 105, 112 (2006).  Those arguments will be considered by a new decisionmaker at BIA, as the prior Regional Director has retired.

Meanwhile, the "Unity Council" has effectively collapsed.  Two of its members have announced their decision to "secede" because they deemed the Unity Council "not fit to govern."  Halftown Supp. Decl. ¶ 34 & Ex. D.  Mr. Halftown, Mr. Twoguns, and Mr. Wheeler have brought these actions to the attention of BIA, and explained why they require BIA to continue its recognition of Mr. Halftown and Mr. Twoguns.  *Id.*  Plaintiffs are now awaiting action from BIA.

### F.  The Village Issues Its Enforcement Threats Against Plaintiffs.

This suit arises from threats issued by the Village against the Nation's gaming activities.  Those activities have been (and still are) undertaken or supervised by the same people who authorized this action—Mr. Halftown, Mr. Twoguns, and Mr. Wheeler.  Village officials issued the "Notice of Violations" and "Orders to Remedy" that gave rise to this action against a facility supervised by these individuals.  *Id.* ¶ 36.  These individuals and those working under their supervision (including attorneys) have interacted with the Village's zoning officer, Howard Tanner, and the Village Attorney, Chad Hayden.  *Id.* ¶¶ 37-38.

The Village's threats are based principally on the Village's 1958 anti-gaming ordinance, which "prohibits bingo in the Village" and deems any willful violation of the ordinance to be a misdemeanor.  Compl. ¶ 51 & Ex. B, ECF No. 1.  These threats endanger not just the Nation, but also the individuals who operate and manage gaming activities on the Nation's behalf, and who have done so in reliance on the NIGC's continuing oversight and regulation.  Accordingly,

9

Plaintiffs include the Nation and also the "officers, employees, and/or representatives . . . at risk of criminal or civil penalties for" gaming-related conduct.  Compl. ¶ 6.

## ARGUMENT

I.     **The "Unity Council" Is Not Entitled To Intervene As Of Right Because It Lacks A Protectable Interest That Is At Risk Of Impairment And Inadequately Represented.**

An applicant for as-of-right intervention must meet three requirements: it must (1) have "an interest relating to the property or transaction that is the subject of the action"; (2) "be so situated that without intervention the disposition of the action may impair that interest"; and (3) "show that the interest is not already adequately represented."  *Butler*, 250 F.3d at 176.  The asserted interest, moreover, must be "'direct, substantial, and legally protectable,'" rather than "collateral."  *Oneida Indian Nation of N.Y. v. New York*, 201 F.R.D. 64, 67 (N.D.N.Y. 2001) (quoting *Washington Elec. Coop., Inc. v. Mass. Mun. Wholesale Elec. Co.*, 922 F.2d 92, 96 (2d Cir. 1990)).  "A would-be intervenor's failure to meet all of these requirements justifies . . . denial."  *Butler*, 850 F.3d at 176.  Here, the "Unity Council" identifies no protectable interest that will be impaired by this litigation and is not adequately represented.

A.     **The "Unity Council's" Claim To Be The Cayuga Nation's "Lawful Government" Does Not Entitle It To Intervene To Argue That The Nation Is Not The "Real Party In Interest" Or To Dispute Plaintiffs' Filing Authority.**

The "Unity Council" seeks intervention primarily to advance its claim to be the Nation's "lawful government," even as it acknowledges that this claim is nonjusticiable. Mem. at 1; *see id.* at 10.  In particular, the "Unity Council" asserts an interest in determining whether the Plaintiffs are "real part[ies]" in interest, and relatedly, whether the "this action was authorized by the proper government under Cayuga law."  *Id.* at 6.  The "Unity Council" has filed a proposed motion to dismiss claiming that deciding these issues would require "impermissibly delving into

matters of Cayuga law"; that this Court "lacks subject matter jurisdiction to resolve" those questions; and that thus "this lawsuit must be dismissed." *Id.* at 3, 6.

None of these claims justifies as-of-right intervention. The "Unity Council's" core interest in advancing its claim to be the Nation's "lawful government" is miles from this litigation, and the "Unity Council's" concededly nonjusticiable leadership claims cannot support its motion. These claims are instead the subject of a *different* proceeding before BIA, and what happens here will not impair the "Unity Council's" ability to advance its interest before BIA or internally under Cayuga law. The "Unity Council's" assertions, in any event, do not destroy this Court's federal-question jurisdiction.

### 1. The "Unity Council" Asserts No Legally Protectable Interest That Could Justify Intervention.

The interest on which the "Unity Council" bases its motion—that it is the Nation's "lawful government," Mem. at 1—is entirely "collateral." *Washington Elec. Coop., Inc. v. Mass. Mun. Wholesale Elec. Co.*, 922 F.2d 92, 96 (2d Cir. 1990). The core issue here is whether IGRA "gives the Nation the right to conduct . . . gaming activities on its reservation lands free of interference from state or local authorities." Compl. ¶ 2; *see Washington Elec.*, 922 F.2d at 97 (proposed "[i]ntervenors must "take the pleadings in a case as they find them" and cannot "radically alter that scope to create a much different suit"). Thus, this suit will establish whether the Nation (or individuals acting subject to its regulation) has the right to conduct Class II gaming on these lands. The answer to that question will not depend on who rightfully leads the Nation, nor will the suit determine who rightfully does so.

Indeed, not only would introducing the question of the Nation's leadership "radically alter th[e] scope" of the case "to create a much different suit," *Washington Elec.*, 922 F.2d at 97, but it would raise a question that (as the "Unity Council" acknowledges) the Court is powerless

11

to answer: The "issue of . . . leadership . . . involves questions of tribal law . . . not properly resolved by a federal court." *Shenandoah v. U.S. Dep't of Interior*, 159 F.3d 708, 712 (2d Cir. 1998).  The "Unity Council" cannot point to its concededly *nonjusticiable* Cayuga law-based claims in order to establish a "legally protectable" interest that would justify intervention. *Washington Elec.*, 922 F.2d at 97.

The forum for addressing the Nation's leadership dispute is instead BIA, which gives the controlling answer for federal purposes.[3]  As the Second Circuit has explained, BIA "has special expertise and extensive experience in dealing with Indian affairs," including questions of leadership that federal courts are not permitted to resolve.  *Shenandoah*, 159 F.3d at 713 (internal quotation marks omitted).  *Id.*  Such questions thus "must be determined" by the BIA.  *Id.*  After BIA has made a "determination" on "the issue of . . . leadership," *id.*, courts "owe deference to [BIA's] judgment . . . as to who represents a tribe," *Timbisha Shoshone Tribe v. Salazar*, 678 F.3d 935, 938 (D.C. Cir. 2012).  The Nation's leadership dispute is currently pending before BIA.  In the meantime, the "Unity Council's" nonjusticiable claim to be the Nation's "lawful government" does not establish any "legally protectable" interest that justifies as-of-right intervention, and this action could not possibly "impair," Fed. R. Civ. P. 24(a)(2), the "Unity Council's" claim to leadership.  BIA's decision is authoritative for federal purposes and will be unaffected by anything that happens here.

The "Unity Council" cannot avoid this result by asserting an interest in determining whether the Plaintiffs are "real part[ies]" in interest, and relatedly, whether the "this action was

---

[3] Plaintiffs fully agree that the Nation's leadership dispute ultimately "cannot be resolved by outsiders, including federal or state courts."  Mem. at 10.  It is for just this reason that the "Unity Council's" asserted interests in the Nation's rightful leadership have nothing to do with this action, and that (contrary to the "Unity Council's" claims) nothing that occurs here can undermine the Nation's "internal deliberations" or "its ability to resolve the dispute."  *Id.* at 11.

authorized by the proper government under Cayuga law."  Mem. at 6.  *On its face* that interest likewise depends on the "Unity Council's" interpretation of "Cayuga law," *id.*, and the "Unity Council"—once again—cannot identify a legally protectable interest based on such nonjusticiable claims.  *Shenandoah*, 159 F.3d at 712.[4]

To be sure, there *is* a legally protectable, *federal law*-based interest that arises when the tribal leadership that has been *recognized* by BIA seeks to dismiss a suit brought by another group.  That is because, when BIA recognizes a Nation's leaders, the court need not delve into tribal law, but instead may give effect to the federal action.  *California Valley Miwok Tribe v. Salazar*, 281 F.R.D. 43 (D.D.C. 2012), on which the "Unity Council" relies, stands for exactly this proposition: It permitted intervention only "because resolution of the matter in the plaintiffs' favor would directly interfere with the governance of the Tribe *as currently recognized*."  *Id.* at 47 (emphasis added).[5]  Here, the federal government has *never* recognized the "Unity Council" as the Nation's governing body; the one BIA decision that accepted the "Unity Council's" claim to leadership was vacated and never took effect.  By contrast, BIA has interacted with Mr. Halftown and Mr. Twoguns as Nation representatives for many years.

For similar reasons, any protectable interest that the "Unity Council" might have in contesting Plaintiffs' authorization to sue is "contingent" and cannot be impaired by this action.  *See Washington Elec.*, 922 F.2d at 97 (when an interest is thus "contingent upon the occurrence of a sequence of events before it becomes colorable, [it] will not satisfy the rule."); Fed. R. Civ.

---

[4] Indeed, this interest is not really independent of the "Unity Council's" core claim to be the Nation's lawful government.  The "Unity Council" does not (and could not plausibly) contend that any citizen of the Cayuga Nation would automatically have such an interest.  Rather, this asserted interest depends on the "Unity Council's" claim to *be* the Nation's "lawful government."  Mem. at 1.

[5] It is telling that, when the "Unity Council" quotes *California Valley Miwok*, it excises the key, italicized limit.  *See* Mem. at 10-11.

P. 24(a)(2).  The "Unity Council" could assert a legally protectable interest only if BIA in the future were to decide, for the first time, to recognize the "Unity Council" in an authoritative decision.  Where, as here, an interest depends on "prevailing in a separate action," it is too contingent to support intervention.  *St. John's Univ. v. Bolton*, 450 F. App'x 81, 83 (2d Cir. 2011).  And if that unlikely event comes to pass, nothing that occurs in this suit will prevent the "Unity Council" from seeking the dismissal of the Nation as a plaintiff from suits it believes are unauthorized.  *California Valley Miwok*, 281 F.R.D. at 47.[6]

### 2.  The "Unity Council's" Arguments For Dismissal Are Facially Meritless.

In any event, the "Unity Council's" meritless "real party in interest" and "lack of subject matter jurisdiction" arguments provide no basis for dismissal.  The lead plaintiff, the Cayuga Nation, is plainly a "real party in interest" under Rule 17(a).  *See* Compl. ¶ 5.  It is the Nation's right to game (and to license others to game) that is at issue in this case.  And the rule on "real party in interest," as the "Unity Council" concedes, requires only that an action "be brought by the person who, according to the governing substantive law, is entitled to enforce the right." *Oscar Gruss & Son, Inc. v. Hollander*, 337 F.3d 186, 193 (2d Cir. 2003) (internal quotation

---

[6] There is no merit to the "Unity Council's" claim that it has an interest at risk of impairment based on "the *stare decisis* effect of a judgment from this Court" recognizing "the authority of the Plaintiff to bring legal actions in the name of the Cayuga Nation." Mem. at 9. To begin, this assertion is irrelevant because the "Unity Council" has identified no legally protectable interest *at all*. Regardless, "speculative" *stare decisis* effects cannot satisfy Rule 24(a), *Greene v. United States*, 996 F.2d 973, 977 (9th Cir. 1993); *Fox v. Tyson Foods, Inc.*, 519 F.3d 1298, 1300 (11th Cir. 2008), and the "Unity Council's" concerns are highly speculative.  The "Unity Council" cites no case according *stare decisis* effect to the conclusion that a particular group is authorized to bring suit on behalf of an Indian nation. That is for good reason.  If this suit goes forward today, it does not mean that Mr. Halftown, Mr. Twoguns, and Mr. Wheeler are authorized to sue on the Nation's behalf tomorrow, when the BIA may have acted.  Moreover, this case is primarily about IGRA, and there is no dispute that the individuals who authorized the suit are exercising IGRA-conferred rights on the Nation's behalf.  A later suit, on a different basis, would present its own considerations.

marks omitted).  The "Cayuga Nation" is self-evidently a proper party to enforce the claim that IGRA protects the Nation's gaming.  Similar preemption suits are routinely brought on behalf of the Indian nation whose regulations are at issue.  *See, e.g.*, *Mashantucket Pequot Tribe v. Town of Ledyard*, 722 F.3d 457, 459 (2d Cir. 2013).

In addition, this Court obviously has subject matter jurisdiction, contrary to the "Unity Council's" claim.  Mem. at 6.  Plaintiffs' Complaint invokes federal-question jurisdiction under 28 U.S.C. § 1331, and a "plaintiff who seeks injunctive relief from state regulation, on the ground that such regulation is pre-empted by a federal statute . . . presents a federal question." *Burgio & Campofelice, Inc. v. N.Y. State Dep't of Labor*, 107 F.3d 1000, 1006 (2d Cir. 1997) (quoting *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 96 n.14 (1983)).  Here, the people who have authorized this suit—Mr. Halftown, Mr. Twoguns, and Mr. Wheeler—are self-evidently the proper individuals to bring this suit for the Nation.  It is these individuals who have been overseeing the Nation's exercise of the federal gaming rights threatened by the Village's actions. And it is these individuals who have interacted with NIGC, as the body charged with regulating these federal rights.  NIGC continues to deal with Mr. Halftown, Mr. Twoguns, and Mr. Wheeler as the people overseeing the Nation's gaming.  The NIGC does so, moreover, even though it asserts authority to order the *closure* of the Nation's gaming facility if it is not being operated by the Nation's proper leadership.  *See Sac & Fox Tribe*, 439 F.3d at 834.  It is inconceivable that these individuals could not protect the Nation's federal rights.

There is no merit to the "Unity Council's" suggestion that it can destroy this Court's jurisdiction simply by asserting a claim to be the Nation's true leadership.  As a preliminary matter, the "Unity Council's" argument ignores that Plaintiffs include individuals who are

threatened with criminal and civil penalties by the Village's actions—and thus this suit will go forward regardless of its arguments about the Nation.

Nor do the "Unity Council's" claims prevent the Nation itself from continuing as a plaintiff. Federal courts do not become unable to exercise their normal jurisdiction whenever a dissident group asserts a leadership claim. Were that the law, it would effectively drive countless Indian nations out of court, as leadership claims by dissident groups like the "Unity Council" are regrettably common. To the contrary, such claims do not require courts to resolve any nonjusticiable issue of tribal law. Instead, as noted above, courts "defer[]" to determinations made by the executive. *Shoshone*, 678 F.3d at 938; *see Shenandoah*, 159 F.3d at 715. Here, every relevant executive-branch determination demonstrates that Mr. Halftown, Mr. Twoguns, and Mr. Wheeler may maintain this action. The dispositive executive actions include not just the continuing regulation of these individuals by NIGC, as just discussed, but also the actions of BIA. There is no question that Mr. Halftown and Mr. Twoguns are the federal representatives whom BIA has most recently recognized, and that the BIA has *never* recognized the "Unity Council" in an effective decision. Even since May 15, BIA has continued to accord certain forms of effective interim recognition to Mr. Halftown (by maintaining his drawdown authority), even if not characterizing it as such. *Old Elk*, 18 IBIA at 393-94. This is consistent with BIA's practice of dealing with an Indian nation's "last undisputed . . . leadership" when necessary during a leadership dispute. *Poe*, 43 IBIA at 112.[7]

_____

[7] Although Plaintiffs will not fully respond to the "Unity Council's" motion to dismiss here, none of the cases cited in that motion casts doubt on this Court's subject matter jurisdiction. In particular, the "Unity Council" cites no case dismissing claims by an Indian nation against a non-Indian third party, in an action unrelated to tribal leadership, on the ground that a dissident group that had never been recognized authoritatively by the Department of Interior claimed to be the Nation's true leadership.

Indeed, the Second Circuit has left no doubt that dismissal here would be improper.  In *Shenandoah*, a district court had dismissed an action because it had determined that the plaintiffs did "not represent the Nation" and therefore the action could not proceed.  *Shenandoah*, 159 F.3d at 715.  The Second Circuit found this was error.  There was a dispute, the Second Circuit explained, over the "purported removal" of the Nation's existing leadership.  And because this question "ha[d] not been determined by" BIA, the district court's dismissal was "premature[]."  *Id.*  That rule forecloses dismissal here, where BIA has not determined that Mr. Halftown and Mr. Twoguns have been removed.[8]

### B.  The "Unity Council's" Unexhausted Claims Regarding The Validity Of The Nation's NIGC-Approved Gaming Ordinance Cannot Support Intervention.

Alternatively, the "Unity Council" asserts a purportedly separate interest in enforcing "IGRA's requirement that Indian nation governments validly approve any Class II" gaming

---

[8] To be clear, this action may simply go forward; there is need to await any further affirmative recognition decision based on the BIA proceedings that commenced on May 15.  Even if the Court concluded that some further affirmative recognition decision was needed, however, dismissal still would be "premature[]."  *Shenandoah*, 159 F.3d at 715.  The proper course would be to stay this case pursuant to the doctrine of "primary jurisdiction" and to enjoin enforcement action by the Village in the meantime.  "Primary jurisdiction" applies when a claim "is originally cognizable in the courts," but its enforcement "requires, or is materially aided by, the resolution of threshold issues, usually of a factual nature, which are placed within the special competence of the administrative body."  *Golden Hill Paugussett Tribe of Indians v. Weicker*, 39 F.3d 51, 58-59 (2d Cir. 1994).  That doctrine, combined with the court's inherent power to control its own calendar, permits the court to stay this action pending the BIA's decision; the court may maintain an injunction during the stay, moreover, if doing so would not undermine the agency's decisionmaking process.  *See Pharm. Research & Mfrs. of Am. v. Walsh*, 538 U.S. 644, 674 (2003) (Breyer, J., concurring in part and in the judgment) (observing that "courts have sometimes accompanied a stay with an injunction designed to preserve the status quo").

Courts have applied the doctrine for matters within the competency of both BIA and NIGC.  *Golden Hill*, 39 F.3d at 59-60 (BIA); *United States v. 43.47 Acres of Land, More or Less, Situated in County of Litchfield*, 896 F. Supp. 2d 151 (D. Conn. 2012) (BIA); *Grand Traverse Band of Ottawa & Chippewa Indians v. U.S. Att'y for W. Dist. of Mich.*, 46 F. Supp. 2d 689 (W.D. Mich. 1999) (NIGC); *Arizona v. Tohono O'odhom Nation*, No. CV-11-0296, 2011 WL 2357833 (D. Ariz. June 15, 2011) (NIGC).  The Second Circuit's opinion in *Shenandoah* makes clear that it would regard similar procedures as appropriate here, if deemed necessary.

ordinance. Mem. at 8. The provision on which it relies is 25 U.S.C. § 2710(b)(1)(B), which provides that a Indian nation may engage in Class II gaming only if "the governing body . . . adopts an ordinance or resolution which is approved by the Chairman." But the Cayuga Nation *has* an NIGC-approved Class II gaming ordinance that was also approved by the Nation Council. *See* Compl. ¶ 25; Halftown Oct. 28 Decl. ¶ 4 & Exs. A& B. The "Unity Council" nonetheless contends that this ordinance is not valid because the "Unity Council" supposedly is "the lawful government of the Cayuga Nation with sole authority for determining whether to authorize Class II gambling." Mem. at 8. It then asserts that this contention requires dismissal because it is a question of Cayuga law. *See* Mem. of L. in Support of "Unity Council's" Proposed Mot. to Dismiss at 9, ECF No. 28-1.

As a basis for intervention, those claims fail for multiple reasons. *First*, this asserted interest again depends on the "Unity Council's" claim to be the Nation's lawful government. It thus is not a basis for intervention for the same reasons given above.

*Second*, the "Unity Council" has no basis for asserting this interest *in court* because it has failed to exhaust its administrative remedies. The premise of the "Unity Council's" motion is that its assertions require *this Court* to determine whether the Nation's ordinance was validly enacted. But that is false. Under IGRA, it is *NIGC*'s duty to "approv[e]" (or not) an ordinance purportedly adopted by "the governing body of the Indian tribe." 25 U.S.C. § 2710(b)(1)(B); 25 C.F.R. § 522.1-.5. And here, it is undisputed that NIGC duly approved the ordinance submitted by Plaintiffs. Halftown Oct. 28 Decl. ¶ 4 & Ex. B; Halftown Supp. Decl. ¶ 9. If the "Unity Council's" members believed the approval was error, they could have challenged it. Even now, the "Unity Council" may invoke NIGC's "amendment" procedure to convince NIGC to rescind its approval (which would permit NIGC to consider the leadership claims that this Court cannot

18

resolve).  *See* 25 C.F.R. § 522.3.  IGRA then provides for judicial review of final NIGC decisions.  25 U.S.C. § 2714.  Here, however, the "Unity Council" has only submitted a lone letter to NIGC—and only *after* this action was filed.  George Decl. Ex. B.  It thus has failed to comply with IGRA's "statutory exhaustion requirement."  *United States ex rel. St. Regis Mohawk Tribe v. President R.C.—St. Regis Mgmt. Co.*, 451 F.3d 44, 50 (2d Cir. 2006).  "By proceeding directly to the district court," the "Unity Council" has "impermissibly sought a determination outside the administrative review scheme crafted by Congress."  *Id.* at 51.  The "Unity Council" has no protectable interest in asserting this unexhausted objection here—and any such interest cannot be impaired, because the NIGC's process remains available to it.

### C. The "Unity Council's" "Oppos[ition To] All Forms Of Gambling" Is Not A Protectable Legal Interest That Can Support Intervention.

There is no mystery why the "Unity Council's" members are *interested* in having this case dismissed (besides seeking to starve their rivals of an important source of revenue).  The "Unity Council" boldly pronounces that it "opposes all forms of gambling on Cayuga Nation lands," Mem. at 8.  And it now seeks to advance that viewpoint by exercising a veto over Plaintiffs' ability to defend themselves from threatened action by the Village.

The "Unity Council's" policy-based opposition to gaming is not a "legally protectable" interest that can support as-of-right intervention here.  This case is solely about whether the Nation has a federal *right* to engage in gaming.  *Oneida Indian Nation*, 201 F.R.D. at 67 (quoting *Washington Elec.*, 922 F.2d at 96).  It is not about whether gaming is a good idea for the Cayuga Nation, or whether it is permissible under Cayuga Nation law.  The Second Circuit has rejected a similar attempt to use intervention to inject policy debates irrelevant to the legal issues at stake.  In *United States v. City of New York*, 198 F.3d 360 (2d Cir. 1999), the federal government sought to enforce federal laws requiring filtration of drinking water against New York City, and a

private group sought to intervene to "prevent any filtration of the . . . water supply" based on its disagreement with "the wisdom of filtration." *Id.* at 365. Although these policy views "at an abstract level . . . involve[d] filtration," the Court explained that they were "irrelevant to th[e] action" and could not support intervention. *Id.* The "Unity Council's" views about the wisdom (or legality under Cayuga law) of gaming are likewise out of place.[9]

### D.  If The Unity Counsel Had A Protectable Interest In The Status Of Lands Covered by the Treaty Of Canandaigua, Plaintiffs Would Adequately Represent It.

Finally, the "Unity Council's" asserted interest in "whether the territory set aside by the Treaty of Canandaigua of 1794 is Indian country for purposes of federal law," Mem. at 7, fails to support its motion to intervene for the same basic reasons given above: It depends on the "Unity Council's" claim to be the Nation's government, but that interest cannot become legally cognizable unless BIA someday recognizes the "Unity Council."

This interest also fails for an independent reason: As-of-right intervention is unwarranted if "existing parties adequately represent" the interest asserted, Fed. R. Civ. P. 24(a)(2), and there can be no doubt that Plaintiffs adequately represent this interest. Plaintiffs' IGRA preemption argument depends on whether the territories set aside by the Treaty of Canandaigua remain a federally recognized reservation. *See* Pls.' Mem. of L. in Support of Order to Show Cause at 3-5, 7, 10, 12-19, 20 (Oct. 28, 2014), ECF No. 5-1. On this point, Plaintiffs' position is *the same* as that of the "Unity Council." There can be no doubt Plaintiffs will advance that position with vigor, given that it is a linchpin of their claim. As-of-right intervention is unwarranted when an

---

[9] Moreover, any protectable interest of the "Unity Council" in pursuing its opposition to gaming is not at risk of impairment. Even if Plaintiffs succeed in establishing the Nation's right to engage in gaming, the "Unity Council" may continue to press its policy- and Cayuga law-based opposition within the Nation. The "Unity Council" may also continue its decade-long campaign to obtain federal recognition, and to promote its views through that avenue.

existing party's "interests . . . are substantially similar, if not identical, to" an intervenor's. *Citizens Against Casino Gambling in Erie Cnty. v. Hogen*, 704 F. Supp. 2d 269, 286 (W.D.N.Y. 2010), *aff'd*, 417 Fed. App'x 49 (2d Cir. 2011).[10]   That is so here.

## II.   Permissive Intervention Is Likewise Inappropriate Here.

The "Unity Council's" alternative request for permissive intervention under Rule 24(b)(1)(B) should likewise be denied.   The "Unity Council's" motion fails to establish the threshold showing that it "has a claim or defense" in this action. Fed. R. Civ. P. 24(b)(1)(B). And even if it did not, this Court should exercise its "broad discretion to deny" the request. *New York v. Jewell*, No. 08-cv-644, 2014 WL 841764, at *2 (N.D.N.Y. May 4, 2014) (quoting *Catanzano ex rel. Catanzano v. Wing*, 103 F.3d 223, 234 (2d Cir. 1996)).

A proposed intervenor must "ha[ve] a claim or defense" sharing a common question of law or fact with the action. Fed. R. Civ. P. 24(b)(1)(B).   If it does not satisfy this requirement, this Court has explained, permissive intervention is improper. *Marriott*, 227 F.R.D. at 167.   For a "defense" (which is what the "Unity Council" claims to have here), this means that the intervening defendant could be subject to a *suit* based on some fact or point of law asserted in the action—for example, in a challenge to the constitutionality of a village ordinance, the state may seek to intervene to assert its defenses to a similar challenge to its own law. *See, e.g.*, *Kessler v. Grant Cent. Dist. Mgmt. Ass'n*, 158 F.3d 92, 98 (2d. Cir. 1998).

---

[10] There is nothing to the contrary in *Oneida Indian Nation of Wisconsin v. New York*, 732 F.2d 261, 266 (2d Cir. 1984), which the "Unity Council" cites for the proposition that the "adversity of interest between Clint Halftown and the Unity Council precludes a finding that he can adequately represent the Council." Mem. at 11.   In *Oneida Indian Nation*, it was clear that the plaintiffs and the proposed intervenors had adverse *legally protectable* interests in the suit: They were nations with "conflicting claims to the same lands," and those claims were the subject of the lawsuit.   732 F.2d at 266.   Here, the matters on which the "Unity Council" urges that adversity exists—relating to the Nation's rightful leadership, the wisdom of gaming, and so on— are not the subjects of this action or a legally protectable interest of the "Unity Council."

There is no such defense here.  The "Unity Council" does not identify any claim that Plaintiffs or anyone else could assert *against the "Unity Council"* based on the issues being litigated in this case.  *See In re Ivan F. Boesky Secs. Litig.*, 129 F.R.D. 89, 95 (S.D.N.Y. 1990) ("[T]he proposed Intervenors allege no claims against . . .  any of the . . . defendants . . .; nor do any of those defendants assert any claims against the proposed Intervenors.").  Instead, the "Unity Council" justifies intervention on the ground that the issues raised in its proposed motion to dismiss are "likely to be included in the defenses *raised by the Defendants*."  Mem. at 3 (emphasis added).  But that is the *Village*'s defense, not the "Unity Council's."  Rule 24 does not authorize permissive intervention for the sake of opining on *another party*'s claim or defense.

This Court has previously found that a materially identical motion failed the basic requirement for permissive intervention.  In *Marriott*, an insurer sought permissive intervention on the ground that it had a "significant interest" by virtue of its insurance relationship.  227 F.R.D. at 167.  This Court explained that whatever the "nature and extent of th[is] interest," it was not a "claim or defense."  *Id.*  Instead, the applicant desired "solely to argue an issue on the pending motions."  *Id.*  The Court therefore deemed intervention to be "improper."  So too here.[11]

In any event, the Court retains  "broad discretion to deny an applicant's motion."  *Jewell*, 2014 WL 841764, at *2.  And in exercising that discretion, the court considers "substantially the

---

[11] The Court noted that this failure was especially clear given the applicant's "reliance upon the defendant's" pleadings, and its failure to comply with Rule 24(c)'s requirement of a "pleading." *Marriott*, 227 F.R.D. at 167 (quoting Fed. R. Civ. P. 24(c)).  Here too, the Unity Council has failed to comply with Rule 24(c).  That failure provides an independent basis to deny *both* as-of-right and permissive intervention.  *See Abramson v. Pennwood Inv. Corp.*, 392 F.2d 759, 761 (2d Cir. 1968).  Although the "Unity Council" has filed a proposed motion to dismiss, "a motion to dismiss is not" a "pleading," as Rule 24(c) requires.  *Hale v. Rao*, No. 9:08-cv-612, 2009 WL 3698420, at *3 n.8 (N.D.N.Y. Nov. 3, 2009); *see* Fed. R. Civ. P. 7(a); *Gabauer v. Woodcock*, 425 F. Supp. 1, 3 (E.D. Mo. 1976), *aff'd in part, rev'd in part on other grounds*, 594 F.2d 662 (8th Cir. 1979).

same factors" applicable to as-of-right intervention.  *Grewal v. Cueno*, No. 13 Civ. 6836, 2014 WL 2095166, at *3 (S.D.N.Y. May 14, 2014) (quotation marks omitted); *see In re Bank of N.Y. Derivative Litig.*, 320 F.3d 291, 300 n.5 (2d Cir. 2003); *Floyd v. City of N.Y.*, 302 F.R.D. 69 (S.D.N.Y. 2014).  In particular, the court considers "whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties," as well as "the nature and extent of the intervenors' interests"; the "degree to which those interests are 'adequately represented'"; and whether the intervenor will "contribute to full development of the" factual and legal issues in the suit.  *H.L. Hayden Co. of N.Y. v. Siemens Med. Sys., Inc.*, 797 F.2d 85, 89 (2d Cir. 1986) (citation omitted).

By way of this discretion, the "Unity Council's" motion should be denied for the same reasons given above.  *Grewal*, 2014 WL 2095166, at *3.  The "Unity Council's" purported "interests" are collateral, nonjusticiable, and properly presented to the BIA.  The "Unity Council's" participation would "unduly delay or prejudice the adjudication," *H.L. Hayden*, 797 F.2d at 89, by injecting into this suit "additional discovery, objections, briefs, arguments, and motions" on these out-of-place issues.  *Battle v. City of New York*, No. 11 Civ. 3599, 2012 WL 112242, at *7 (S.D.N.Y. Jan. 12, 2012).  And denying the motion, by contrast, will not detract from this suit's efficient and just resolution.  *H.L. Hayden*, 797 F.2d at 89.  If any of the "Unity Council's" arguments was *actually* a basis for dismissal (and none is), the Village will surely raise such arguments.

## CONCLUSION

For the foregoing reasons, the motion to intervene should be denied.


Respectfully submitted,


23

/s/  John G. Powers
John G. Powers (Bar No. 508934)
Hancock Estabrook LLP
1500 AXA Tower I
100 Madison Street
Syracuse, New York 13202
(315) 565-4500

David W. DeBruin (*pro hac vice*)
Joshua M. Segal (*pro hac vice*)
Matthew E. Price (*pro hac vice*)
Jenner & Block LLP
1099 New York Ave., N.W.
Washington, DC  20001