**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK**

|  |  |  |
|---|---|---|
| CAYUGA NATION<br>AND JOHN DOES 1-20,<br><br>Plaintiffs,<br><br>v.<br><br>HOWARD TANNER, VILLAGE<br>OF UNION SPRINGS CODE ENFORCEMENT<br>OFFICER, IN HIS OFFICIAL CAPACITY;<br>EDWARD TRUFANT, VILLAGE OF UNION<br>SPRINGS MAYOR, IN HIS OFFICIAL<br>CAPACITY; CHAD HAYDEN, VILLAGE OF<br>UNION SPRINGS ATTORNEY, IN HIS<br>OFFICIAL CAPACITY; BOARD OF<br>TRUSTEES OF THE VILLAGE OF UNION<br>SPRINGS, NEW YORK; AND THE VILLAGE<br>OF UNION SPRINGS, NEW YORK<br><br>Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | No.: 5:14-cv-1317-DNH-ATB |

**SUPPLEMENTAL DECLARATION OF CLINT HALFTOWN
IN OPPOSITION TO THE "UNITY COUNCIL'S" MOTION TO INTERVENE**

I, Clint Halftown, hereby declare as follows:

      1.     I am a member of the Cayuga Nation Council ("Nation Council," or "Council"), the governing body of the Cayuga Nation ("Nation"), and I have been the federal representative of the Cayuga Nation ("Nation") since 2003.   I submit this declaration in opposition to the motion to intervene of the "Unity Council."  The statements made in this declaration are based on my personal knowledge, including on information provided to me by colleagues or other personnel working under my supervision.

I.      **The Cayuga Nation's Government**

2.      The governing body of the Cayuga Nation is the Cayuga Nation Council.

3.      I have long been a Heron Clan representative to the Nation Council.   Tim Twoguns and Gary Wheeler—who, as discussed below, have cooperated with me in overseeing the Nation's gaming and who have authorized this action—have long been Turtle Clan representatives to the Nation Council.

4.      In 2002, the Council unanimously charged me with pursuing economic development on the Nation's behalf.  A true and correct copy of that authorization is attached as Exhibit A.

5.      In 2003, the Council unanimously selected me and Mr. Twoguns as the Nation's federal representative and alternate federal representative, respectively.   That action gave me authority to execute contracts and other agreements with U.S. government agencies.   The Council communicated that selection in a letter to the Bureau of Indian Affairs ("BIA").  A true and correct copy of that letter is attached as Exhibit B.

6.      BIA accepted that selection, and I acted as the Nation's federal representative without quarrel.

II.     **The Opening of the Lakeside Entertainment Facility, Under the Regulation of NIGC.**

7.      In 2004, pursuant to my mandate to pursue economic development on the Nation's behalf, I oversaw the opening of Lakeside Entertainment, a Class II gaming facility regulated under the Indian Gaming Regulatory Act ("IGRA") and located in Union Springs, New York.

8.     The National Indian Gaming Commission ("NIGC") is the federal entity responsible for overseeing Indian gaming.  From the beginning, NIGC has regulated the Nation's Class II gaming activities at Lakeside Entertainment.

9.     When in 2003 the Nation Council first enacted an ordinance authorizing Class II gaming, as IGRA requires, I submitted that ordinance to NIGC.   A true and correct copy of that submission is attached as Exhibit A to my October 28, 2014 Declaration.  NIGC approved that ordinance, and its approval remains in effect.   A true and correct copy of that approval is attached as Exhibit B to my October 28, 2014 Declaration.

10.     The same ordinance also established the Nation's Class II Gaming Commission. Today, that Commission is chaired by Mr. Twoguns.   Mr. Wheeler and I are the other two members.

11.     Under NIGC regulation, the Nation engaged in Class II gaming at the Lakeside Entertainment facility in 2004 and 2005.   In 2005, the Nation voluntarily and temporarily suspended gaming at Lakeside Entertainment.

### III.     The First Two Attempts of Dissidents Associated with the "Unity Council" to Gain Control of the Nation

12.     In 2005, a group of dissidents (composed largely of the same individuals who now claim to be or support the "Unity Council") petitioned BIA, claiming that I was no longer a member of the Nation Council or the Nation's federal representative.  They asserted that I had been "removed" from the Nation Council as clan representative of the Heron Clan and replaced.

13.     The dissidents' assertion was incorrect.  I have never been validly removed as a clan representative under Cayuga law, and the Nation Council has never validly altered my status as the Nation's federal representative under Cayuga law.

3

14.     In decisions issued in 2005 and 2006, BIA rejected the dissidents' claim as to my status and, instead, continued to recognize me as the Nation's federal representative.  The Interior Board of Indian Appeals ("IBIA") affirmed in 2009.

15.     In 2011, the dissidents—now calling themselves the "Unity Council"—again tried to convince the federal government to alter its recognition of me and Mr. Twoguns.  They once again asserted that I had been removed from the Nation Council (and replaced) long ago, even though BIA had already rejected this claim.  They also claimed that Mr. Twoguns and Mr. Wheeler had been removed and replaced in 2011 as clan representatives of the Turtle Clan.  As a result of these purported removals, the dissidents asserted, the Nation was now governed by a new "Unity Council."

16.     These claims were incorrect under Cayuga law.  The purported removals of Mr. Twoguns and Mr. Wheeler in 2011 were not valid under Cayuga law, just as the earlier purported removal of myself was not valid under Cayuga law.  Instead, under Cayuga law, all three of us remained members of the Nation Council, I remained the Nation's federal representative, and Mr. Twoguns remained the Nation's alternate federal representative.

17.     Nonetheless, the then-Regional Director of BIA issued a decision that would have withdrawn recognition of me and Mr. Twoguns.  That decision, however, was appealed to the IBIA, and it never went into effect.

18.     Mr. Twoguns, Mr. Wheeler, and I vigorously challenged that decision before the IBIA.  We explained that it was inconsistent with Cayuga law, and also that the Regional Director's new decision improperly found that I *had* been removed long ago, without recognizing his own prior decision that I had *not* been removed.

4

19.     The IBIA vacated the Regional Director's decision without reaching the merits.  It found that BIA had no reason to make a leadership decision in 2011 because there was no separate "federal action" pending that required a determination.

20.     Even after the Regional Director's 2011 decision, BIA has continued to interact with me and Mr. Twoguns as the Nation's federal representative and alternative representative, respectively.  By contrast, BIA still has never recognized the "Unity Council" in an effective decision.

21.     I understand that the "Unity Council" claims to have been operating as the Nation's government since 2011.  That is untrue.  Rather, Mr. Twoguns, Mr. Wheeler, and I (as the three active members of the Cayuga Nation Council) have continued to operate as the Nation's government, have continued to promote the Nation's economic development, have continued to provide services to Nation citizens as the Nation's government, and have continued to interact with various federal agencies on the Nation's behalf.  The "Unity Council's" activities, by contrast, have consisted largely of writing letters to various individuals asserting their claim to be the Nation's lawful government.

## IV.   The Nation's Resumption of Gaming at Lakeside Entertainment in 2013, Under the Regulation of NIGC

22.     The Nation resumed gaming activities at the Lakeside Entertainment facility in 2013.  These activities take place at the direction and under the oversight of myself, Mr. Twoguns, and Mr. Wheeler.

23.     The Nation's Gaming Commission (comprised of Mr. Twoguns, Mr. Wheeler, and myself) reissued the facility license for Lakeside Entertainment in 2013.  I forwarded that

12673.1

license and other required documents to NIGC. A true and correct copy of that submission is attached as Exhibit D to my October 28, 2014 Declaration.

24.     Under the supervision of Mr. Twoguns, Mr. Wheeler, and myself, the Nation has taken action to comply with IGRA and NIGC regulations regarding the procedures for licensing primary management officials and key employees. On multiple occasions the Nation has submitted to NIGC background check materials, including fingerprints, for personnel whom NIGC's regulations require to be licensed.

25.     NIGC has duly responded, and has conducted its regulation of the Nation's gaming through myself, Mr. Twoguns, and Mr. Wheeler. It has assisted in processing fingerprints, has provided the resulting Criminal History Record Information ("CHRI") to the Nation, and has relayed that it has "no objection" to the licensing of eligible employees. NIGC has directed its responses to Mr. Twoguns, as the Chairman of the Nation's Class II Gaming Commission. As of the date of the making of this declaration, 28 licenses have been issued by Mr. Twoguns, Mr. Wheeler, and me—on the Nation's behalf—in accordance with NIGC regulations.

26.     In addition, NIGC has approved the Nation's request for access to its secure, restricted Tribal Access Portal (https://tap.nigc.gov), which request had been submitted by Mr. Twoguns, Mr. Wheeler, and me on the Nation's behalf. An NIGC official also has visited Lakeside Entertainment on multiple occasions. Individuals working under the direction of Mr. Twoguns, Mr. Wheeler, and me have had multiple contacts with NIGC personnel, on the Nation's behalf. NIGC has also listed Lakeside Entertainment in its "Gaming Tribe Report." This report designates the email address of B.J. Radford—who manages the facility under the

oversight of Mr. Twoguns, Mr. Wheeler, and me—as the contact for Lakeside Entertainment.  A true and correct copy of this report is attached as Exhibit E to my October 28, 2014 Declaration.

**V.     The Unity Council's Third Attempt to Gain Control of the Nation, and NIGC's Continuing Interaction with Mr. Twoguns, Mr. Wheeler, and Me.**

27.     Since April 2014, the "Unity Council" has launched a third campaign to gain control of the Nation.  Specifically, a small group of dissidents affiliated with the "Unity Council" has repeatedly used force and violence to seize certain Nation properties.  They have tried and failed to gain control of several more.

28.     I understand that the "Unity Council" claims that a "peaceful transition of control over some Cayuga Nation businesses and buildings" occurred after its loss before IBIA.  That is untrue.  The "Unity Council's" attempts to take and hold Nation properties have frequently involved force and violence.  These actions have compelled the Nation to hire security guards to prevent further seizures, at great expense to the Nation.

29.     The question of the Nation's leadership is currently pending (once again) before BIA.  On May 15, 2014 BIA Regional Director Franklin Keel sent a letter to both sides soliciting views on (1) whether certain outstanding requests to renew or modify contracts created a need for federal action that necessitated a recognition decision; and (2) whom BIA should recognize as the Nation's leadership.  Although the letter did "not express any view recognizing either side," it "maintain[ed] the status quo with respect to the Nation's drawdown authority" on particular accounts held on the Nation's behalf, "keeping drawdown authority with the current individual."  This meant that the letter preserved my authority to access those funds.  A true and correct copy of that letter is attached as Exhibit C.

7

30.     While proceedings have been pending before BIA, the Nation has drawn down funds in the accounts referenced in BIA's May 15 letter, based on my authorization.

31.     Likewise, since BIA's May 15 letter, NIGC has continued to interact with the Nation as before, through Mr. Twoguns, Mr. Wheeler, and me.   In particular, NIGC has continued to assist in processing fingerprints and has continued to relay its "no objection" to the licensing of eligible employees.   Moreover, NIGC continues to direct these responses to Mr. Twoguns, as the Chairman of the Nation's Class II Gaming Commission.   In addition, on September 30, 2014, Mr. Twoguns, Mr. Wheeler, and I received a "Dear Tribal Leader" notification from NIGC.   Finally, NIGC has also not altered the Nation's listing in its "Gaming Tribe Report," including the designation of B.J. Radford as the contact point.   A true and correct copy of this report is attached as Exhibit E to my October 28, 2014 Declaration.

32.     Meanwhile, both sides have now submitted their views to BIA, in pleadings that each span hundreds of pages.   Both sides agree that a federal recognition decision is required. The submission on behalf of Mr. Twoguns, Mr. Wheeler, and me explains that, under Cayuga law, Mr. Twoguns and me remain the Nation's federal representatives.   It also details results of a "statement of support campaign" conducted since May 2014, which shows that more than 60% of adult Cayugas affirm the role of myself, Mr. Twoguns, and Mr. Wheeler in the Nation's leadership and reject the "Unity Council."   Finally, it explains that, at the least, BIA should adhere to its settled practice of recognizing an Indian nation's last undisputed leadership, which again requires continued recognition of myself and Mr. Twoguns.

33.     These submissions will be considered by a new decisionmaker.   Former BIA Regional Director Keel announced his retirement shortly after the filing of the submissions.

8

34.     While the question of the Nation's leadership has been pending before BIA, two of the "Unity Council's" own members have announced their decision to "secede" because they deem the "Unity Council" "not fit to govern."  Mr. Twoguns, Mr. Wheeler, and I have brought these actions to the attention of BIA in a letter dated October 7, 2014, and explained why they require BIA to continue its recognition of me and Mr. Twoguns.  We are now awaiting action from BIA.  A true and correct copy of this letter, which attaches the announcement of secession, is attached as Exhibit D.

**VI.     The Threats Against the Nation's Gaming Activities by the Village of Union Springs.**

35.     Ever since the Nation reopened the Lakeside Entertainment facility in July 2013, and continuing to the filing of this action, the Village of Union Springs and its officials have repeatedly threatened to enforce the Village's anti-gaming laws against Lakeside Entertainment. These threats are fully detailed in the Complaint in this action, and in the papers supporting Plaintiffs' proposed Order to Show Cause.

36.     These threats have included "Notices of Violations" and "Orders to Remedy" issued to the Lakeside Entertainment facility, which operated at the time (and continues to operate today) under the supervision of Mr. Twoguns, Mr. Wheeler, and me.

37.     B.J. Radford—who manages the Lakeside Entertainment facility under the supervision of Mr. Twoguns, Mr. Wheeler, and me—has repeatedly corresponded with the Village's zoning officer, Defendant Howard Tanner.  This correspondence is detailed in the October 28, 2014 Declaration of B.J. Radford.

38.     In addition, attorneys working under the supervision of myself, Mr. Twoguns, and Mr. Wheeler have repeatedly corresponded with Village officials and attorneys, including

9

12673.1

Village Attorney Chad Hayden and outside counsel.  Among other things, on October 27, 2014, Mr. DeBruin received a call from Philip G. Spellane, Esq., outside counsel for the Village, informing him that the Village intended to proceed with enforcement activity against the Lakeside Entertainment facility.  This correspondence is detailed in the October 28, 2014 Declaration of David W. DeBruin.

39.     In the face of these threatened enforcement actions, Mr. Twoguns, Mr. Wheeler, and I authorized this action against the Village and certain of its officials.  This is consistent with our prior practice: Mr. Twoguns, Mr. Wheeler, and Mr. Twoguns have previously authorized litigation in federal and state courts on behalf of the Cayuga Nation.  This includes the authorization in 2008 of the litigation that culminated in *Cayuga Indian Nation of N.Y. v. Gould*, 14 N.Y. 3d 614 (2010), and the authorization in 2011 of the litigation that culminated in *Cayuga Indian Nation of N.Y. v. Seneca Cnty., N.Y.*, 761 F.3d 218 (2d Cir. 2014).

10

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on _12/1/14_ ,

Clint Halftown

12673.1

# EXHIBIT A

Jan 28 05 10:18a

P.11




# HAUDENOSAUNEE
## CAYUGA NATION
P.O. BOX 11 VERSAILLES, NY 14168-0011 716-532-4847, FAX 716-532-5417



| | |
|---|---|
| Whereas | the Cayuga Nation being a sovereign Nation that has existed since immemorial upon Turtle Island; |
| Whereas | the Cayuga Nation having binding Treaties with the United States recognizing our sovereign lands; |
| Whereas | the Cayuga Nation having our lands stolen by the State of New York through fraudulent and illegal agreements; |
| Whereas | the Cayuga Nation being landless for the past 200 years; |
| Whereas | the Cayuga Nation attempts to regain our lands through a land claim lawsuit filed in 1980 for 64,015 acres of land at the northern shores of Cayuga Lake; |

Therefore Be It Resolved

    I, Chief Vernon Isaac, condoled federally recognized chief of the Cayuga Nation extend authority to Clint Halftown for the purposes of pursuing economic development on behalf of the Cayuga Nation in a attempt to regain our ancestral home lands.

_____        9-27-02
Chief Vernon Isaac              Date

_____        9-27-02
Witness                   Date

Cayuga Nation Seal

ATTACHMENT E

# EXHIBIT B



# HAUDENOSAUNEE
## CAYUGA NATION
P.O. BOX 11 VERSAILLES, NY 14168-0011 716-532-4847, FAX 716-532-5417



August 11, 2003

Mr. Franklin Keel
Director
Eastern Area Office
Bureau of Indian Affairs
U.S. Department of the Interior
711 Stewarts Ferry Pike
Nashville, Tennessee 37214

Dear Director Keel:

Greetings from the Cayuga Nation Chiefs, Representatives, Clan Mothers and Peoples. We hope that all is well with you and your family.

With the death of Chief Vernon Isaac, the Cayuga Nation Council recognizes Clint C. Halftown as the Representative of the Cayuga Nation in its government-to-government relationship with the United States of America. Timothy Twoguns is an alternate signatory, should Clint C. Halftown be unavailable. As the Representative of the Cayuga Nation, Clint C. Halftown has the authority to negotiate and execute contracts and other agreements with all U.S. departments and agencies.

Oneh,

Gary Wheeler
Turtle Clan Representative
Cayuga Nation

Clint C. Halftown
Heron Clan Representative
Cayuga Nation

Timothy Twoguns
Turtle Clan Representative
Cayuga Nation

William Jacobs
Heron Clan Representative
Cayuga Nation

# EXHIBIT C



# United States Department of the Interior

## BUREAU OF INDIAN AFFAIRS

Eastern Regional Office
545 Marriott Drive, Suite 700
Nashville, TN 37214

MAY 1 5 2014

Messrs. Daniel J. French and Lee Alcott, Esq.
French-Alcott, PLLC Attorneys at Law
300 South State Street
Syracuse, New York 13202

Eric Facer, Esq.
1025 Connecticut Ave NW
Suite 1000
Washington DC 20036

Dan Crane, Esq.
514 Seward Square SE
Washington DC 20003

David Debruin, Esq.
Jenner and Block
1099 New York Avenue, NW Suite 900
Washington, DC 20001

Mr. Joseph J. Heath, Esq.
Attorney at Law
300 South State Street
Syracuse, New York 13210

Ms. Alexandra C. Page, Esq.
Berkey Williams LLP
616 Whittier St NW
Washington, DC 20012

Curtis G. Berkey, Esq.
Berkey Williams LLP
2030 Addison Street, Suite 410
Berkeley, CA 94704

Cayuga Nation
P.O. Box 116
Akron, New York 14001

Cayuga Nation
P.O. Box 803
Seneca Falls, NY 13148

Ladies and Gentlemen:

The Eastern Regional Office ("Region") is in receipt of several recent submissions from individuals claiming to represent the Cayuga Nation ("Nation"):

- Two letters dated March 12, 2014 from the Cayuga Nation Unity Council ("Unity Council"), one of which transmits an application to obtain funds for water management within Cayuga territory pursuant to Consensus Decision 006-2014 and another which claims that pursuant to Consensus Decision 004-2014, Federal funding intended to benefit the Nation is not to be directed to Ms. Sharon LeRoy and Mr. Clint Halftown and that these individuals are not authorized to "drawdown" funds provided to the Nation. Both March 12 letters are signed by Mr. William C. Jacobs and Mr. Samuel George as representatives of the Nation.

- A letter dated April 24, 2014 from Mr. Halftown to modify an existing Indian Self Determination Act (ISDA) contract for the Nation's transportation program.

- Two letters dated May 5, 2014 from the Unity Council informing the Eastern Regional Director of actions taken more recently by the Unity Council concerning the Nation's businesses and administrative offices. One of these letters ends with a series of three questions regarding the status of BIA recognition of the Nation's leadership.

- A May 13, 2014 email from a representative for Mr. Halftown to Department of the Interior officials claiming that Mr. Halftown is the Nation's Federal representative.

All of these letters, along with their attachments, are enclosed. In response to the Unity Council's March 12 correspondence, the Region has sent out two requests to Mr. Jacobs for approval of proposed contract modifications to an existing ISDA agreement for Community Services. The Region needs authorized signatures from Nation representatives on these modifications. These unsigned contract modifications are also enclosed.

The long-running dispute over the political leadership of the Cayuga Nation has been brought to the attention of the Eastern Regional Office on multiple occasions. This dispute was the subject of a recent Interior Board of Indian Appeals ("IBIA") decision, *Cayuga Nation of New York, et al. v. Eastern Regional Director, BIA*, 58 IBIA 171 (2014) ("*Cayuga*"). The IBIA found procedural defects in the Region's earlier attempt to recognize certain tribal leadership. The IBIA decision vacated the Region's 2011 recognition decision "without expressing any view on the merits of the underlying dispute, the current leadership of the Nation, or the identity or scope

of authority of any individual to represent or take action on behalf of the Nation." *Id.* at 172. The IBIA made it clear throughout the decision that the Region is barred from issuing any decision whatsoever regarding tribal leadership during a governance dispute unless there is a matter that requires BIA action pending before the Region that triggers the need to take a position on the dispute.[1]   The IBIA's decision states, "if there *is* a separate need for Federal action, which in turn requires a recognition decision, it would be BIA's responsibility to make a decision about whom to recognize, setting forth its reasoning and justification, and providing appeal rights to interested parties." *Id.* at 181 n.7.

Given all of these developments, the Region seeks the parties' views on the following issues: (1) whether there are matters pending before the Region such as those described above involving the Cayuga Nation's ISDA grants and the request for funds for water management that require Federal action and trigger the need for a decision as to who is the Nation's Federal representative; and (2) whom the Region should recognize as the leadership of the Cayuga Nation.  At this time and until the Region resolves these issues, the Region will maintain the status quo with respect to the Cayuga Nation's drawdown authority.  By doing so, the Region does not express any view recognizing either side; keeping drawdown authority with the current individual, while declining to accept signed contract modifications and act on other funding requests until the Region has gathered additional information maintains the status quo pending careful consideration of these issues.

Accordingly, by this letter, the Region hereby requests that all interested parties in this dispute submit any views or supplemental materials that you wish the Region to consider in rendering a determination concerning the issues outlined above.  Materials <u>must</u> be received by the Region

---

[1] The IBIA provided a crystal clear statement of its views regarding the need for BIA neutrality in its August 28th Order Denying Motions to Place the Decision into Effect. The Board explained that in its view, any recognition of Halftown would constitute an improper intrusion into tribal affairs.  Footnote 4 of that order states: "…Appellants' [Halftown et al.'s] argument . . . appears to assume that some type of recognition decision by BIA was appropriate at the time the Regional Director issued the Decision.  Appellants 'solution' was for the Regional Director to apply the ordinary default practice . . . of recognizing on an interim basis the last-recognized representative and the last-recognized Council.  But when there is an internal governance dispute within a tribe, any decision by BIA that has the effect of taking sides in the dispute, or appearing to do so, even if only on an interim basis, necessarily intrudes into tribal affairs, even if it is for the narrowly limited purpose of BIA taking some required action.  The intrusion may be legally excused, under the circumstances, but it is still an intrusion.  Thus, the Board does not share Appellants' apparent view that if BIA were to decide (i.e., assuming there was a need for BIA action) to deal with Halftown, or with the last-recognized Council, while the dispute remains pending, such a decision would not constitute an intrusion into tribal affairs." (emphasis in original).  Footnote 7 in the *Cayuga* decision is also on point and further cautions BIA against aligning itself with either side in a pending intertribal dispute until required to do so (even while an appeal is pending before the IBIA): "The Regional Director suggests that as long as the Decision is stayed by this appeal, 'BIA is required to continue to recognize a Cayuga council composed of [the Halftown faction and Jacobs faction].'   That is not the case.  If there is no separate need for Federal action during the Nation's tribal government dispute, BIA is not required to recognize anyone as the Nation's representative or any composition of the Council, nor would it be appropriate for BIA to do so . . . ." Emphasis in original.  The IBIA concludes by holding that "if it becomes necessary for the Regional Director to issue a new decision, when a separate matter presents itself for BIA action that would implicate the tribal dispute, the Regional Director will have the benefit of, and may respond as necessary to, the parties' arguments on the merits as set forth in briefs in this appeal and in any supplemental submissions to the Regional Director." *Id.* at 186.

within thirty (30) calendar days from the date of this letter in order to be considered in any decision that the Region may determine appropriate.

Again, this correspondence should not be construed as BIA taking any position on the leadership dispute within the Cayuga Nation. The purpose of this letter is only to solicit the views of interested parties, as directed by the IBIA. Accordingly, this letter does not adversely affect any interested party, and therefore does not require notification of appeal rights. 25 C.F.R. § 2.7. This letter is being provided to the two addresses of the Cayuga Indian Nation of which the Region is aware based on recent letterhead, as well as attorneys that have previously and recently represented the respective parties to this leadership dispute to BIA's knowledge. The recipients are hereby advised that the addressing of this letter is subject to the same caveat set forth in the *Cayuga* decision. *Cayuga*, 58 IBIA at 171 n. 1. If any of the attorneys to which this letter was sent are no longer acting as counsel in this matter, please so advise and the Region will remove that name and address from the mailing and distribution list.

Sincerely,

Franklin Keel
Director, Eastern Regional Office

4

# EXHIBIT D

JENNER & BLOCK LLP

October 7, 2014

David W. DeBruin

Tel 202 639-6015

Fax 202 637-6375

ddebruin@jenner.com

Mr. Bruce Maytubby
Acting Director
Bureau of Indian Affairs, Eastern Region
United States Department of Interior
545 Marriott Drive, Suite 700
Nashville, TN 37214

Re: *Cayuga Nation Leadership Dispute*

Dear Acting Director Maytubby:

On behalf of Clint Halftown, Tim Twoguns, and Gary Wheeler, I am writing in connection with the ongoing leadership dispute within the Cayuga Nation – and, in particular, to explain the significance of the recent decision of certain "Unity Council" leaders to "secede from the Unity Council." We respectfully submit that these events confirm that the Bureau's only lawful course is to continue its recognition of Mr. Halftown and Mr. Twoguns as the Nation's federal representative and alternate federal representative.

The background relevant to the instant recognition decision is fully set out in the opening and response submissions of Mr. Halftown, Mr. Twoguns, and Mr. Wheeler. In brief, the leadership dispute centers on a disagreement over which of two overlapping groups form the lawful Cayuga Nation Council. Mr. Halftown, Mr. Twoguns, and Mr. Wheeler believe that there has been no valid change under Cayuga law to the six-member Council identified by the Bureau in 2006: Mr. Halftown and William Jacobs for the Heron Clan; Mr. Twoguns and Mr. Wheeler for the Turtle Clan; and Chester Isaac and Samuel George for the Bear Clan. *See* Principal Submission of Clint Halftown et al. ("Halftown Sub."), at 10-11, 33-44 (June 26, 2014). The other side in this dispute, by contrast, asks BIA to recognize a "Unity Council" that includes Karl Hill in place of Mr. Halftown as Heron Clan Representative, and Justin Bennett and Samuel Campbell in place of Mr. Twoguns and Mr. Wheeler as Turtle Clan Representatives. That side vigorously argues that the "Unity Council is the only functional government," Unity Council Mem. of Law and Fact ("Unity Council Mem."), at 2 (June 26, 2014), and that BIA should recognize the designated federal representatives of the "Unity Council" in lieu of Mr. Halftown and Mr. Twoguns. Our opening and response submissions set forth, in detail, why BIA should continue to recognize the 2006 Council as the Nation's leadership, rather than the "Unity Council."

Recent events provide a further reason why BIA cannot recognize the "Unity Council" as the Nation's leadership. On September 14, 2014, Mr. Bennett and Mr. Campbell – together with Turtle Clan Mother Brenda Bennett – circulated a letter (attached as Exhibit A, together with covering email) announcing that "[e]ffective immediately, the turtle clan . . . secedes from the Unity Council." They stated that they "take[] the official position of neutrality between the two factions . . . that claim leadership authority," and that as a result, "[a]ny actions . . . is [sic] not representative of" these purported Turtle Clan leaders. Mr. Bennett's covering email explained that "[d]ue to recent events, it is clear that the Unity

Council is not currently fit to govern the Cayuga Nation" in light of "gross mismanagement in many areas."[1] Then, in a letter to BIA dated September 17 (attached as Exhibit B), Mr. Bennett, Mr. Campbell, and Ms. Bennett reiterated their decision to secede from the "Unity Council," explaining that "[t]he continuation of the Unity Council has become unsafe for the Cayuga Nation and for the surrounding communities."[2]

In our view, the secession of Mr. Bennett and Mr. Campbell from the "Unity Council" is ultimately beside the point. As detailed in our earlier submissions, Mr. Twoguns and Mr. Wheeler remain the Turtle Clan representatives on the Nation Council; Mr. Bennett and Mr. Campbell have never been validly selected as Turtle Clan representatives; and the "Unity Council" has never been the legitimate leadership of the Cayuga Nation. Halftown Sub. at 33-44; Response Submission of Clint Halftown et al. ("Halftown Resp."), at 5-15 (July 11, 2014). Nonetheless, the recent announcements from Mr. Bennett, Mr. Campbell, and Ms. Bennett remove any doubt that BIA must continue to recognize the 2006 Council as the Nation's leadership, and must continue to recognize Mr. Halftown and Mr. Twoguns as the Nation's federal representative and alternate federal representative.

*First*, the announcements of September 14 and September 17 eliminate one of the only two options placed before BIA. The two sides in this leadership dispute have given BIA a choice between two competing Nation Councils—the 2006 Council and the "Unity Council." But now, the "Unity Council" has effectively ceased to exist. Indeed, it was Mr. Bennett and Mr. Campbell whose putative installation as Turtle Clan representatives in 2011 prompted the Jacobs-Bennett group to advise BIA of the formation of the "Unity Council" in the first place. *See, e.g.*, Halftown Sub. at 11-12.

*Second*, the announcements of September 14 and September 17 eviscerate the justifications that, from the beginning, the "Unity Council" had advanced to advocate for a change in BIA's recognition of Cayuga Nation leadership. While the "Unity Council" claimed to reflect a broad consensus within the

---

[1] We respectfully request that this letter and its attachments be made part of the administrative record in this matter.

[2] The September 17 letter also refers obliquely to "[t]he events of September 14, 2014." That morning, a group of men armed with makeshift weapons entered and seized the Nation's cigarette factory. Then, three days later, those men departed the cigarette factory, only to proceed to violently take over the Nation's Lakeside Trading gas station and convenience store in Union Springs. There, they overpowered the Nation's security personnel, kicked a security guard in the ribs (sending him to the hospital), physically assaulted a cashier, and physically assaulted the Nation's legal counsel.

Mr. Heath, the attorney for the "Unity Council," has repeatedly asserted that the takeovers were not authorized or directed by the "Unity Council." As Matthew Pryor of BIA's Office of Justice Services will confirm, however, what remains of the "Unity Council" has condoned and actively encouraged those actions. As of this date, the individuals who took over the Lakeside Trading facility in Union Springs on September 17 continue to occupy it with the active support of the remainder of the "Unity Council," eliminating a vital revenue stream for the Nation. Their continuing occupation of the facility endangers the safety of the surrounding community and has required near-constant attention from federal, state, and local law enforcement.

Nation, *see* Unity Council Mem. at 1, two of its own members – purporting to speak for the Turtle Clan – now reject it.  While the "Unity Council" once emphasized that it had the support of all three Clan Mothers, *see id.* at 26, now the Turtle Clan Mother has disavowed it.  And after the "Unity Council" urged that a change was needed to ensure a "functional government," *id.* at 2, its own members have deemed it not "fit to govern the Nation."  Ex. A.

In those circumstances, we respectfully submit that BIA's only viable option is to continue its recognition of Mr. Halftown and Mr. Twoguns.  For one thing, the effective dissolution of the "Unity Council" reinforces the necessity and wisdom of adhering to BIA's settled practice (outlined at length in our earlier submissions) of recognizing an Indian nation's "last undisputed leadership."  *See, e.g., Poe v. Pac. Reg'l Dir., BIA*, 43 IBIA 105, 112 (2006).  Now that the "Unity Council" no longer exists, BIA certainly cannot depart from that rule by recognizing the "Unity Council" and its chosen federal representatives.  Rather, BIA must continue to recognize the 2006 Council as the Nation's leadership, and must continue to recognize Mr. Halftown and Mr. Twoguns as the Nation's federal representative and alternate federal representative.  *See* Halftown Sub. at 44-48; Halftown Resp. at 15-16.

For another thing, the "Unity Council's" effective dissolution underscores that BIA cannot disregard the broad consensus within the Nation in support of Mr. Halftown and Mr. Twoguns.  As we have previously explained, more than 60% of adult Cayuga citizens have signed Statements of Support confirming that they believe the 2006 Council is the legitimate governing body of the Cayuga Nation, that they believe that Mr. Halftown and Mr. Twoguns have never been validly removed from the Council or from their federal representative positions, and that they reject the "Unity Council."  *See* Halftown Sub. at 27-31, 48-53; Halftown Resp. at 16-21; Sept. 2, 2014 Letter from David W. DeBruin to Johnna Blackhair.  Disregarding this broadly expressed will would be particularly inappropriate now that the "Unity Council" has ceased to exist.

Still, the September 17 letter from Mr. Bennett, Mr. Campbell, and Ms. Bennett suggests that BIA should decline to recognize *either* side in this leadership dispute.  We respectfully submit that such a course of action would be improper (and, under these circumstances, would only encourage further acts of theft and violence as means of gaining control over the Nation).  For three decades and leading up to the recent Chukchansi decision, the law has been clear that "BIA, in its responsibility for carrying on government relations with the Tribe, is obligated to recognize and deal with some tribal governing body."  *Goodface v. Grassrope*, 708 F. 2d 335, 339 (8th Cir. 1983); *Alturas Indian Rancheria v. Pac. Reg'l Dir., BIA*, 54 IBIA 138, 143-44 (IBIA 2011) (citing *Goodface*); Feb. 11, 2014 Letter from Regional Director Amy L. Dutschke to Robert A. Rosette et al., at 6 (attached as Ex. 36 to the Halftown Sub.).  Under this law, the Bureau is obligated to recognize either the 2006 Council (with Mr. Halftown and Mr. Twoguns as federal representatives), or the "Unity Council" (with Mr. Jacobs and Mr. George as federal representatives).  Given the effective dissolution of the "Unity Council," BIA's only option is to continue its

recognition of the 2006 Council as the Nation's legitimate leadership, and of Mr. Halftown and Mr. Twoguns as its federal representatives.[3]


Sincerely,

David W. DeBruin


cc:    Kevin K. Washburn
       Bella Sewall Wolitz
       Daniel J. French
       Joseph J. Heath
       Curtis Berkey

---

[3] The September 17 letter also asserts that the "Halftown administration lack[s] many parts of a traditional government," including "bona-fide turtle clan representatives and an entire bear clan." That is incorrect. Our merits submissions seek recognition for the *full* Nation Council identified by BIA in 2006— which includes Chester Isaac and Samuel George as Bear Clan representatives. As for the Turtle Clan, our earlier submissions explain that Mr. Twoguns and Mr. Wheeler remain the rightful clan representatives under Cayuga law. Moreover, the recent Statement of Support campaign has confirmed that a *majority* of the Turtle Clan supports the 2006 Council. *See, e.g.*, Halftown Resp. at 25. Indeed, a total of 107 of 182 eligible Turtle Clan members (or nearly 60 percent) have signed Statements of Support confirming that they view Mr. Twoguns and Mr. Wheeler – not Mr. Bennett and Mr. Campbell – as the legitimate representatives of the Turtle Clan.

# EXHIBIT A





# Cayuga Nation
### Turtle Clan
12029 Sulphur Springs Rd. – Irving – New York 14081

---

September 14, 2014

Cayuga Nation Unity Council
Sachem Chief Chuck Jacobs; Sachem Chief Sam George;
Karl Hill, Heron Clan Representative
Chester Issac, Bear Clan Representative
Bernadette Hill, Heron Clanmother
Pamela Issac, Bear Clanmother
2540 State Route 89
Seneca Falls, NY 13148

Re:     Turtle Clan of Cayuga Nation Secession from Unity Council

Dear Unity Council:

Effective immediately, the turtle clan of the Cayuga Nation as recognized by the Federal Government of the United States of America secedes from the Unity Council.

The turtle clan takes the official position of neutrality between the two factions of Herons that claim leadership authority.  The position of neutrality will remain in effect until a viable form of government can be established to serve the citizens of the Cayuga Nation and can preserve the peace .

Any actions taken by either faction is not representative of the turtle clan, until a viable form of government can be established by all citizens of the Cayuga Nation as recognized by the Federal Government of the United States of America.

Sincerely,

Brenda Bennett, Turtle Clanmother

Justin M. Bennett, Turtle Clan Representative     Samuel P. Campbell, Turtle Clan Representative

**From:** Justin Bennett <justymbennett@gmail.com>
**Date:** September 15, 2014 at 8:43:38 AM EDT
**To:** Brenda Louise Bennett <CayugaNationTurtleClanMother@gmail.com>, Chester Isaac <chet81913@q.com>, Chuck Jacobs <william.jacobs828@gmail.com>, Karl Hill <cayugaconnect@netzero.net>, Pam Isaac <oat1998@gmail.com>, Sam George <sevenclansam@aol.com>, Samuel Paige Campbell <samcnrgconst@yahoo.com>, Anita Thompson <anita.thompson47@gmail.com>, Eva Bighorse <ebighorse@gmail.com>
**Cc:** "Joe Heath, Esq" <jheath@atsny.com>, "Alex C. Page" <alex.c.page@gmail.com>, Curtis Berkey <cberkey@abwwlaw.com>, Jenna Macaulay <jgansworth@hotmail.com>
**Subject: Turtle Clan Secedes from Unity Council**
Greetings Members of the Unity Council:

As announced at last night's meeting, the turtle clan and its leadership has decided to secede from the Unity Council. Please see attachment.

This decision does not come lightly and was not made in haste. Due to recent events, it is clear that the Unity Council is not currently fit to govern the Cayuga Nation. It accepts gross mismanagement in many areas that are not conducive to the general population of the Cayuga Nation and certainly not for the next seven generations.

The turtle clan has consistently maintained that it will not be engaged in poor governance that does not operate with fairness and equity. The turtle clan took steps against the governance operations of Clint Halftown and his organization. It is now taking steps against the governance operations of the Unity Council. Both groups are dysfunctional and are not good for the Cayuga Nation.

Our official position is a position of neutrality. The turtle clan does not support either faction that claims to have governing authority over the Cayuga Nation as recognized by the United States federal government. It is our intent to continue to operate and serve our turtle clan citizens. It is also our intent to explore ways to provide good governance not only for the turtle clan, but also for the Cayuga Nation as a whole. Until at such time, when a group of Cayuga citizens can come together with a "good mind", the turtle clan will join in alliance with that group to govern the Cayuga Nation once again.

In conclusion, this action is taken in order to stop the Unity Council from continuing down the current path. With the absence of the turtle clan, as in days 3 and half years before, the Cayuga Nation Council cannot reach a consensus decision. It is our hope that the Cayuga Nation can adjust its course and discover a way to serve its citizens with fairness and equity.


--
Oneh,
Justin Bennett
Turtle Clan Representative
Cayuga Nation

# EXHIBIT B



# Cayuga Nation

### Turtle Clan

12029 Sulphur Springs Rd. – Irving – New York 14081



September 17, 2014

Mr. Bruce Maytubby
Acting Regional Director
Eastern Regional Office
Bureau of Indian Affairs
545 Marriott Drive, Suite 700
Nashville, TN 37214

Re:     Cayuga Nation - Turtle Clan of Cayuga Nation Secedes from Unity Council

Mr. Maytubby:

Attached is a letter dated September 14th, 2014, to members of the Unity Council indicating that the Turtle Clan of the Cayuga Nation is seceding from the Cayuga Nation Council effective immediately. Due to recent events the Turtle Clan can no longer agree with the direction the Cayuga Nation is tending towards. The Turtle Clan can no longer permit its participation in the Nation's Council to allow the Nation to continue down its current path. Therefore, the Turtle Clan is compelled to secede from the Unity Council in order to stop the actions of the Unity Council. This secession renders the Cayuga Nation Council inoperable.

The Turtle Clan has consistently maintained that it seeks to build a Nation that will provide fairness and equity for its citizens. Fairness and equity to citizens of a Nation is a product of good government. The Great Law of Peace contains principles and concepts, which if followed, will provide the fairness, equity and peace for all under its shelter. The key principle of consensus is provided in The Great Law of Peace. Many in the Cayuga Nation lay claim to adherence to this principle; however the true application is sporadic as evidenced in our recent decades. The Turtle Clan has labored much to apply the principle of consensus in order to assist in the direction of the Cayuga Nation. However, our counterparts have chosen actions outside of consensus. The events of September 14, 2014 and the commitment to support those actions are an example of the absence of consensus. The continuation of the Unity Council has become unsafe for the Cayuga Nation and for the surrounding communities.

We understand the variety of consequences attached to this choice. The decision was not easy, nor was it made in haste. We understand that there exists a determination to be made regarding the leadership of the Cayuga Nation on your desk. Our participation with the Unity Council, with all its clanmothers, clan leadership and both factions claiming to be a traditional form of government, it is undoubtedly clear that the Unity Council would be the rightful government to be determined. Conversely, the Halftown administration lacking many parts of a traditional form of government (specifically a turtle clanmother, bona-fide turtle clan representatives and an entire bear clan), it is undoubtedly clear that his faction would not be the rightful government to be determined. However, with the absence of the Turtle Clan in both the Unity Council and in the Halftown administration, neither should be determined to be the rightful government of the Cayuga Nation at this particular time.

The Turtle Clan has decided, at this time, that it is in the best interest of the Cayuga Nation and the Turtle Clan to officially take a position of neutrality between the two factions that claim leadership authority. As stated before, we seek a government of fairness and equity. We strongly believe that the Cayuga Nation can still find a government of fairness and equity. We believe we have to give secession and neutrality an opportunity for both factions to peacefully consider coming together. Perhaps there is folly in this line of thinking, but nonetheless, it is a strong and peaceful option.

In conclusion, our position of secession and neutrality will remain in effect until a viable form of government can be established to serve the citizens of the Cayuga Nation and can preserve the peace.

Sincerely,


Brenda Bennett, Turtle Clanmother


Justin M. Bennett, Turtle Clan Representative          Samuel P. Campbell, Turtle Clan Representative



# Cayuga Nation
### Turtle Clan
12029 Sulphur Springs Rd. – Irving – New York 14081



September 14, 2014

Cayuga Nation Unity Council
Sachem Chief Chuck Jacobs; Sachem Chief Sam George;
Karl Hill, Heron Clan Representative
Chester Issac, Bear Clan Representative
Bernadette Hill, Heron Clanmother
Pamela Issac, Bear Clanmother
2540 State Route 89
Seneca Falls, NY 13148

Re:    Turtle Clan of Cayuga Nation Secession from Unity Council

Dear Unity Council:

Effective immediately, the turtle clan of the Cayuga Nation as recognized by the Federal Government of the United States of America secedes from the Unity Council.

The turtle clan takes the official position of neutrality between the two factions of Herons that claim leadership authority.  The position of neutrality will remain in effect until a viable form of government can be established to serve the citizens of the Cayuga Nation and can preserve the peace .

Any actions taken by either faction is not representative of the turtle clan, until a viable form of government can be established by all citizens of the Cayuga Nation as recognized by the Federal Government of the United States of America.

Sincerely,

Brenda Bennett, Turtle Clanmother

Justin M. Bennett, Turtle Clan Representative        Samuel P. Campbell, Turtle Clan Representative