# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF NEW YORK

_____

CAYUGA NATION and JOHN DOES 1–20,

                                *Plaintiffs,*

   *-against-*

                                Civil Action No.
                                5:14-cv-01317
                                (DNH-ATB)

HOWARD TANNER, Village of Union Springs
Code Enforcement Officer, in his Official Capacity;
EDWARD TRUFANT, Village of Union Springs
Mayor, in his Official Capacity; CHAD HAYDEN,
Village of Union Springs Attorney, in his Official Capacity;
BOARD OF TRUSTEES OF THE VILLAGE OF UNION
SPRINGS, NEW YORK; and THE VILLAGE OF UNION SPRINGS, NEW YORK,

                                *Defendants.*

## DEFENDANTS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THEIR CROSS-MOTION TO DISMISS THE COMPLAINT

                                O'CONNELL AND ARONOWITZ
                                *Attorneys for Defendants*
                                54 State Street
                                Albany NY  12207-2501
                                (518) 462-5601

Cornelius D. Murray, Esq.
  *Of Counsel*

Dated: January 21, 2015

# **TABLE OF CONTENTS**

Page

**TABLE OF AUTHORITIES** ................................................................................................ ii

**PRELIMINARY STATEMENT** ........................................................................................ 1

**ARGUMENT** ...................................................................................................................... 2

**POINT I** ............................................................................................................................... 2

    **THE DOCTRINE OF *RES JUDICATA* BARS THE PRESENT ACTION** .......... 2

        A.    **The Present Claims Were Litigated in the Prior Action** ....................... 2

        B.    **The Supposed "New Threats" Do Not Defeat the
Application of *Res Judicata*** ........................................................................ 5

**POINT II** .............................................................................................................................. 6

    **THIS COURT DOES NOT HAVE SUBJECT MATTER
JURISDICTION OVER THE ACTION BECAUSE THE PLAINTIFFS
DO NOT HAVE AUTHORITY TO SUE ON BEHALF OF THE
NATION** .................................................................................................................... 6

**CONCLUSION** ................................................................................................................. 10

# **TABLE OF AUTHORITIES**

Page

*Am. Stock Exch., LLC v. Mopex, Inc.*,
   215 F.R.D. 87 (S.D.N.Y. 2002) .................................................................................................. 6

*Bd. of Managers of 195 Hudson Street Condo. v. Jeffrey M. Brown Assocs., Inc.*,
   652 F.Supp.2d 463 (S.D.N.Y. 2009) ........................................................................................... 6

*Cayuga Indian Nation of New York v. Village of Union Springs*,
   390 F.Supp.2d 203 (N.D.N.Y. 2005) ................................................................................. passim

*George v. E. Reg's Dir.*,
   BIA, 49 IBIA 164 (2009) ........................................................................................................... 7

*Kaw Nation v. Lujan*,
   378 F.3d 1139 (8th Cir. 2004) .................................................................................................... 8

*Meredith v. Ionian*,
   279 F.2d 471 (2d Cir. 1960) ....................................................................................................... 8

*Pueblo of Santa Rosa v. Fall*,
   273 U.S. 315 (1927) .................................................................................................................... 7

*Sac and Fox Tribe of the Mississippi of Iowa*,
   NIGC Decision and Order, Dkt. No. 2003-1 (Sept. 10, 2003) ............................................... 10

*Shenandoah v. U.S. Dep't of Interior*,
   159 F.3d 708 (2d Cir. 1998) ....................................................................................................... 7

*Sherrill, City of v. Oneida Indian Nation of New York*,
   544 U.S. 197 (2005) ............................................................................................................. 1, 4

*Woods v. Dunlop Tire Corp.*,
   972 F.2d 36 (2d Cir. 1992) ......................................................................................................... 6

**PRELIMINARY STATEMENT**

The Plaintiffs desperately try to avoid the preclusive effect of *res judicata* by mischaracterizing the scope of the relief they unsuccessfully sought in *Cayuga Indian Nation of New York v. Village of Union Springs*, 390 F.Supp.2d 203 (N.D.N.Y. 2005). The principal issues raised in the present request for declaratory and injunctive relief, including tribal sovereignty, federal preemption, and sovereign immunity, have already been litigated by the parties and were ultimately decided in the Defendants' favor in the prior action. In initially granting the Plaintiffs' previous request for broad injunctive relief, this Court determined that the Village was without authority or jurisdiction, and was preempted from, applying or enforcing its "zoning and land use laws" or "any other laws" purporting to "regulate, control or otherwise interfere with" the Nation's activities on the Property. *Cayuga Indian Nation*, 317 F.Supp.2d at 151-52. This relief could not have been any more expansive, and clearly included the application and enforceability of the Village's Game of Chance Ordinance dated May 19, 1958 ("Gaming Ordinance"). Moreover, when this Court reconsidered its prior injunction order pursuant to a mandate from the Second Circuit, it determined that the Supreme Court's decision in *City of Sherrill v. Oneida Indian Nation of New York*, 544 U.S. 197 (2005), deprived the Nation of its ability to assert sovereignty over the Property or immunity from state and local laws and regulations, which is precisely what the Plaintiffs seek to do here. *Cayuga Indian Nation*, 390 F.Supp.2d at 206. Accordingly, the present action should be dismissed on the ground of *res judicata* because the claims set forth in the Complaint were litigated in the prior action. In addition, this action should also be dismissed for lack of subject matter jurisdiction because the Bureau of Indian Affairs does not currently recognize Mr. Halftown, Mr. Twoguns, Mr. Wheeler or any other individual as the Nation's authorized representative, and the Plaintiffs have not shown that

1

the filing of the present action was authorized by the lawful government of the Nation.

## ARGUMENT

### POINT I

### THE DOCTRINE OF *RES JUDICATA* BARS THE PRESENT ACTION

**A.     The Present Claims Were Litigated in the Prior Action**

The Plaintiffs mischaracterize the relief requested, and initially granted, in the prior action. In their view, the prior action arose out of construction-related orders issued by the Village in 2003, and therefore it did not address the application of the Gaming Ordinance to the Nation's activities on the Property. Also, since the present request for declaratory and injunctive relief rests on entirely "new threats" (*i.e.*: the Village's potential enforcement of the Gaming Ordinance), the Plaintiffs believe this Court should make a determination as to whether they are entitled to assert an additional defense (*i.e.*: IGRA preemption) to such threats. This is not only nonsense, but it is also belied by the Complaint filed in the prior action and the final decision on the merits.[1] There is no question that the whole purpose of the Nation's initiation of the prior action was to clear the way for the establishment of a Class II gaming facility under IGRA, as this Court noted at the time. *See Cayuga Indian Nation*, 390 F.Supp.2d at 205 ("The genesis of this litigation was … to renovate certain property … including the establishment of a Class II gaming facility.").

---

[1] The Plaintiffs distort the Village's argument that the action should be dismissed on *res judicata* grounds. The Village's argument on this point is that the current claims were already litigated and ruled upon in the Village's favor. However, in their opposition to the motion to dismiss, the Plaintiffs only address the Village's alternate argument that, even if they were not subsumed in the prior action, they should have been brought then. This is discussed below.

As set forth in the Complaint from the dismissed action, the Nation sought a declaration that the Nation has jurisdiction and the right to self-government over the Property, and that the Defendants are preempted from regulating or otherwise interfering with the Nation's activities on the Property. *Cayuga Indian Nation*, Dkt. 1 at 8. The Nation also sought a broadly-worded injunction permanently enjoining the Village from "applying or enforcing defendants' zoning and land use laws, or any other laws, ordinances, rules, regulations or other requirements which seek or purport to regulate, control, or otherwise interfere with activities by or on behalf of the Nation occurring on the Property, including building activities and/or land usage occurring on the Property, against the Nation and the Property or otherwise prohibiting defendants from any interference with the Nation's ownership and possession of the Property." *Id*. Thus, the prior request for declaratory and injunctive relief was not narrowly tailored, as the Plaintiffs suggest, but rather sought blanket immunity from all of the Village's laws and ordinances regulating the Nation's use and ownership of the Property, including the Gaming Ordinance.

Moreover, in initially granting the Plaintiffs' request for injunctive relief, this Court issued a declaration on the same issues raised in the present Complaint, including tribal sovereignty, federal preemption, and sovereign immunity. In particular, this Court determined that the Nation has sovereignty over the Property and that the Defendants were "without authority or jurisdiction, and were preempted from, applying or enforcing their zoning and land use laws or any other laws, ordinances, rules, regulations, or other requirements which seek or purport to regulate, control, or otherwise interfere with activities by or on behalf of the plaintiff Cayuga Indian Nation of New York occurring on the Property." *Cayuga Indian Nation*, 317 F.Supp.2d at 151-52. This Court further enjoined and restrained the Defendants from applying or enforcing any of their laws purporting to

"regulate, control or otherwise interfere with" the Nation's activities on the property. *Id*. No exceptions were carved out of this grant of absolute immunity from state and local regulation.[2]

Notably, the Plaintiffs' opposition papers are silent on the dramatic impact of the Supreme Court's decision in *City of Sherrill*. In *Sherrill*, the Supreme Court held that the mere acquisition by an Indian tribe of fee title to its reservation land does not restore its sovereignty. In reaching this conclusion, the Supreme Court explained that the "long lapse of time, during which the Oneidas did not seek to revive their sovereign control through equitable relief in court … preclude the OIN from gaining the disruptive remedy which it now seeks." *Sherrill*, 544 U.S. at 216-17.

After remand from the Second Circuit, this Court relied on the Supreme Court's decision in *City of Sherrill* when it dismissed the Complaint and vacated the permanent injunction, stating that "[i]f avoidance of taxation is disruptive, avoidance of complying with local zoning and land use laws is no less disruptive. In fact, it is even more disruptive." *Cayuga Indian Nation*, 390 F.Supp.2d at 206. After acknowledging that the "Nation is seeking relief that is even more disruptive than the non payment of taxes," this Court concluded that the "Supreme Court's strong language in *City of Sherrill* regarding the disruptive effect on the every day administration of state and local governments bars the Nation from asserting immunity from state and local zoning laws and regulations." *Id*. Because the Supreme Court's decision applies here with equal force and deprives

---

[2] Other court documents reflect the expansive nature of the relief sought by the Nation in the prior action. For example, the Nation acknowledged its broad based claims in its Opposition to Defendants' Motion for Injunction Pending Appeal, stating that this "Court has broadly enjoined Defendants … from interfering with the Nation's Class II establishment, through … the assertion of their local laws and regulations … which … purport to interfere with 'the plaintiffs ownership and possession of the Property.'"). 2004 WL 5614564 (N.D.N.Y 2004). Thus, it is disingenuous for the Plaintiffs to claim that the prior action did not include the relief requested here.

the Nation of its ability to assert sovereignty over the Property (which is a prerequisite to preemption under federal law), the Nation is not entitled to immunity from state and local regulation.

Accordingly, it is clear that the prior action conclusively determined the issues raised in the present litigation. Although each action may have been "spurred" by the Village's enforcement of distinct laws and ordinances, the overall litigation was concerned with issues of tribal sovereignty and federal preemption of state and local law. Because the Plaintiffs have had a full and fair opportunity to litigate such issues, this Court should reject the Plaintiffs' attempt to relitigate them.

**B.     The Supposed "New Threats" Do Not Defeat the Application of *Res Judicata***

The Plaintiffs contend in the alternative that, even if the prior action had included the Village's anti-gaming laws, *res judicata* would still be inapplicable because the facts essential to the preemption claim did not yet exist. *See* Plaintiffs' Brief ("Pl. Br.") at 8. Contrary to their contentions, the facts essential to the preemption claims did in fact exist in 2003. *See Cayuga Indian Nation*, 390 F.Supp.2d at 205 ("The genesis of this litigation was … to renovate certain property … including the establishment of a Class II gaming facility."). The Nation filed the prior action on October 20, 2003, and within one month's time, the National Indian Gaming Commission ("NIGC") had approved an ordinance for gaming on the Property. *See* Dkt. 1 at ¶ 24. Thus, the Property did not "become" a Class II gaming establishment, but rather was built as one.

Even if, as the Plaintiffs contend, the Village's enforcement of the Gaming Ordinance was not subsumed within the prior challenge (which it was), it is the only municipal law directly prohibiting the Plaintiffs' Class II gaming establishment, and it certainly was available to the Plaintiffs at time of the prior action and should have been raised then. *Woods v. Dunlop Tire Corp.*,

972 F.2d 36, 38 (2d Cir. 1992)(stating that *res judicata* "prevents a party from litigating any issue or defense that could have been raised or decided in a previous suit, even if the issue was not actually raised or decided"). The Plaintiffs cannot avoid the effects of *res judicata* by "splitting" their claims into various suits, based on different legal theories. *Woods*, 972 F.2d at 39 ("It is this identity of facts surrounding the occurrence which constitutes the cause of action, not the legal theory upon which [plaintiff] chose to form her complaint."). Both actions involve the "same transaction" for purposes of *res judicata* since the underlying facts are "related in time, space, origin, motivation," and "form a convenient trial unit." *Bd. of Managers of 195 Hudson Street Condo. v. Jeffrey M. Brown Assocs., Inc.*, 652 F.Supp.2d 463, 472 (S.D.N.Y. 2009). The Plaintiffs were required to "bring in one action all legal theories arising out of same transaction," regardless of the individualized bases for the respective actions, and therefore the Village's "new threats" do not defeat application of the doctrine. *See Am. Stock Exch., LLC v. Mopex, Inc.*, 215 F.R.D. 87, 93 (S.D.N.Y. 2002). At any rate, the fact of the matter is that this Court has already determined that the Nation is foreclosed from asserting immunity from state and local laws and regulations, and that ruling is entitled to *res judicata* effect.

## POINT II

### THIS COURT DOES NOT HAVE SUBJECT MATTER JURISDICTION OVER THE ACTION BECAUSE THE PLAINTIFFS DO NOT HAVE AUTHORITY TO SUE ON BEHALF OF THE NATION

The Plaintiffs argue that it is not the law, nor could it be, that the Village may rely on an internal leadership dispute to deny an Indian nation the right to sue in federal court. *See* Pl. Br. at 9-10. To the contrary, it is not the Defendants' position that the Nation should be denied the right to sue in federal court, but that the Plaintiffs in this action have not established that they have been

6

authorized by the Nation's lawful government to do so. Since the Plaintiffs are not currently recognized by the United States as the lawful government of the Nation, or even as the federally recognized representative, they cannot establish standing to sue on behalf of the Nation. Therefore, this action should be dismissed for lack of subject matter jurisdiction.[3]

The existence of subject matter jurisdiction depends on whether the party filing the lawsuit or asserting claims has the authority to do so. *Pueblo of Santa Rosa v. Fall*, 273 U.S. 315 (1927). As the Plaintiffs acknowledge, the Nation is involved in an internal governance dispute regarding the composition of its Council of chiefs and its representative for government-to-government relations. Only the lawful government of the Nation can authorize the filing of a lawsuit on the Nation's behalf, and since there is a dispute as to which individuals constitute the lawful government of the Nation, the Plaintiffs cannot demonstrate that they have authority to bring the present action.[4]

Nor can the Court decide whether the Plaintiffs have authority to file the action on behalf of the Nation, as such matters are beyond the subject matter jurisdiction of this Court. *Shenandoah v. U.S. Dep't of Interior*, 159 F.3d 708, 712 (2d Cir. 1998)(holding that the issue of tribal leadership, which involves questions of tribal law, is not properly resolved by a federal court*). See also Kaw Nation v. Lujan*, 378 F.3d 1139, 1142 (8th Cir. 2004)("A dispute over the meaning of tribal law does not arise under the Constitution, law or treaties of the United States, as required by § 1331 or § 1362.

---

[3] The unidentified Plaintiffs have similarly failed to establish that they have standing to maintain the lawsuit. Although the Plaintiffs assert that the lawsuit rests entirely on "Orders to Remedy Violations" issued by the Village, those orders were directed to the Nation, and not to any particular individuals.

[4] Moreover, as set forth in what the Plaintiffs have characterized as the "Department of Interior's controlling decision," *see* Pl. Br. at 11, Mr. Halftown unequivocally agreed that the Nation's decision making under Cayuga law and tradition is governed by "consensus," and that "consensus" "is achieved only when all of the members of the Nation's council are 'of one mind.'" *George v. E. Reg's Dir.*, BIA, 49 IBIA 164, 166 (2009). Here, there has been no

This is the essential point of opinions holding that a federal court has no jurisdiction over an intratribal dispute."). Thus, without determining whether the Plaintiffs have authority to sue on behalf of the Nation (which this court cannot do), subject matter jurisdiction cannot be established.[5]

The Plaintiffs acknowledge that they "have been unable to point to any document expressly stating that the federal government currently recognizes Mr. Halftown and Mr. Twoguns as the Nation's representatives." *See* Dkt. 40-1 & Ex. 1. However, they nonetheless contend that they have standing to sue on behalf of the tribe because "the Department of the Interior's most recent controlling decision recognizes the individuals who authorized this action as entitled to sue on the Nation's behalf." *See* Pl. Br. at 9. In making this assertion, the Plaintiffs mischaracterize the effect of the IBIA's order vacating the 2011 decision of the then-BIA Regional Director Franklin Keel to remove Halftown, Twoguns, and Wheeler from the Nation's Council. The IBIA's vacatur of Director Keel's decision, they contend, left the earlier recognition of Mr. Halftown and Mr. Twoguns in place as the operative federal determination. *See* Pl. Br. at 14. That contention, however, is directly contradicted by the IBIA's January 2014 decision and Director Keel's May 2014 decision.

In the January 16, 2014 decision, the IBIA expressly rejected the Regional Director's suggestion that the "BIA is required to continue to recognize a Cayuga council composed of [the Halftown faction]." *Cayuga Indian Nation of N.Y. v. E. Reg'l Dir.*, IBIA, 58 IBIA 171, 181 n.7 (2014). In fact, rather than recognize one side or the other, the IBIA did not express "any view" on

---

showing that the members of the Nation's council are "of one mind."

[5] The Plaintiffs cite to cases for the proposition that the existence of a leadership dispute does not mean that the Indian nation cannot sue in federal court. *See* Pl. Br. at 10. None of those decisions involves a situation where, as here, there is no federally recognized leadership. If the Plaintiffs' position is accepted, then a member of a tribe could bring a suit in federal court on behalf of the tribe – without authorization from the lawful government – and survive a motion to dismiss. That is not the law, not could it be. *Meredith v. Ionian*, 279 F.2d 471, 474 (2d Cir. 1960).

"the current leadership of the Nation, or the identity or scope of authority of any individual to represent or take action on behalf of the Nation." *Id.* at 172. The IBIA further stated that, since "there is no separate need for Federal action during the Nation's tribal government dispute, the BIA was not required to recognize anyone as the Nation's representative or any composition of the Council, nor would it be appropriate for BIA to do so." *Id.* at 181 n.7.

On May 15, 2014, shortly after the issuance of the IBIA's order, Director Keel reiterated this point when he stated that the IBIA provided a "crystal clear statement of its view" that "any recognition of Halftown would constitute an improper intrusion into tribal affairs," and that the BIA "does not express any view recognizing either side." *See* Dkt. 33-1 & Ex. C at 3 n.1. Director Keel also noted that the IBIA already considered and expressly rejected Halftown's argument that the BIA should apply the ordinary default practice of recognizing on an interim basis the last-recognized and the last-recognized Council. *See id.* at 3 n.1. The May 15 letter is the most recent decision issued by the BIA, and therefore it is the "controlling decision" on this matter. Thus, it is abundantly clear that the BIA has reserved judgment on the leadership dispute, and does not currently recognize Mr. Halftown, Mr. Twoguns, or anyone else, as the Nation's authorized representative.[6]

Although the BIA is expected to issue a decision by February 20, 2015, it has indicated that it hopes that "the citizens of the Cayuga Indian Nation will find a mechanism to resolve the dispute themselves." *See* Dkt. 41-2 & Ex. C. It has also indicated that February 20, 2015 is the "date by which failure to make a decision shall be appealable." *See id.* It is unknown whether the BIA will find in favor of the Unity Council or the Halftown faction, but either way, the recognition decision will almost certainly be appealed – which will further delay the resolution of the leadership dispute,

---

[6] The most recent publication of the Bureau of Indian Affairs Tribal Nations Directory confirms

likely for years, not months. Even if the BIA ultimately determines that Mr. Halftown is the federally-recognized representative of the Nation, he would not have unlimited decision-making authority, and there will still be questions as to whether the lawsuit was authorized by the tribe's lawful government. Thus, the fact that a BIA decision is apparently "on the horizon" does not mean that this governance dispute will be fully and finally resolved anytime soon, and weighs strongly against deferring ruling on the Defendant's cross-motion to dismiss until BIA has reached a decision.[7]

Thus, the Plaintiffs' Complaint should be dismissed on the alternative ground that this Court lacks subject matter jurisdiction over the action. However, to the extent dismissal is not proper at this time, the Defendants' respectfully request that the preliminary injunction be dissolved pending the full and final resolution of the leadership dispute. *See* Supplemental Declaration of Edward Trufant at ¶¶ 6-9.

## CONCLUSION

For the foregoing reasons, the Defendants' motion to dismiss the Complaint should be granted.

---

the position taken by Director Keel.

[7] "Indian gaming under IGRA must be operated by the Tribe and by the tribal leadership recognized by the Secretary. [The NIGC] cannot allow an unrecognized, dissent faction to operate an Indian casino." *In re Sac and Fox Tribe of the Mississippi of Iowa*, NIGC Decision and Order, Dkt. No. 2003-1 (Sept. 10, 2003), available at http://www.nigc.gov/Reading_Room/Enforcement_Actions/NOV_03-02_Commission_Decision.aspx. By deferring judgment on the motion to dismiss, as requested by the Plaintiffs, that is exactly what would happen here. *See In re Sac & Fox*, 340 F.3d 749, 760 (8th Cir. 2003)(affirming the district court's order to close the casino).

Dated: Albany, New York  Respectfully submitted,
       January 21, 2015

                                      O'CONNELL AND ARONOWITZ
                                      By:
                                              <u>s/ Cornelius D. Murray</u>
                                              Cornelius D. Murray, Esq.
                                              Bar Roll No: 505329
                                              O'Connell & Aronowitz
                                              Attorneys for Defendants
                                              54 State Street
                                              Albany, NY 12207-2501
                                              Tel: (518) 462-5601
                                              Fax: (518) 462-6486
                                              nmurray@oalaw.com