UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

CAYUGA NATION and JOHN DOES 1-20,

               Plaintiffs,

  -v-                                              5:14-CV-1317

HOWARD TANNER, Village of Union
Springs Code Enforcement Officer, in his
Official Capacity; EDWARD TRUFANT,
Village of Union Springs Mayor, in his
Official Capacity; CHAD HAYDEN, Village
of Union Springs Attorney, in his Official
Capacity; BOARD OF TRUSTEES OF THE
VILLAGE OF UNION SPRINGS, NEW
YORK; and VILLAGE OF UNION SPRINGS,
NEW YORK,

               Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:                             OF COUNSEL:

JENNER & BLOCK LLP               DAVID DEBRUIN, ESQ.
Attorneys for Plaintiffs                JOSHUA M. SEGAL, ESQ.
1099 New York Avenue, Suite 900   MATTHEW E. PRICE, ESQ.
Washington, DC 20001

HANCOCK ESTABROOK LLP      JOHN G. POWERS, ESQ.
Attorneys for Plaintiffs                NINA I. BROWN, ESQ.
1500 AXA Tower I
100 Madison Street
Syracuse, NY 13221

O'CONNELL & ARONOWITZ       CORNELIUS D. MURRAY, ESQ.
Attorneys for Defendants
54 State Street, 9th Floor
Albany, NY 12207


DAVID N. HURD
United States District Judge

## MEMORANDUM–DECISION and ORDER

## I. INTRODUCTION

On October 28, 2014, plaintiffs Cayuga Nation and John Does 1–20 ("plaintiffs") filed this action against defendants Howard Tanner, Code Enforcement Officer for the Village of Union Springs, New York ("the Village"); Edward Trufant, Mayor of the Village; Chad Hayden, the Village Attorney; the Board of Trustees of the Village; and the Village itself (collectively "defendants"). Also on that date, plaintiffs filed a motion for preliminary injunction and requested a temporary restraining order.

Generally, plaintiffs claim the federal Indian Gaming Regulatory Act, 25 U.S.C. §§ 2701–2721 ("IGRA"), preempts the Village's efforts to enforce local anti-gaming laws. They seek to enjoin defendants from restricting, interfering with, punishing, or otherwise penalizing any actions taken by the Cayuga Nation in furtherance of Class II gaming activities at Lakeside Entertainment, a gaming facility in the Village.

On October 29, 2014, an order was issued directing defendants to appear and show cause why a preliminary injunction should not be entered granting plaintiffs' requested relief. That order also temporarily restrained defendants from penalizing the Cayuga Nation for continuing the gaming operations at Lakeside Entertainment. Thereafter, defendants consented "to the extension of the currently-entered Temporary Restraining Order pursuant to Fed. R. Civ. P. 65(b)(2) until such time as the Court rules on the presently pending preliminary injunction application." ECF No. 19. Defendants also filed a cross-motion to dismiss to the complaint.

Both motions are fully-briefed, and oral argument was heard on January 28, 2015, in

Utica, New York.[1]  Decision was reserved, and the parties were directed to notify this Court when the United States Department of the Interior, Bureau of Indian Affairs ("BIA") issued a decision regarding the leadership dispute within the Cayuga Nation.  The parties have submitted the BIA's February 2015 decision as well as additional briefing on this issue.

## II. FACTUAL BACKGROUND

The following facts have been gleaned from the complaint.  In November 2003 the Cayuga Nation—a federally recognized Indian tribe—adopted a Class II gaming ordinance pursuant to IGRA.  The National Indian Gaming Commission ("NIGC") subsequently approved the ordinance.  In 2004, the Cayuga Nation opened Lakeside Entertainment on land it claims to be within the limits of its reservation.  The facility closed in October 2005.

Cayuga Nation members Clint Halftown, Tim Twoguns, and Gary Wheeler began orchestrating the reopening of the facility in 2010.  They obtained an architect's report stating that the use of Lakeside Entertainment for Class II gaming complied with state and local zoning, land use, and building codes.  They also received a legal opinion letter from "Dorsey & Whitney, LLP," reportedly confirming the legality of Lakeside Entertainment's operation.  They further sent a letter to various state and local officials announcing their intent to reopen the facility, which formally reopened on July 3, 2013.

Code Enforcement Officer Tanner visited the facility on the day it reopened and expressed his opinion that the gaming activities were illegal and required a Certificate of Occupancy.  The Village Board of Trustees met in executive session shortly thereafter and

---

[1] The hearing was delayed because the Cayuga Nation Unity Council ("the Unity Council") sought to intervene as a defendant in this action.  The Unity Council's motion was denied on December 19, 2014.  ECF No. 38.

decided to enforce a 1958 anti-gaming ordinance ("the 1958 Ordinance") against the Cayuga Nation.[2] On July 9, 2013, the Village served plaintiffs with an "Order to Remedy Violations" charging the Cayuga Nation with conducting bingo without a license in violation of the 1958 Ordinance as well as unspecified violations of the Village zoning code. Compl., Ex. C. The Cayuga Nation's attorney responded in late July, advising Village attorney Hayden that the gaming activities complied with IGRA.

Betty Jane Radford, manager of Lakeside Entertainment, submitted a completed application for a Certificate of Occupancy to Code Enforcement Officer Tanner on August 8, 2013. Tanner requested additional information such as construction documents and site plans. The Cayuga Nation retained an architect and provided the Village with additional architectural reports in December 2013. Plaintiffs also installed eighty-six (86) additional electronic bingo machines in the facility at that time and contemporaneously notified state and local officials of same.

On December 23, 2013, the Cayuga Nation received two more Orders to Remedy Violations, which were signed by Tanner and alleged violations of the 1958 Ordinance and portions of the Village zoning code, as well as a failure to comply with a state regulation requiring a Certificate of Occupancy. The Cayuga Nation informed the Village that it intended to file a lawsuit seeking injunctive relief. Thereafter, on December 30, 2013, the parties entered into a "Standstill Agreement" through which Lakeside Entertainment remained open without interference from Village authorities. In March 2014, Tanner

---

[2] This ordinance states, in pertinent part: "No person, firm, association, corporation or organization, other than a bona fide religious, charitable or non-profit organization of veterans, volunteer firemen and similar non-profit organizations licensed under the provisions of this ordinance shall be permitted to conduct [games of chance, such as bingo]." Compl., Ex. B.

reportedly advised that he would issue a Certificate of Occupancy, but he subsequently reneged and sent a letter expressing his opinion that Lakeside Entertainment continued to violate the 1958 Ordinance. The Standstill Agreement expired on May 30, 2014. Nonetheless, plaintiffs have continued to operate the gaming facility. Likewise, defendants have refused to issue a Certificate of Occupancy.

On October 27, 2014, counsel for the Village advised the Cayuga Nation that it intended to bring an enforcement action pursuant to the 1958 Ordinance. Plaintiffs filed this action and the motion for preliminary injunction the following day. Halftown, Twoguns, and Wheeler authorized the filing of this action. Plaintiffs claim Lakeside Entertainment remains in full compliance with the requirements of IGRA and regulations of NIGC.

## III. **DISCUSSION**

Plaintiffs claim the Village's efforts to enforce the 1958 Ordinance and local zoning laws are preempted by IGRA. They seek a preliminary injunction prohibiting defendants from restricting, interfering with, punishing, or otherwise penalizing any actions taken by the Cayuga Nation in furtherance of Class II gaming activities at Lakeside Entertainment. Defendants argue that the complaint must be dismissed because: (1) Plaintiffs lack standing to bring this action; and (2) the action is barred by the doctrine of *res judicata*.

Before reaching the merits of the parties' respective motions, the threshold matter of Article III standing must be addressed. See Clapper v. Amnesty Int'l, USA, __ U.S. __, 133 S. Ct. 1138, 1146 (2013) ("One element of the case-or-controversy requirement is that plaintiffs must establish that they have standing to sue." (internal quotation marks omitted)).

Defendants argue that plaintiffs lack standing to bring this lawsuit on behalf of the

Cayuga Nation due to an ongoing internal dispute regarding the leadership of the tribe.[3] Defendants claim Halftown, Twoguns, and Wheeler were removed from leadership positions within the Cayuga Nation in 2005 and 2011 and, therefore, have no authority to represent the Nation or file lawsuits on its behalf. Plaintiffs report that the BIA and the NIGC continue to interact with and recognize Halftown, Twoguns, and Wheeler as representatives of the Cayuga Nation. The leadership issue has been the subject of recent proceedings before the BIA. A brief summary of the most recent developments in this saga is warranted.

On August 19, 2011, Franklin Keel, Director of the Eastern Region of the BIA, issued a decision acknowledging the removal of Halftown, Twoguns, and Wheeler from the Nation's Council and recognizing "new representatives of the Nation for government-to-government purposes." See Cayuga Indian Nation v. E. Reg'l Dir., 58 IBIA 171, 171 (2014). Halftown, Twoguns, and Wheeler appealed to the Interior Board of Indian Appeals ("IBIA").

On January 16, 2014, the IBIA vacated the Regional Director's decision as an impermissible infringement on the sovereign right of the Cayuga Nation to resolve its internal leadership dispute. Specifically, the IBIA vacated the decision "without expressing any view on the merits of the underlying dispute, the current leadership of the Nation, or the identity or scope of authority of any individual to represent or take action on behalf of the Nation." Id. at 172. Regional Director Keel subsequently requested briefing from the two leadership factions addressing their respective views on several matters raised by the IBIA's order. At oral argument in this federal case, the parties advised that the matters before the BIA were

---

[3] Plaintiffs note that this action is also brought on behalf of twenty unidentified "officers, employees, and/or representatives of the Nation who are at risk of criminal or civil penalties for conduct relating to the operation of Lakeside Entertainment." Compl. ¶ 6. Defendants do not make any legal argument regarding the standing of John Does 1–20.

fully briefed, and the parties were awaiting a recognition decision.

On February 20, 2015, the BIA issued a decision regarding the leadership dispute. The BIA noted that "[w]hen an intra-tribal dispute has not been resolved and the BIA must deal with a tribe for government-to-government purposes, the BIA may recognize the last undisputed tribal leadership on an interim basis." ECF No. 45-1, 6 (citing Poe v. Pac. Reg'l Dir., 43 IBIA 105, 112–13 (2006); Rosales v. Sacramento Area Dir., 32 IBIA 158, 167 (1998)). In accordance therewith, the BIA concluded, in pertinent part:

> The Region has determined that under these circumstances, it will on an interim basis recognize the Nation 2006 Council as the last undisputed leadership of the Nation, with Clint Halftown as the Nation's representative for purposes of administering existing ISDA [Indian Self-Determination Act] contracts. As explained below, this *interim* recognition decision is intended to provide the Nation with additional time to resolve this dispute without BIA interference.

ECF No. 45-1, 2.[4] The Nation 2006 Council is comprised of Halftown, Twoguns, Wheeler, William Jacobs, Chester Isaac, and Samuel George. ECF No. 45-1, 2.

Not surprisingly, the parties offer opposing interpretations and draw different conclusions from this decision. Plaintiffs claim the decision establishes the Nation 2006 Council—of which Halftown, Twoguns, and Wheeler are a part—as the recognized representatives of the Cayuga Nation and, thereby, provides them with standing to prosecute this action. Defendants argue that three of the six members of the Nation 2006 Council,

---

[4] As the BIA explained, the need for the Nation's designees to "sign contract modifications adding funds for this fiscal year and draw down the funds provided under the Community Services Contract and the Nation's other ISDA contract" necessitated the leadership decision. Id. at 5. This justification distinguishes the current BIA decision from the August 2011 decision, which the IBIA subsequently vacated. As stated by the IBIA, "there was no separate matter pending before BIA that independently required or warranted BIA action which, in turn, made it necessary for BIA to address the internal [leadership] dispute" in August 2011. Cayuga Indian Nation, 58 IBIA at 172.

specifically Jacobs, Isaac, and George,[5] do not support this action and oppose gaming on the Nation's land.  Therefore, defendants conclude, there is a lack of consensus among the recognized leadership.[6]

According to the parties, Cayuga Nation law requires a consensus among its leaders to authorize certain actions, such as filing this lawsuit.  As three members of the Nation 2006 Council support this lawsuit and three members oppose it, it is unclear whether the action has been properly authorized pursuant to Cayuga Nation law.  The resolution of this issue would necessarily require this Court to delve into, interpret, and apply Nation law.[7]

For example, plaintiffs maintain that Nation 2006 Council members Jacobs, Isaac, and George refused to attend scheduled leadership meetings of which they received timely notification, making a six-member consensus impossible.  They argue that Halftown, Twoguns, and Wheeler—the only members to attend the leadership meetings—reached a consensus on issues related to the operation of Lakeside Entertainment and the initiation of this lawsuit.

In response, George has submitted a declaration in which he testifies that:  (1) The

---

[5]  In fact, Jacobs, Isaac, and George are currently members of the six-person Unity Council that sought to intervene as a defendant in this action.

[6]  Defendants also seize on the interim nature and cautionary language of the BIA decision and conclude that it does not definitively determine the current leadership of the tribe.  Such is unpersuasive.  Federal courts "owe deference to the judgment of the Executive Branch as to who represents a tribe."  Timbisha Shoshone Tribe v. Salazar, 678 F.3d 935, 938 (D.C. Cir. 2012); see also Shenandoah v. U.S. Dep't of Interior, 159 F.3d 708, 712 (2d Cir. 1998) ("[I]n the absence of an initial determination by the Department, the issue of Oneida leadership, which involves questions of tribal law, is not properly resolved by a federal court.").  At this juncture, the BIA recognizes the Nation 2006 Council as the undisputed leader of the Cayuga Nation.  Whether the Nation 2006 Council properly authorized this suit is an altogether separate matter.

[7]  The Cayuga Nation does not have written law, making such a task exceptionally difficult.  As Hon. Dennis F. Bender, Supreme Court, Seneca County, lamented only one year ago:  "Reliance upon oral tradition and ruling by consensus, however that is defined by the Cayuga Nation, may have served the Nation well in pre-colonial or colonial times.  It is clearly ill suited for the twenty-first century."  Cayuga Nation v. Jacobs, 986 N.Y.S.2d 791, 796 (Sup. Ct. 2014) (internal quotation marks, citation, and alterations omitted).

meeting notices sent by Halftown, Twoguns, and Wheeler were invalid under Nation law; (2) the meetings were intentionally scheduled at times when Jacobs, Isaac, and George could not attend, such as during periods of Haudenosaunee ceremonies when such business is not permitted to be conducted; (3) meetings of only three leaders are not authorized and cannot produce a binding consensus; and (4) Nation law requires a consensus of all six leaders.

Federal courts do not have jurisdiction to resolve such intra-tribal disputes that involve Nation law. See Runs After v. United States, 766 F.2d 347, 352 (8th Cir. 1985) ("We believe the district court correctly held that resolution of such disputes involving questions of interpretation of the tribal constitution and tribal law is not within the jurisdiction of the district court."); Winnemucca Indian Colony v. United States, 837 F. Supp. 2d 1184, 1190 (D. Nev. 2011) ("[P]urely intra-tribal cases where litigants dispute the results of a tribal election between themselves do not give rise to federal jurisdiction.").

In an effort to avoid the above intra-tribal dispute, and the dismissal of this lawsuit for lack of subject matter jurisdiction, plaintiffs point to the BIA's recognition of "Clint Halftown as the Nation's representative for purposes of administering existing ISDA contracts." ECF No. 45-1, 2. Plaintiffs argue this language provides an independent basis for standing and permits the Court to avoid delving into questions of Cayuga Nation law. This argument is without merit. There is nothing in the language of the BIA decision that provides Halftown with the unilateral authority to initiate lawsuits or enter into new contracts on the Nation's behalf. Instead, the BIA supplied a practical temporary fix to the above noted need for a representative to administer existing contracts. Indeed, the BIA specifically noted that "[t]he scope of the powers of the federal representative is a question of Nation law not properly resolved by the Region." Id. n.1. Nor is it properly resolved by a district court.

## IV. **CONCLUSION**

As a threshold issue of subject matter jurisdiction, plaintiffs must establish standing under Article III of the Constitution. Clapper, 133 S. Ct. at 1146; Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992) (the parties seeking to invoke federal jurisdiction bear the burden of demonstrating that they have standing). They fail to meet this burden.[8] Whether the Nation 2006 Council—which is the recognized leadership entity of the Cayuga Nation—properly authorized this lawsuit is an issue that necessarily requires the interpretation and application of internal Nation law. Therefore, this Court lacks subject matter jurisdiction.

Therefore, it is

ORDERED that

1. Defendants' cross-motion to dismiss is GRANTED;

2. Plaintiffs' motion for a preliminary injunction is DENIED as moot;

3. The complaint is DISMISSED in its entirety; and

4. The Temporary Restraining Order is VACATED.

IT IS SO ORDERED.

The Clerk of the Court is directed to enter judgment accordingly and close the case.

---

[8] Plaintiffs also fail to establish the standing of John Does 1–20 to bring this lawsuit. The complaint merely alleges that these "unknown officers, employees, and/or representatives of the Nation . . . are at risk of criminal or civil penalties for conduct relating to the operation of the Lakeside Entertainment gaming facility." Compl. ¶ 6. Such vague allegations asserted on behalf of unnamed persons do not constitute a "concrete, particularized, and actual or imminent" injury for purposes of Article III standing. See Clapper, 133 S. Ct. at 1147 (noting that the "threatened injury must be *certainly impending* to constitute injury in fact and that allegations of *possible* future injury are not sufficient" (internal quotation marks and alteration omitted)).

_____
United States District Judge

Dated: May 19, 2015
       Utica, New York.