O'CONNELL ARONOWITZ
ATTORNEYS AT LAW

June 5, 2015

Hon. David N. Hurd
U.S. District Judge
Northern District of New York
Alexander Pirnie Federal Building
10 Broad Street
Utica, NY 13501

Re: **Cayuga Nation v. Tanner**
**Civil Action No. 5:14-CV-1317 DNH/ATB**

Dear Judge Hurd:

We write very briefly on behalf of the Defendant, Village of Union Springs and its officials, in response to the post-oral argument letter dated June 4, 2015 from Matthew Price, Esq., counsel for Plaintiffs, and received last evening at 5:24 p.m.

The Court is respectfully referred to the very recent article in the Brooklyn Law Review by the Hon. Jon Newman, Senior Judge of the Second Circuit, entitled "The Second Circuit's Expedited Appeals Calendar for Threshold Dismissals," 80 Brook. L. Rev. 259 (2014), attached to this letter. We trust the Court will find it informative. In the article, Judge Newman describes the expedited appeals process which the Second Circuit adopted in October 2011. Judge Newman addresses, *inter alia*, the length of time it will take for the Court to dispose of appeals placed on such a calendar. Once the Clerk of the Court identifies a case as eligible for placement on the calendar, a briefing schedule is established that will take at least 12 weeks. See Rule 31.2(b)(3). As Judge Newman notes, since the Rule was adopted, the time it has taken for the Court to thereafter adjudicate those appeals on the merits is anywhere between 30 days and 400 days. *Id.* at 432-433. While, of course, it is not possible to predict precisely how long the Court will take to act in this particular case, it is safe to speculate it will be another 4 months <u>at the very least</u>.

Finally, and for reasons previously stated, and especially since there is virtually no likelihood of success on appeal and because there is no irreparable injury to the Nation, which is the only Plaintiff to have appealed, the injunction pending appeal should be denied. If the Court is nevertheless disposed to grant such injunction, we

RESPOND TO:
206 WEST BAY PLAZA / 54 STATE STREET / 1 COURT STREET
PLATTSBURGH, NY 12901-1786 / ALBANY, NY 12207-2501 / SARATOGA SPRINGS, NY 12866-4301
TEL: (518) 562-0600 / TEL: (518) 462-5601 / TEL: (518) 584-5205
FAX: (518) 462-2670
www.oalaw.com

reiterate that any such injunction should be conditioned upon a filing of a bond or on condition that the Plaintiffs purporting to represent the Nation turn over any and all revenue derived from the conduct of gambling in the intervening period in the event that this entire case is ultimately resolved in the Village's favor. That money would not belong to either the Nation or the individual Plaintiffs. It should go to the Village which has had to pay to defend this litigation with taxpayer funds.

Respectfully,

O'CONNELL AND ARONOWITZ

By: *Cornelius D. Murray*

Cornelius D. Murray

CDM:jss
Enclosure
cc:   Matthew Price, Esq.
      (via e-mail and ECF)

G:\DATA\Health Department\CDM\Cayuga Tanner\LtHurd-Injunction-jss.docx

# Brooklyn Law Review

Volume 80 | Issue 2                                        Article 3

2014

# The Second Circuit's Expedited Appeals Calendar for Threshold Dismissals

Jon O. Newman

Follow this and additional works at: http://brooklynworks.brooklaw.edu/blr

Recommended Citation

Jon O. Newman, *The Second Circuit's Expedited Appeals Calendar for Threshold Dismissals*, 80 Brook. L. Rev. (2015).
Available at: http://brooklynworks.brooklaw.edu/blr/vol80/iss2/3

This Article is brought to you for free and open access by BrooklynWorks. It has been accepted for inclusion in Brooklyn Law Review by an authorized administrator of BrooklynWorks. For more information, please contact matilda.garrido@brooklaw.edu.

# REPORT

## The Second Circuit's Expedited Appeals Calendar for Threshold Dismissals

*Jon O. Newman*†

INTRODUCTION

This article reports on the Expedited Appeals Calendar (XAC)[1] inaugurated by the Court of Appeals for the Second Circuit in October 2011. The Second Circuit designed the XAC to speed the disposition of appeals from threshold dismissals by district courts in the aftermath of the Supreme Court's decisions in *Bell Atlantic Corp. v. Twombly*,[2] and *Ashcroft v. Iqbal*.[3] *Bell Atlantic* and *Iqbal* replaced the lenient pleading standard of *Conley v. Gibson*,[4] with a more rigorous standard that requires a complaint to set forth "sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'"[5]

These decisions prompted concerns that district courts might overreact to the new pleading standard and dismiss for failure to state a claim complaints that would have survived

---

† Judge Newman is a senior judge of the United States Court of Appeals for the Second Circuit, on which he has served for 35 years. The author expresses appreciation to Michael Bierce, administrative attorney in the Clerk's Office of the Court of Appeals for the Second Circuit, for helpful research.

[1] We pronounce the XAC acronym "zac" to complement the RAC, the Second Circuit's Regular Argument Calendar, and the NAC, the Second Circuit's Non-Argument Calendar, used primarily for petitions for review of decisions of the Board of Immigration Appeals.

[2] 550 U.S. 544 (2007).

[3] 556 U.S. 662 (2009).

[4] 355 U.S. 41 (1957). *Conley* stated a broad form of notice pleading: "[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Id.* at 45-46 (footnote omitted).

[5] *Iqbal*, 556 U.S. at 678 (quoting *Bell Atlantic*, 550 U.S. at 570).

429

under the *Conley* standard but arguably warranted dismissal under the *Bell Atlantic* and *Iqbal* standard.[6] Mindful of these concerns, the Second Circuit decided to give expedited treatment to some categories of threshold dismissals so that complaints deemed to have been improperly dismissed could be quickly returned to a district court. The Second Circuit adopted Local Rule 31.2(b) to establish the XAC. Rule 31.2 (b) provides:

**(b) Expedited Appeals Calendar.**

- **(1) Subject Proceedings.** The court maintains an Expedited Appeals Calendar (XAC) for appeals from threshold dismissals, defined as a judgment or order of a district court dismissing a complaint solely for:

    - **(A)** lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1);

    - **(B)** failure to state a claim upon which relief can be granted under Fed. R. Civ. P. 12(b)(6); or

    - **(C)** filing a frivolous complaint or for any other ground specified in 28 U.S.C. § 1915(e)(2).

- **(2) Placement.** The clerk identifies a case for placement on the XAC and, as soon as practicable, informs the parties. Promptly after receipt of such notification, any party, for good cause shown, may move to remove the case from the XAC. If the court grants the motion, briefing will proceed under (a)(1) to (3).

- **(3) Briefing.** In a case placed on the XAC, the following briefing schedule applies:

    - **(A)** The appellant must file its brief within 35 days of the date of the clerk's notification of placement on the XAC.

    - **(B)** The appellee must file its brief within 35 days after the filing of the last appellant's brief.

    - **(C)** The appellant may submit a reply brief within 14 days after the filing of the last appellee's brief.[7]

---

[6] Some increase in the rate of threshold dismissals after *Bell Atlantic* and *Iqbal* has been reported. *See* JOE S. CECIL ET AL., MOTIONS TO DISMISS FOR FAILURE TO STATE A CLAIM AFTER *IQBAL*: REPORT TO THE JUDICIAL CONFERENCE ADVISORY COMMITTEE ON CIVIL RULES, at vii (2011); Raymond H. Brescia, *The* Iqbal *Effect: The Impact of New Pleading Standards in Employment and Housing Discrimination Litigation*, 100 KY. L.J. 235, 237 (2012); Patricia Hatamyar Moore, *An Updated Quantitative Study of* Iqbal*'s Impact on 12(b)(6) Motions*, 46 U. RICH. L. REV. 603, 603 (2012); Patricia W. Hatamyar, *The Tao of Pleading: Do* Twombly *and* Iqbal *Matter Empirically?*, 59 AM. U. L. REV. 553, 556 (2010).

[7] 2D CIR. R. 31.2(b).

Cases placed on the XAC are limited to appeals from complaints dismissed for lack of subject matter jurisdiction, failure to state a valid claim, or frivolousness. Any party may ask to remove an appeal from the XAC for good cause. If an appeal remains on the XAC, the briefing schedule is 35 days for each party, compared to the normal schedule of up to 91 days for each party.[8] Although the Federal Rules of Appellate Procedure (FRAP) allow 40 days for an appellant's brief and 30 days for an appellee's brief,[9] the Second Circuit permits the appellant, in the usual procedure, to select a brief filing date within a 91 day interval after the appeal is ready for briefing[10] and the appellee may select a brief filing date within 91 days of the filing of the appellant's brief.[11] The Second Circuit established extended intervals in recognition of the reality that motions to extend the normal FRAP periods are routinely granted. A reply brief may be filed within 14 days in both regular and XAC appeals.[12] In adopting the XAC, the Second Circuit pledged to schedule oral arguments in XAC appeals on an expedited schedule and to endeavor to decide XAC appeals within 30 days.

This report surveys the 353 appeals placed on the XAC and terminated in the three and one-half year period between January 1, 2011, and June 30, 2014. Of these 353 appeals, counsel asked to have 23 appeals removed from the XAC, and 21 of these requests have been granted, leaving 332 appeals for analysis. Part I reviews the various results of the 332 terminated appeals, and Part II then analyzes the efficiency of the XAC system based on the data reviewed in Part I.

I. RESULTS

A. Data

Of the 332 appeals that remained on the XAC, 215 were terminated in favor of the appellee, of which 195 were affirmed, 14 were dismissed for lack of jurisdiction or because the claim was frivolous, and 6 were dismissed because of default. Fifty-six appeals were definitely terminated in favor of the appellant, with the district court judgment reversed or vacated at least in part and remanded for further proceedings. Of the other 61

---

[8] *See* 2D CIR. R. 31.2(a)(1)(A), (B).
[9] *See* FED. R. APP. P. 31(a).
[10] *See* 2D CIR. R. 31.2(a)(1)(A).
[11] *See* 2D CIR. R. 31.2(a)(1)(B).
[12] *See* 2D CIR. R. 31.2(a)(2); 2D CIR. R. 31.2(b)(3)(C).

appeals, 57 were dismissed with prejudice based on a stipulation between the parties pursuant to Rule 42(b) of the Federal Rules of Appellate Procedure and 4 were withdrawn by the appellant.

In some of these 61 appeals, the appellants might have obtained some consensual benefit before agreeing to have the appeal dismissed or withdrawn, but no such determination can be made from the data collected. The staff of the Second Circuit's Civil Appeals Management Program advises that some of the appeals dismissed on stipulation or withdrawn have an outcome at least partially favorable to the appellant, but that number is probably small.[13] Thus, of the 332 terminated appeals that remained on the XAC, the number terminated at least partially in favor of the appellant was somewhere between 56 and 117[14] with the actual number very likely closer to 56. Even taking the number at the minimum figure of 56 would mean that of all the 332 threshold dismissals that remained on the XAC, the appellants obtained at least some favorable relief in 17% of such cases, and if the appellants obtained at least a partial benefit in some of the stipulated dismissals and withdrawn appeals, the favorable outcome percentage would be even higher.

*B.    Efficiency*

With respect to the efficiency of the XAC, briefing was not completed quite as rapidly as expected, but once XAC appeals were heard or submitted, the Second Circuit adjudicated most of them rapidly. The Second Circuit granted requests for extension of time to file briefs, usually by appellants, in 20%[15] of XAC appeals adjudicated on the merits. Even with this number of briefing extensions, 79%[16] were argued or submitted in less than 120 days of the filing of the last brief (usually a reply brief), of which 58% were argued or submitted in less than 90 days of that filing. Summer weeks when lawyers are away and the Second Circuit is not always hearing cases accounted for most of the longer intervals.

With respect to decisions by the Second Circuit, of the 265 XAC appeals adjudicated on the merits, the Second Circuit

---

[13] Conversation between Court of Appeals for the Second Circuit staff and the author.

[14] The 117 appeals were calculated by adding the 56 appeals in which the district judgment was reversed or vacated at least in part to the 61 appeals in which the appellant might have obtained some relief after dismissal on stipulation or withdrawal.

[15] This is equal to 52 out of the 265 (195 + 56 + 14) XAC appeals adjudicated on the merits.

[16] This is equal to 209 out of the 265 XAC appeals adjudicated on the merits.

ruled in less than 30 days in 75%[17] of the appeals affirmed (most by summary order) and in 34%[18] of the appeals reversed or vacated at least in part (most by published opinions). Of the 56 reversed or vacated appeals, the total time from notice of appeal until adjudication was less than 200 days in 8 appeals, between 200 and 299 days in 17 appeals, between 300 and 399 in 9 appeals, and more than 400 days in the remaining 22 appeals. The median time from notice of appeal to adjudication for all appeals in the Second Circuit in fiscal year 2013 was 10.4 months or approximately 312 days.[19] Although the XAC data does not show as rapid a pace of dispositions as the Second Circuit anticipated, it does indicate that the XAC returned many threshold dismissals to the district courts substantially faster than would have happened without the XAC.

Data are not easily obtained as to the outcomes of the 56 cases that were remanded, but the docket sheets disclose this much. Seven cases were settled (with the plaintiff presumably receiving some benefit), in four cases a pendent state law claim was left for adjudication by the state court, two cases were dismissed without prejudice, in two cases summary judgment was granted for the defendant, three cases were dismissed on some other motion by the defendant, one case resulted in a jury verdict for the defendant, one case was withdrawn by stipulation, and one case was dismissed on the plaintiff's motion. The others remain pending in the district court.

II.    EVALUATION

I make no claim to being an impartial observer of our Second Circuit's XAC, but even discounting an inevitable institutional bias in favor of our new calendar, I think XAC has been a success and should be continued. The small number of lawyers who have sought and been granted removal from the XAC indicates that the bar is generally content with the new calendar. Appeals were briefed and ready for adjudication at a much faster pace than prevails for the regular calendar. The shortened time for briefing seems appropriate because these threshold dismissals involve no evidentiary record and the legal issues have been thoroughly briefed in the papers

---

[17] This is equal to 146 out of the 195 appeals that were affirmed.
[18] This is equal to 19 out of the 56 that were reversed or vacated at least in part.
[19] See ADMIN. OFFICE OF THE U.S. COURTS, JUDICIAL REPORT OF THE UNITED STATES COURTS: ANNUAL REPORT OF THE DIRECTOR tbl B-4 (2013).

supporting and opposing dismissal in the district court. Of course, the appellate briefs must reckon with the district court's reasons for a dismissal, but even the shortened briefing time limits have evidently accommodated such further analysis; parties sought extensions to complete briefing in only a small number of cases.

As for the Second Circuit's performance, it is clear that oral arguments have been scheduled promptly, as was contemplated, and, in most of the XAC appeals, decisions have been promptly rendered.

Assessing the significance of the 17% remand rate is somewhat problematic because there is no comparable figure for remands of threshold dismissals in the era before the more rigorous pleading standard of *Bell Atlantic* and *Iqbal*. However, it is significant that the absolute number of remands of XAC appeals, 56 in three years,[20] is three times as high as the 18 cases, reported in an earlier study,[21] in which complaints were ordered to be reinstated in the two year period from July 1, 1989, to June 30, 1991. That study did not break out from all civil appeals the number of appeals taken only from threshold dismissals and therefore did not show a remand percentage applicable only to such appeals.[22]

CONCLUSION

Whether or not the Second Circuit is remanding threshold dismissals at a higher or lower rate than before *Bell Atlantic* and *Iqbal*, the high number of such remands in the era of a stricter pleading standard persuades me that XAC has proved its worth. Surely the appellants in the 56 XAC remands were pleased to return to the district court in a much shorter interval than would have elapsed in the absence of the XAC. The Court of Appeals voted to continue the XAC at a Court meeting on October 1, 2014.

---

[20] Although the current study covered appeals placed on the XAC and terminated in a period lasting three and one-half years, the number terminated in the final six months of the period is so small that the three year interval is the one worth considering for remands.

[21] *See* Jon O. Newman, *Study of Appellate Reversals*, 58 BROOK. L. REV. 629 (1992) (analyzing reasons for reversal in 491 appeals in which judgment was reversed in whole or in part in two year period).

[22] *Id.*