**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK**

———————————————————————— )
CAYUGA NATION, CLINT HALFTOWN, )
TIMOTHY TWOGUNS, GARY WHEELER, )
DONALD JIMERSON, MICHAEL )
BARRINGER, RICHARD LYNCH, B.J. )
RADFORD, AND JOHN DOES 8-20, )
                                  )
        Plaintiffs, )
                                   )
        v. )
                                   )
HOWARD TANNER, VILLAGE )     No. 5:14-cv-1317-DNH-ATB
OF UNION SPRINGS CODE ENFORCEMENT )
OFFICER, IN HIS OFFICIAL CAPACITY; )
BUD SHATTUCK, VILLAGE OF UNION )
SPRINGS MAYOR, IN HIS OFFICIAL )
CAPACITY; CHAD HAYDEN, VILLAGE OF )
UNION SPRINGS ATTORNEY, IN HIS )
OFFICIAL CAPACITY; BOARD OF )
TRUSTEES OF THE VILLAGE OF UNION )
SPRINGS, NEW YORK; AND THE VILLAGE )
OF UNION SPRINGS, NEW YORK, )
                                   )
        Defendants. )
———————————————————————— )

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF
MOTION TO DISMISS COUNTERCLAIM**

Pursuant to Local Rule 7.1(a) and Rule 12(b)(6) of the Federal Rules of Civil Procedure,

Plaintiffs Cayuga Nation, Clint Halftown, Timothy Twoguns, Gary Wheeler, Donald Jimerson,

Michael Barringer, Richard Lynch, B.J. Radford, and John Does 8-20 ("Plaintiffs") hereby move

to dismiss the Counterclaim filed by Defendants with their Answer to the First Amended

Complaint.  The Counterclaim seeks a declaration that the Cayuga Nation does not possess a

federal reservation.  Plaintiffs seek the Counterclaim's dismissal pursuant to a stipulation agreed to by the parties and filed concurrently with this Motion ("Stipulation").

Plaintiffs' claim under the Indian Gaming Regulatory Act ("IGRA"), 25 U.S.C. § 2501 *et seq.*, implicates whether Cayuga Nation's gaming occurs on a federal reservation.  That is because IGRA permits "class II gaming on Indian lands," 25 U.S.C. § 2710(a)(2), (b)(1), which IGRA defines to include (among other things) "all lands within the limits of any Indian reservation," *id.* § 2703(4)(A).  Plaintiffs' First Amended Complaint therefore alleged that Lakeside Entertainment is located on a federal reservation established by the 1794 Treaty of Canandaigua that Congress has never disestablished.  Am. Compl. ¶¶ 36-38.  For their part, Defendants deny those allegations and further allege in their Counterclaim that the lands at issue in this case "are not located on an Indian reservation."  Counterclaim ¶ 2.  Defendants contend that the Treaty of Canandaigua did not create a federal reservation, *id.* ¶¶ 31-40, or—alternatively—that this reservation was subsequently disestablished (relying, in particular, on treaties with New York State in 1795 and 1807 and the 1838 Treaty of Buffalo Creek), *id.* ¶¶ 56-96.

But despite these competing pleadings, the parties have stipulated and agreed that "under current precedent, the Cayuga Nation today possesses a federal reservation that has not been disestablished, such precedent including the decision of Judge Siragusa in the Western District of New York dismissing a similar counterclaim to the one filed by Defendants."  Stipulation at 2; *see Cayuga Indian Nation of N.Y. v. Seneca Cty.*, 260 F. Supp. 3d 290, 307-15 (W.D.N.Y. 2017).  Thus, the Second Circuit and this Court (as well as others) have rejected the argument that the Treaty of Canandaigua did not create a federal reservation but only recognized a *state* reservation.[1]  Likewise,

---

[1] *See Oneida Indian Nation of New York v. City of Sherrill*, 337 F.3d 139, 156 n.13 (2d Cir. 2003) ("the Canandaigua Treaty recognized the Oneidas' 300,000–acre reservation in federal terms"), *rev'd on other grounds*, 544 U.S. 197 (2005); *Oneida Indian Nation of N.Y. v. Madison Cty.*, 605 F.3d 149, 157 n.6 (2d Cir. 2010) (Second Circuit's "prior holding on th[e] question" of whether the "alleged reservation land is Indian country … remains the controlling law

courts have rejected arguments that the 1795 and 1807 New York Treaties[2] or the Treaty of Buffalo Creek disestablished federal reservations—as to both the Cayuga[3] and Oneida nations.[4]  Last, courts have declined to find disestablishment based on *City of Sherrill v. Oneida Indian Nation of New York*, 544 U.S. 197, 215-16 & n.9 (2005): After *Sherrill*, the Second Circuit has held that *Sherrill*'s "laches"-based holding "did not upset" the Second Circuit's precedent that the Oneida's reservation remained intact.[5]

The parties thus have stipulated that this "Court may grant Plaintiffs' motion to dismiss Defendants' counterclaim based on current precedent … without further briefing or argument." Stipulation at 3.  Under the Stipulation, Defendants have "reserve[d] their right to argue on appeal that existing precedent should be modified, overruled, or deemed not to apply to this case, and to raise any arguments that may be based on the U.S. Supreme Court's decision in *Carpenter v.*

---

of this circuit" after Supreme Court's decision in *Sherrill* (internal quotation marks omitted)), *vacated and remanded sub nom. Madison Cty. v. Oneida Indian Nation of N.Y.*, 562 U.S. 42 (2011); *see also Oneida Indian Nation of N.Y. v. New York*, 194 F. Supp. 2d 104, 140 (N.D.N.Y. 2002) (Kahn, J.); *Upstate Citizens for Equal., Inc. v. Jewell*, No. 5:08-CV-0633 LEK, 2015 WL 1399366, at *6 (N.D.N.Y. Mar. 26, 2015) (Kahn, J.) (rejecting similar arguments as foreclosed by "binding Second Circuit precedent"), *aff'd sub nom. Upstate Citizens for Equal., Inc. v. United States*, 841 F.3d 556 (2d Cir. 2016), *cert. denied*, No. 16-1320, 2017 WL 5660979 (U.S. Nov. 27, 2017); *Cent. N.Y. Fair Bus. Ass'n v. Jewell*, No. 6:08-CV-0660 LEK/DEP, 2015 WL 1400384, at *8-9 (N.D.N.Y. Mar. 26, 2015) (Kahn, J.) (similar), *aff'd*, 673 F. App'x 63 (2d Cir. 2016).

[2] *Cayuga Indian Nation*, 260 F. Supp. 3d at 308-09; *see Cayuga Indian Nation of N.Y. v. Cuomo*, 730 F. Supp. 485, 492-93 (N.D.N.Y. 1990) (McCurn, J.); *Cayuga Indian Nation of N.Y. v. Pataki*, 165 F. Supp. 2d 266, 353 (N.D.N.Y. 2001), *rev'd on other grounds*, 413 F.3d 266 (2d Cir. 2005); *see also Pataki*, 413 F.3d 266, 269 (2d Cir. 2005) ("it is undisputed that th[ese New York] treat[ies] w[ere] never explicitly ratified by a treaty of the Federal Government").

[3] *Cayuga Indian Nation*, 260 F. Supp. 3d at 311 (explaining that "District Judges in this Circuit have uniformly concluded that the treaty did not disestablish the Cayuga Reservation, either directly or by belatedly ratifying the 1795 and 1807 sales to the State of New York," and citing *Cayuga Indian Nation*, 730 F. Supp. at 492-93 (McCurn, J.), and *Cayuga Indian Nation of N.Y. v. Village of Union Springs*, 317 F. Supp. 2d 128, 137-43 (N.D.N.Y. 2004) (Hurd, J.) ("After consideration of both the plain language of the Buffalo Creek Treaty as well as the legislative history and subsequent treatment of the land relating thereto, there is no substantial or compelling evidence that said Treaty served to terminate the Cayugas' reservation.")).

[4] *Cayuga Indian Nation*, 260 F. Supp. 3d at 311 ("the Second Circuit has repeatedly indicated that the [Treaty of Buffalo Creek] did not disestablish the Oneida reservation"); *see City of Sherrill*, 337 F.3d at 160-61; *Madison Cty.*, 605 F.3d at 157 n.6; *Oneida Indian Nation of N.Y. v. Madison Cty.*, 665 F.3d 408, 443 (2d Cir. 2011) ("It remains the law of this Circuit that the Oneidas' reservation was not disestablished." (internal quotation marks omitted)); *Cent. N.Y. Fair Bus. Ass'n v. Jewell*, 673 F. App'x 63, 65-66 (2d Cir. 2016) (Oneida reservation "was not disestablished by the 1838 Treaty of Buffalo Creek").

[5] *Madison Cty.*, 665 F.3d at 443; *Madison Cty.*, 605 F.3d at 157 n.6.

*Murphy* (Docket No. 17-1107)"—in which the Supreme Court is currently considering a disestablishment claim concerning the Creek Nation's reservation in Oklahoma—"or any other future decision of the U.S. Supreme Court, or any other future decision of any other court that constitutes or reflects a change in law." *Id.* But in this Court, and today, "Defendants acknowledge that, under current precedent, the Cayuga Nation today possesses a federal reservation that has not been disestablished." *Id.* at 2. The Court should therefore grant Plaintiffs' motion to dismiss, consistent with the parties' mutual desire "to proceed with an expeditious resolution of the matters in dispute in the instant case, and avoid unnecessary delay and expense." *Id.* at 3.[6]

## CONCLUSION

Plaintiffs respectfully request that the Court grant their motion to dismiss Defendants' Counterclaim, consistent with the parties' Stipulation.

Respectfully submitted,

/s/ David W. DeBruin
David W. DeBruin (*pro hac vice*)
Zachary C. Schauf (*pro hac vice*)
Jenner & Block LLP
1099 New York Ave., N.W.
Washington, DC 20001
*Attorneys for Plaintiffs*

---

[6] Defendants have indicated that they intend to argue that, even if the Nation's reservation has not been disestablished, the lands at issue here do not qualify as "Indian lands" within the meaning of IGRA in light of *City of Sherrill*. Plaintiffs' Motion here does not seek to foreclose Defendants from raising such IGRA statutory arguments.