# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CAYUGA NATION, CLINT HALFTOWN, TIMOTHY TWOGUNS, GARY WHEELER, DONALD JIMERSON, MICHAEL BARRINGER, RICHARD LYNCH, B.J. RADFORD, AND JOHN DOES 8-20,<br><br>Plaintiffs,<br><br>v.<br><br>HOWARD TANNER, VILLAGE OF UNION SPRINGS CODE ENFORCEMENT OFFICER, IN HIS OFFICIAL CAPACITY; BUD SHATTUCK, VILLAGE OF UNION SPRINGS MAYOR, IN HIS OFFICIAL CAPACITY; CHAD HAYDEN, VILLAGE OF UNION SPRINGS ATTORNEY, IN HIS OFFICIAL CAPACITY; BOARD OF TRUSTEES OF THE VILLAGE OF UNION SPRINGS, NEW YORK; AND THE VILLAGE OF UNION SPRINGS, NEW YORK,<br><br>Defendants. | No. 5:14-cv-1317-DNH-ATB |

## STIPULATION AND [PROPOSED] ORDER

WHEREAS, the Court on July 10, 2019 signed the Parties' Stipulation setting deadlines to identify facts that could be agreed to by stipulation and to file simultaneous cross-motions for summary judgment by August 21, 2019;

WHEREAS, the Parties have worked together in good faith in an attempt to identify facts that could be agreed to by stipulation, exchanging at least nine drafts of proposed stipulated facts;

WHEREAS, the Parties also have continued to produce documents in response to supplemental discovery requests, now consisting of thousands of pages in total;

WHEREAS, the Parties have now reached agreement on certain stipulated facts, which are attached hereto as Exhibit 1 (without the documents referenced in the stipulated facts, which will be filed separately with the Court);

WHEREAS, the Parties also recently received certain documents from the National Indian Gaming Commission ("NIGC") that concern issues disputed in this litigation;

WHEREAS, the Parties jointly desire a short, 14-day extension of the current schedule so that they may finalize their summary judgment briefs based on the stipulated facts on which they recently reached agreement, and so that they may compile evidentiary support regarding certain additional facts on which they were unable to reach agreement;

IT IS HEREBY STIPULATED AND AGREED THAT:

1. The prior scheduling order, entered July 10, 2019, is VACATED;

2. The case shall then proceed in accordance with the following pretrial schedule:

   a. September 4, 2019: Parties shall file simultaneous cross-motions for summary judgment; and

   b. October 4, 2019: Parties shall submit simultaneous response briefs on summary judgment, with no replies permitted.

DATED: August 19, 2019

On behalf of Plaintiffs:                    On behalf of Defendants:

By:  /s/ David W. DeBruin                    By:  /s/ David H. Tennant
     David W. DeBruin (*pro hac vice*)            David H. Tennant
     JENNER & BLOCK LLP                           Law Office of David Tennant PLLC
     1099 New York Ave. NW                        3349 Monroe Avenue
     Suite 900                                    Suite 345
     Washington, DC 2001                          Rochester, New York 14618
     (202) 639-6000                               (585) 708-9338

DATE:                                       IT IS SO ORDERED:


 August 20, 2019

                                            _____
                                            David N. Hurd
                                            United States District Judge

# EXHIBIT 1

## JOINT STIPULATED FACTS

Without acknowledging an independent basis to accept the following stipulated facts as true for any purpose other than the instant litigation, the Parties hereby stipulate and agree that there is no genuine dispute regarding the following facts for purposes of the instant litigation, in that one Party would be able to produce admissible evidence to support the fact, and the other Party would not be able to produce admissible evidence to dispute the fact.  Although the Parties thereby set forth the following joint stipulated facts, neither Party concedes that any stipulated fact is material or relevant to the resolution of the instant litigation.

1.      Plaintiff Cayuga Nation ("Nation") is a federally recognized Indian tribe.

2.      The federal government recognizes the Nation as the same entity with which it entered the Treaty of Canandaigua in 1794 (7 Stat. 44).

3.      The Nation maintains that in 1794, the Treaty of Canandaigua established a federal reservation for the Cayuga Nation and that this reservation has not been disestablished. Defendants dispute that the 1794 Treaty established a federal reservation, and if it did, Defendants maintain that reservation was disestablished by the 1838 Treaty of Buffalo Creek and other developments.  For purposes of this litigation, however, Defendants have stipulated that "under current precedent, the Cayuga Nation today possesses a federal reservation that has not been disestablished."  Stipulation, ECF 111.  Defendants have preserved for appeal "their arguments that existing precedent should be modified or should be deemed not to apply to this case, and to raise any arguments that may be based on the U.S. Supreme Court's decision in *Carpenter v. Murphy* (Docket No. 17-1107), any other future decision of the U.S. Supreme Court, or any other future decision of any other court that constitutes or reflects a change in law." *Id*.

1

4.     The Parties agree to refer herein to the Cayuga Nation lands recognized and identified in the Treaty of Canandaigua as the "Cayuga Historic Reservation," and to leave to legal briefing further arguments concerning those lands.

5.     The Cayuga Historic Reservation encompassed 64,015 acres of land that is located today within Cayuga and Seneca Counties, New York.

6.     In certain transactions between 1795 and 1807, which the Cayuga Nation contends were unlawful, the State of New York acquired all of the land encompassed within the Cayuga Historic Reservation.

7.     In 2016, the Nation had approximately 400 adult Cayuga citizens.

8.     Beginning on or about the year 2002, the Cayuga Nation purchased in open market, arms-length transactions certain real properties located within the Cayuga Historic Reservation, in both Cayuga and Seneca Counties.

9.     The Nation purchased what would become its Class II gaming site (known as "Lakeside Entertainment"), located at 271 Cayuga Street in the Village of Union Springs ("Village"), Cayuga County, New York ("Gaming Parcel" or "subject parcel"), in fee simple absolute by indenture deed dated on or about April 28, 2003.

10.    The Gaming Parcel is located within the Cayuga Historic Reservation.

11.    Before being purchased by the Nation in 2003, the Gaming Parcel was last used as a NAPA Auto Parts store.

12.    The Nation continues to own the Gaming Parcel in fee simple absolute, to the present day.

13.    The Gaming Parcel is not held in trust by the United States.

14.     The Gaming Parcel's  deed does not contain a provision stating that it may be alienated only with the permission of the United States.

15.     On April 14, 2005, the Nation applied to have certain fee-owned lands in Cayuga and Seneca Counties, including the Gaming Parcel, taken into trust by the United States.  That application remains pending.

16.     On November 12, 2003, the Nation adopted a Class II Gaming Ordinance, a copy of which is attached as Ex. A.

17.     In a letter dated November 18, 2003, a copy of which is attached as Ex. B, the NIGC approved the Nation's Class II Gaming Ordinance.

18.     NIGC Acting General Counsel Penny Coleman sent a letter to Mayor Edward C. Trufant dated January 30, 2004, a copy of which is attached as Ex. C.

19.     The Nation opened Lakeside Entertainment on the Gaming Parcel in 2004 and engaged in Class II gaming.

20.     The Nation discontinued gaming at the Gaming Parcel in October 2005.

21.     Under the New York State Constitution, "any city, town or village within the state may … authorize, subject to state legislative supervision and control, the conduct of … games of chance commonly known as … bingo or lotto [by] … bona fide religious, charitable or non-profit organizations of veterans, volunteer firefighter and similar non-profit organizations…." N.Y. Const. Art. I, § 9(2).

22.     The Village has an Ordinance dated May 19, 1958, entitled "ORDINANCE OF THE VILLAGE OF UNION SPRINGS FOR THE CONDUCT OF CERTAIN GAMES OF CHANCE BY CERTAIN ORGANIZATIONS" ("Village Gaming Ordinance"), a copy of which is attached as Ex. D.

3

23.     The Village has granted multiple licenses for bingo games pursuant to the Village Gaming Ordinance, allowing non-profit organizations to conduct fundraising events.

24.     On January 11, 2010, Lee Alcott, a lawyer representing the Nation, sent a letter to Penny Coleman, then-Acting General Counsel for the NIGC, a copy of which is attached as Ex. E.

25.     On January 19, 2010, Lee Alcott sent an email to NIGC Acting General Counsel Penny Coleman, a copy of which is attached as Ex. F.

26.     After closing the facility in 2005, on May 7, 2013, the Nation renewed the license of Lakeside Entertainment to conduct Class II gaming at the Gaming Parcel, as required by NIGC regulations.  The Nation has submitted environmental, public health, and safety attestations for the facility.  25 C.F.R. §§ 559.3, 559.4.

27.     The Nation advised the NIGC by letter dated May 30, 2013 that the Nation had renewed the licenses for its Class II gaming facilities in Seneca Falls and the Village.  A copy of that letter is attached as Ex. G.

28.     On or about July 3, 2013, the Nation resumed Class II gaming at the Gaming Parcel in the Village.

29.     Prior to reopening, the Nation obtained an architect's report, a copy of which is attached as Ex. H.

30.     Pursuant to IGRA and NIGC regulations, the Nation has taken steps to license "primary management officials" and "key employees" of Lakeside Entertainment.  25 U.S.C. § 2710(b)(2)(F).

31.     From July 2013 to the present, the Nation has submitted, and the NIGC has processed, background check materials, including fingerprint cards, for certain Lakeside Entertainment personnel.  *See* 25 C.F.R. §§ 556.4, 522.2(h).

32.     As part of the NIGC's background check process, the NIGC has informed the Nation whether it objects to the issuance of gaming licenses to the personnel whose information the Nation submitted.

33.     The NIGC has provided eligibility determinations as requested by the Nation for numerous persons.   A copy of a representative NIGC eligibility determination letter is attached as Ex. I.

34.     On February 19, 2015, the NIGC directed correspondence to Tim Twoguns, as the Chairman of the Nation's Class II Gaming Commission, a copy of which is attached as Ex. J.

35.     On July 3, 2013, David W. DeBruin, an attorney representing the Nation, sent a letter to various federal, state, and local officials, including Cayuga County Sheriff David S. Gould, a copy of which is attached as Ex. K.

36.     On July 9, 2013, the Village served an "Order to Remedy Violations" on the Nation, a copy of which is attached as Ex. L.

37.     On July 23, 2013, David W. DeBruin, an attorney representing the Nation, sent a letter to Village Attorney Chad Hayden, a copy of which is attached as Ex. M.

38.     On August 8, 2013, Betty Jane Radford, then the Controller of Lakeside Entertainment, sent a letter to Code Enforcement Officer Howard Tanner to request a Certificate of Occupancy, a copy of which is attached as Ex. N.

39.     On August 13, 2013 Code Enforcement Officer Tanner sent a letter to Ms. Radford, a copy of which is attached as Ex. O.

40.     On December 19, 2019, Ms. Radford submitted a second application for a Certificate of Occupancy, a copy of which is attached as Ex. P.

41.     On December 23, 2013, the Village served two additional Orders to Remedy Violations (dated December 20, 2013), copies of which are attached as Ex. Q.

42.     On or about February 21, 2014, Howard Tanner, Code Enforcement Officer for the Village, visited the Lakeside Entertainment facility and identified three building-code issues, including a request for confirmation of Lakeside Entertainment's most recent fire alarm test.

43.     The Nation addressed these three building code issues, and, on a return visit on March 7, Code Enforcement Officer Tanner stated that the facility met building code requirements for fire/life safety.[1]

44.     On March 24, 2014, Code Enforcement Officer Howard Tanner sent a letter to the Nation, a copy of which is attached as Ex. R.

45.     On April 2, 2014, Lee Alcott, an attorney representing the Nation, sent a letter to Village Attorney Chad Hayden, a copy of which is attached as Ex. S.

46.     On May 20, 2015, the Village served four additional Orders to Remedy Violations on the Nation, copies of which are attached as Ex. T.

47.     On May 16, 2018, Cindy Altimus, Region Director of the NIGC, sent a letter to Clint Halftown, Nation Representative, which is attached as Ex. U.

48.     Since the date of Ms. Altimus' letter, the NIGC has conducted site visits at the Lakeside Entertainment Gaming Parcel.

---

[1] While the parties agree that Mr. Tanner said at least that the building met fire/life safety requirements, they do not agree on whether Mr. Tanner said more.

49.     Since the date of Ms. Altimus' letter, the Nation pays quarterly fees to the NIGC based upon its Assessable Gaming Revenue, pursuant to IGRA and applicable NIGC regulations.

50.     The Nation regularly provides its "Minimum Internal Control Standards Agreed Upon Procedures" audits reports and its audited financial statements to the NIGC, pursuant to IGRA and applicable NIGC regulations.

51.     The NIGC has approved the Nation's request for access to its secure, restricted Tribal Access Portal (https://tap.nigc.gov).

52.     The NIGC lists the Nation on its "Gaming Tribe Report," which was last updated September 25, 2018 (https://www.nigc.gov/images/uploads/state.pdf).

53.     The gaming activity currently being conducted by the Nation at Lakeside Entertainment occurs pursuant to a Class II Gaming Ordinance adopted by the Nation and approved by the NIGC, most recently in a July 31, 2018 letter, a copy of which is attached as Ex. V.

54.     The gaming activity currently being conducted by the Nation at Lakeside Entertainment consists of bingo, conducted with the technological aid of machines.

DATED: August 19, 2019

On behalf of Plaintiffs:                    On behalf of Defendants:

By:  /s/ David W. DeBruin_____        By:  /s/ David H. Tennant_____
     David W. DeBruin (*pro hac vice*)           David H. Tennant
     JENNER & BLOCK LLP                     Law Office of David Tennant PLLC
     1099 New York Ave. NW                  3349 Monroe Avenue
     Suite 900                              Suite 345
     Washington, DC 2001                    Rochester, New York 14618
     (202) 639-6000                         (585) 708-9338